No. 16-5340

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

STEVEN S. MICHEL, *pro se*
*Plaintiff - Appellant,*

v.

ADDISON MITCHELL MCCONNELL, JR.,
CHARLES ERNEST GRASSLEY, and
UNITED STATES SENATE,
*Defendants - Appellees.*

---

**EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

---

STEVEN S. MICHEL, *pro se*
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# TABLE OF CONTENTS

INTRODUCTION AND REQUESTED RELIEF..................................................1

FACTUAL BACKGROUND.........................................................................3

ARGUMENT ……………………………………………………………….5

1) PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS…………...5

a) Plaintiff has standing……………………………………………….6

b) When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent……………………11

c) By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination………..…………………………14

d) This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine." ………………………………...16

2) ABSENT AN INJUNCTION, PLAINTIFF WILL SUFFER IRREPARABLE HARM FOR WHICH THERE IS NO ADEQUATE LEGAL REMEDY……………………………………………………19

3) AN INJUNCTION WILL NOT HARM OTHER PARTIES……………19

4) AN INJUNCTION WILL SERVE THE PUBLIC INTEREST…………20

CONCLUSION.........................................................................................20

EXHIBITS (D.C. District Court Case 1:16-cv-01729)

Exhibit 1: ECF 1 (45 pages): *Emergency Petition for Declaratory Judgment and Writ of Mandamus*, 8/25/16

Exhibit 2: ECF 12 (42 pages): *Motion for Preliminary Injunction* and *Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction*, 10/19/16

Exhibit 3: ECF 16 (38 pages): *Defendants' Motion to Dismiss* and *Defendants' memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendants' Motion to Dismiss*, 10/31/16

Exhibit 4: EFC 18 (39 pages): *Memorandum of Points and Authorities in Opposition to Motion to Dismiss*, 11/8/16

Exhibit 5: ECF 19 (1 page): *Order - Granting Defendants' Motion to Dismiss' Denying Plaintiff's Motion for a Preliminary Injunction*, 11/17/16

Exhibit 6: ECF 20 (5 pages): *Memorandum Opinion - Granting Defendants' Motion to Dismiss' Denying Plaintiff's Motion for a Preliminary Injunction*, 11/17/16

**INTRODUCTION AND REQUESTED RELIEF**

This *Emergency Motion for Injunction Pending Appeal* (*Motion*) is submitted in an appeal from district court Case No.16-cv-1729, filed on August 25, 2016, and concerning the nomination of Judge Merrick Garland to the United States Supreme Court. Judge Garland's nomination has been pending without Senate action since March 16, 2016. In the district court case I asked the court to declare that the full Senate must determine whether to provide advice and consent to Judge Garland's nomination and appointment. I also asked the court to require the Senate to make that determination.

On October 19, 2016 I moved for a preliminary injunction to require the Senate to determine *whether or not* it would provide advice and consent to Judge Garland's nomination. On November 17, 2016 the district court denied my motion for preliminary injunction and dismissed the case, finding that I lacked standing to bring my claims. On November 18, 2016 I filed a *Notice of Appeal*.

By this *Motion* I seek an emergency injunction requiring the full Senate to decide whether to provide advice and consent to Judge Garland's nomination. This *Motion* is made pursuant to Fed. R. App. P. 8 and D.C. Cir. R. 8 and 27(f). Without the requested injunction, on December, 16, 2016 the 114th Congress is scheduled to adjourn, and I will be forever deprived of my 17th Amendment right to have my elected senators exercise their "one vote" on whether to provide advice and

consent to the nomination of Judge Garland. My specific request is that the Court issue an injunction pending appeal requiring:

1) Defendant McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court,

2) Defendant Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate,

3) Defendant U.S. Senate, as a body, to vote before the 114th Congress adjourns on whether it will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court, and

4) Defendants to promptly provide the Court and Appellant with its schedule to accomplish the above three requirements.

Because of the urgency of this situation, I ask that this injunction be issued within seven (7) days of the filing of this *Motion* (D.C. Cir. R. 27(f)). An injunction by that date will allow almost 3 weeks for the Senate to act on Judge Garland’s nomination before its scheduled adjournment. This should be sufficient time. Prior to Judge Garland, the average time for a Supreme Court nominee to be vetted and confirmed, rejected or withdrawn has been 25 days (Exhibit 2 at p. 4).

I have not requested the district court to issue an injunction pending appeal because it is impracticable given the short time remaining before the Senate adjourns, and the district court’s determination that it lacked subject matter jurisdiction to consider my lawsuit (Exhibit 6). Fed. R. App. P. 8.

On November 21, 2016 I notified opposing counsel and the Clerk’s Office of my intent to file this *Motion* on November, 22, 2016.

For the Court's convenience, I have attached as Exhibits to this *Motion* four substantive pleadings from the district court proceeding that bear on the issues raised by this *Motion*, as well as the district court's *Order* and *Memorandum Opinion* from which this appeal is taken. The exhibits are listed in the Table of Contents. While this *Motion* explains why the injunctive relief I request satisfies necessary criteria, I urge the Court to also review the more detailed arguments made to the district court in my original *Petition* and in support of, and opposition to, my district court *Motion for Preliminary Injunction* and Defendants' *Motion to Dismiss* (Exhibits 1, 2, 3 and 4).

**FACTUAL BACKGROUND**

Supreme Court Justice Antonin Scalia died on February 13, 2016, creating a vacancy on the 9 member U.S. Supreme Court. On that same day Senate Majority Leader McConnell issued a statement saying: "this vacancy should not be filled until we have a new President."[1]

On February 23, 2016, an 11 member majority of the Senate Judiciary Committee signed a letter to Leader McConnell stating that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017" (Exhibit 1 exhibit). By Senate rules, the Judiciary

---

[1] https://www.facebook.com/mitchmcconnell/posts/1021148581257166

Committee provides recommendations to the full Senate on judicial nominees before those nominees are considered and voted upon by the Senate (Rule XXXI, *Standing Rules of the Senate*, Rev. 2013). So, unless reversed, the February 23rd letter precludes Senate action, ever, on President Obama's nominee, and divests the President of his appointment power for nearly one-fourth of his four-year term.

On March 16, 2016, pursuant to Article II Section 2 of the U.S. Constitution, President Barack Obama nominated Merrick Garland, Chief Judge of the U.S. Court of Appeals for the D.C. Circuit, to fill the Supreme Court vacancy caused by Justice Scalia's death.

On June 21, 2016, the American Bar Association Standing Committee on the Federal Judiciary, after a months-long investigation, unanimously gave Judge Garland its highest rating of "Well-Qualified."[2]

As of November 20, 2016, Judge Garland's nomination had awaited Senate action for 250 days – by far the longest time for such a nomination in U.S. history. Prior to Judge Garland, the average time for a Supreme Court nominee to be either confirmed, rejected or withdrawn was 25 days, and the longest confirmation process was 125 days, in 1916.[3]

---

[2] http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html

[3] "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *New York Times*, by Aisch, Keller, Lai and Yourish, 3/16/16

**ARGUMENT**

The Senate's refusal to undertake its advice and consent role is unprecedented and results from Defendant McConnell and 11 members of the Senate Judiciary Committee (including Defendant Grassley) procedurally blocking committee or Senate consideration of, or action on, Judge Garland's nomination.

By this *Motion* I ask the Court to provide emergency injunctive relief pursuant to Fed. R. App. P. 8. No other means of adequate relief exists, and my claims satisfy the four factors for injunctive relief, which are: (1) there is a likelihood of success on the merits of my claims, (2) in the absence of an injunction I will suffer irreparable harm for which there is no adequate legal remedy, (3) the injunction will not substantially harm other parties, and (4) the injunction serves the public interest (Cir. Rule 8).

1) PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

The facts and law governing this action indicate that I should succeed on the merits. I have standing. In addition, proper constitutional interpretation requires that when the President nominates a person to fill a Supreme Court vacancy, the Senate as a body has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether to provide its advice and consent. By its refusal to consider Judge Garland's nomination, the Senate has breached that duty and should be required to promptly undertake that

determination. This case is justiciable, and my claims do not impinge on the U.S. Constitution's "Speech or Debate Clause" or the "Political Question Doctrine."

a) Plaintiff has Standing:

On November 17, 2016, the district court denied my preliminary injunction motion and dismissed my *Petition*. The basis for that denial and dismissal was that I lacked standing because my "alleged injuries are not sufficiently individualized." In its analysis, the district court correctly described the standing requirement that there be a "particularized injury" that is "not conjectural or hypothetical," and that the injury not be of "general interest common to all members of the public." The district court also found that in order to establish an injury of "'derivative' dilution of voting power," which is what I have claimed, the voter must "show some form of actual structural denial of their representative's right to vote" (See Exhibit 6 at 1, 3, 4). I generally agree with these standards.

However, the district court concluded that my injury is not "individualized" and the vote diminution I allege "is the type of undifferentiated harm common to all citizens that is appropriate for redress in the political sphere." The district court has misconstrued both the type of injury needed to establish standing, and the particular nature of my injury. Importantly, the district court failed to recognize that my standing cannot be determined absent a decision on the merits of my claim that the full Senate must participate in the nomination process and vote on whether

to provide advice and consent. If the Senate must vote, then the derivative effectiveness of my vote for senators has been diminished. If the Senate has discretion to not participate, then my injury may be too speculative to satisfy standing requirements. The district court did not evaluate the Senate's role.

Rather, the district court's dismissal and denial appears to be based on its determination that I am not a "uniquely injured individual" (Exhibit 6 at 3). The notion that my injury must be "unique," however, is an almost impossible standard found no-where in law. The correct standard is that while the claimed injury should not be generalized or common to <u>all</u> citizens, it may be common to <u>many</u> citizens. In *Federal Elections Commission v. Akins*, 524 U.S. 11, 24 (1998) the Court held that "an injury…. widely shared … does not, by itself, automatically disqualify an interest for Article III purposes. Such an interest, where sufficiently concrete, may count as an 'injury in fact.'" Similarly, *Pye v. United States*, 269 F.3rd 459, 469 (4th Cir. 2001) held that "[s]o long as the plaintiff… has a concrete and particularized injury, it does not matter that legions of other persons have the same injury." The fact that my injury is shared by other citizens, which I do not contest, does not defeat standing. See *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Contrary to the district court's findings, the injury I have sustained is of a particularized nature long recognized as sufficient to establish standing. I am a registered voter in New Mexico that has voted for the current U.S. senators

representing New Mexico (Udall and Heinrich). The effectiveness of my vote for these senators has been diminished as a result of the actions of Defendants. Those actions denied New Mexico senators their constitutionally assigned "one vote" in the Senate with respect to the nomination of Judge Garland. The 17th Amendment of the United States Constitution provides:

> The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and *each Senator shall have one vote*….

(Emphasis added). This constitutional provision vests citizens with the right to vote for and elect senators who are each to have one vote on Senate actions. A deprivation of that right, either by refusing citizens a vote or diminishing the "one-vote" power of their elected senators, is a specific injury-in-fact of a nature recognized as sufficient to establish standing. In *Dept. of Commerce et al. v. U.S. House of Representatives et al.*, 525 U.S. 316, 331-2 (1999) the Supreme Court held:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"

It is important to recognize that the harm I am claiming is different from the harm that has precluded voter standing in situations where the Senate declines to consider legislation. I understand that my voting power is not necessarily diminished when the Senate refuses to consider legislation and other things that are

within its discretion to act (or not act) upon. A diminished voting power in those situations might be considered too speculative to establish standing. The effectiveness of my vote is *absolutely* diminished, however, when my senators are procedurally blocked by other senators, who possess disproportionate power to control Senate action, from voting on items that the Senate, as a body, *must* vote on – such as whether to provide advice and consent for a Supreme Court nominee. In other words, when the entire Senate votes, my Senators must be provided "one vote." And in the specific case of U.S. Supreme Court nominations, the Constitution requires that the entire Senate must vote.

This is not a diminution of voting power shared equally by *all* citizens, but is a disproportionate impairment to those citizens, such as me, who are not represented by the senators blocking Senate action. Because my senators have been prevented from voting, I have effectively lost my senate representation on the question of Judge Garland's nomination, just as if I had no senator at all representing me in the Supreme Court nomination process.

Put another way, 12 senators (11 Judiciary Committee members and Senator McConnell) have procedurally assumed the voting power to reject a Supreme Court nominee that should require the vote of 51 senators to accomplish. My two senators from New Mexico have been provided zero votes in that process. At the same time, citizens from Utah and Texas, each with both of their senators sitting

on the Judiciary Committee (See Exhibit 1 exhibit), have a voter effectiveness far more than the "one vote" power which each senator is allotted by the 17th Amendment. Defendants McConnell and Grassley have also been provided enhanced voting power by virtue of their respective leadership and chairmanship.

The procedural obstruction of this group of 12 senators is exactly the same as if the Senate enacted a rule that New Mexico's senators are to have no vote in judicial confirmations. It is unconstitutional.

The framers of the Constitution intended the *entire* Senate to vote on Supreme Court nominees. This is supported by historical practice, as will be discussed, and by the writings in the contemporaneous *Federalist Papers.* Alexander Hamilton authored No. 76, which explains why the *entire* Senate is to participate in the appointment process. It basically says that while "some individuals" in the Senate might be improperly influenced, if the entire "body" is acting there will always be a "large proportion" of "independent and public-spirited" senators to preserve the integrity of the process.

It is also important that the Senate's refusal to consider Judge Garland's nomination adversely and impermissibly impacts all three branches of the federal government: divesting the President of his constitutional power to appoint justices to the Supreme Court, divesting individual senators and their constituents of each

senator's vote on whether to confirm a Supreme Court nominee, and compromising the viability and strength of the judiciary.

b) When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent.

The President and the Senate share the power and duty to fill vacancies on the Supreme Court. The U.S. Constitution, Article II Section 2, provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court…." To the extent there is ambiguity as to what the "advice and consent" role of the Senate requires, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137, 177 (1803).

The Senate's role is a requirement to determine, as a body, whether to provide or withhold the "advice and consent" necessary for the President to appoint a Supreme Court nominee. The Senate cannot ignore a nomination. As Alexander Hamilton noted: "[the Senate] can only ratify or reject the choice [the President] may have made." *The Federalist* No. 66 (emphasis added). Any fair reading of *The Federalist Papers* recognizes that *inaction* was not an option ever even contemplated by the Framers.

The Constitution's Article II Section 2 establishes the inter-dependent roles of the President and Senate in filling Supreme Court vacancies. The President shall

nominate, *and by and with* the Senate's advice and consent, shall appoint. "The ordinary power of appointment is confided to the President and Senate *jointly*…." *The Federalist* No. 67. When the Senate refuses to participate, the constitutional process breaks down and the President is divested of his power to appoint. Extrapolating, if the Senate entirely neglected its advice and consent role, it could procedurally dismantle the judiciary. That does not make sense.

The recent Supreme Court case of *NLRB v. Canning*, 134 S. Ct. 2550 (2014), supports my position that the Senate must participate and decide whether to provide advice and consent. In *NLRB* the Court was tasked with interpreting the Recess Appointments Clause of the Constitution, which is part of the same Nominations and Appointments section at issue in this case. A question before the Court was: When does a Senate adjournment becomes a "recess" that triggers the President's power to temporarily appoint officials without Senate advice and consent? The Constitutional language surrounding recess appointments was sparse and ambiguous. In its decision, the Court explained that "*in interpreting the Clause, we put significant weight upon historical practice* (emphasis in original)." *NLRB* at 2559. The Court

> confirmed that "[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions" regulating the relationship between Congress and the President. *The Pocket Veto Case*, 279 U.S. 655, 689 (1929).

*NLRB* at 2559. The Court then looked to the history of use of the Recess Appointments Clause, from 1789 to the present, to determine when an absence would became a "recess":

> . . . the President has consistently and frequently interpreted the word "recess" to apply to intra-session recesses, and has acted on that interpretation. The Senate as a body has done nothing to deny the validity of this practice for at least three-quarters of a century. And three-quarters of a century of settled practice is long enough to entitle a practice to "great weight in a proper interpretation" of the constitutional provision. *The Pocket Veto Case*, 279 U.S., at 689.

This same type of historical analysis demonstrates that the Nominations and Appointments Clause (U.S. Const. Art. II, Sec. 2) requires full Senate participation that either confirms or rejects a nominee within a relatively short period of time.

The U.S. Senate's compilation of the disposition of every Supreme Court nomination from 1789 until the present shows that during that time there were 161 nominations (Exhibit 4 exhibit). Of those, only 9 nominations received "no action," and of those, four nominees were nevertheless confirmed or refused within months. Of the remaining five, one vacancy in 1866 was eliminated because the seat was abolished and the other four occurred in the short period between 1844 and 1853. In sum, but for a short *ante bellum* period in the mid-1800s, the practice of the Senate has always been to consider and act expeditiously to confirm or reject a Supreme Court nominee. This history is at least as consistent and compelling as the history relied upon by the *NLRB* Court, and demonstrates that considering and

acting on Supreme Court nominations within a reasonable time is constitutionally required. In 1998, in response to the slowing of the judicial confirmation process, former Chief Justice Rehnquist noted, "[t]he Senate is surely under no obligation to confirm any particular nominee, but after the necessary time for inquiry, it should vote him up or vote him down."[4]

c) By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination.

This Court can and should issue both a declaratory judgment and injunctive relief in the nature of mandamus to remedy Defendants' failure to fulfill their constitutional advice and consent role for a Supreme Court nominee.

This Court has the power to provide *declaratory* relief in situations involving the other branches of government. In *National Treasury Employees Union v. Nixon,* 492 F.2d 587, 616 (D.C. Cir. 1974) the Court declared that the President had a constitutional duty to comply with a particular law. Similarly, in *Powell v McCormack,* 395 U.S. 486, 499 (1969), the Supreme Court determined that a federal "court may grant declaratory relief even though it chooses not to issue an injunction or mandamus…. A declaratory judgment can then be used as a predicate to further relief, including an injunction."

---

[4] "Senate Imperils Judicial System, Rehnquist Says," by John H. Cushman, Jr., *New York Times,* January 1, 1998, A1

While the issue of whether a court may issue a *writ of mandamus* against Congress is unsettled, the current situation warrants that form of extraordinary relief. 28 U.S.C. §1651(a) provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Protecting the viability of the judiciary from Senate inaction could certainly be considered "in aid of" a court's jurisdiction. The plain language of this statute encompasses such a broad reading. See, §45:2 *Sutherland Statutory Construction*. The injunction I seek by this *Motion* would have the same effect, with respect to the nomination of Judge Garland, as a writ of mandamus.

In *Marbury v. Madison,* Justice Marshall described the history and use of writs of mandamus, and wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used…. "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."

*Marbury v. Madison*, 5 U.S. 137, 168-9 (1803). The circumstances described in Justice Marshall's opinion apply to the current situation and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government." In extraordinary cases federal courts have issued writs of mandamus against other branches of government that neglected a clear statutory duty. See, *In re Aiken County, et al.*, 725 F.3rd 255, 259 and 266-7 (D.C. Cir. 2013).

Unlike other situations, where mandamus, or in the case of this *Motion* an injunction pending appeal, could be viewed as compromising the separation of power, injunctive relief here would *restore* the separation of power. Justice Kennedy has said that "It remains one of the most vital functions of this Court to police with care the separation of the governing powers." *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 468 (1989) (Kennedy, J. concurring). In his dissent in *Morrison v. Olson*, 487 U.S. 654, 704-5 (1988), Justice Scalia said that, in the context of a separation of powers challenge to an action of Congress, the Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.

d) <u>This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."</u>

*Justiciability:* In deciding whether a claim is justiciable, two findings must be made: 1) that "the duty asserted can be judicially identified and its breach determined," and 2) that an effective remedy can be fashioned. *Baker v. Carr*, 369 U.S. 186, 198 (1962). I have asked this Court to determine that the Senate has a non-discretionary duty to determine whether it will provide advice and consent to the Supreme Court nomination of Judge Garland, and that the Senate has breached that duty. I have also requested that the Court grant both declaratory and mandamus relief to remedy that breach of duty. Granting that relief in a timely

manner would cause the Senate to consider Judge Garland's nomination and would effectively remedy the situation. In *Powell*, the Court determined that declaratory relief satisfied the justiciability requirement. *Powell* at 516-518.

*Speech or Debate Clause:* The "Speech or Debate Clause" of the U.S. Constitution, Art. I, Sec. 6, provides that "for any Speech or Debate in either House, [senators or representatives] shall not be questioned in any other Place." The "Speech or Debate Clause" is not a bar to this action against Defendants Senator McConnell and Senator Grassley. That clause only provides protection from lawsuits against legislators resulting from "words spoken in debate… [c]ommittee reports, resolutions, and the act of voting… [and] things done generally in a session of the House by one of its members in relation to business before it." *Powell* at 502. The *refusal to act* by a handful of senators, in order to procedurally prevent the Senate from performing its duty to participate in the judicial appointment process, is not an activity "done generally" by senators "in relation to business before" them.

In addition, "it is clear from the language of the Clause that protection extends only to an act that has already been performed." *U. S. v. Helstoski*, 442 U.S. 477, 490 (1979). Here, the issue relates to Senate inaction. And regardless, the Speech or Debate Clause would not apply to actions against the Senate.

Notably, the Supreme Court explained in *Gravel v. United States,* 408 U.S. 606, 625 (1972), that the Speech or Debate Clause protections are limited:

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House…. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech and debate in either House, but "only when necessary to prevent indirect impairment of such deliberations.

*Political Question Doctrine:* The premise underlying the Political Question Doctrine is the desire to prevent federal courts from deciding policy issues. This doctrine "helps to preserve the separation of powers by ensuring that courts do not overstep their bounds." *Baker* at 210. The political question doctrine is a "narrow exception" to the rule that the judiciary has a responsibility to decide cases properly before it. *Zivotofsky ex rel. Zivotofsky v. Clinton,* 132 S. Ct. 1421, 1427 (2012). This case has only asked the court to interpret the Article II, Section 2, of the Constitution and enforce that interpretation to the extent needed.

While the resolution of issues involving a coordinate branch of government will sometimes have political implications, the judicial branch must not neglect its duty to "say what the law is" merely because its decision may have "significant political overtones." *Marbury* at 177; *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 (1986). In *United States v. Ballin,* the Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights." *United States v. Ballin*, 144 U.S. 1, 5 (1892).

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role (at 549):

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility…. [I]t is the responsibility of this Court to act as the ultimate interpreter of the Constitution.

(2) ABSENT AN INJUNCTION, PLAINTIFF WILL SUFFER IRREPARABLE HARM FOR WHICH THERE IS NO ADEQUATE LEGAL REMEDY

It is important that this matter be resolved in a time frame that permits any remedy to be meaningful and useful. The Senate must, as a body, consider and determine whether to provide advice and consent for Judge Garland's Supreme Court nomination before it adjourns in December. Otherwise, my voting rights and representation with respect to Judge Garland's nomination will have been permanently lost. Therefore, unless the Court causes or directs the full Senate to determine whether to provide advice and consent for the Garland nomination by the end of December, the harm to me will be irreparable.

(3) AN INJUNCTION WILL NOT HARM OTHER PARTIES

While an injunction is necessary to protect my rights, causing the Senate to perform its Constitutionally-required role in the Supreme Court nomination process will not harm Defendants. As I have stated throughout this action, I am not asking for a particular outcome of the confirmation process, only that the process

be undertaken in a meaningful time-frame. The Senate may decide not to provide advice and consent for the Garland nomination. Fulfilling its constitutional role can hardly be construed as a harm to any Defendants.

(4) AN INJUNCTION WILL SERVE THE PUBLIC INTEREST

An injunction would only cause the Senate to consider and determine *whether* to provide its advice and consent for the Garland nomination. This does not harm the public interest - it serves the public interest. The Supreme Court nomination and appointment process is broken in the Senate. This is a threat to our democracy. Assuring that dysfunction in the Senate does not impair the powers and duties of the executive and judicial branches, can only serve the public interest.

In addition, if the Senate votes on Judge Garland's nomination, citizens will be provided a voting record on a very important issue. Providing a voting record of senators serves the public interest because that record enables citizens to exercise their role as informed electors in a representative government.[5]

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff prays for a Court order granting his request for an injunction pending appeal as described herein, and for such other and further relief as the Court deems just and proper.

---

[5] "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?" Lee Renzin, N.Y.U. Law Review, Vol.73:1739, Nov.1998 at 1747-8

Dated: November 22, 2016

Respectfully submitted,

/s/ Steven S. Michel

STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2016, I served the foregoing *Emergency Motion for Injunction Pending Appeal* by filing it electronically with the Court's CM/ECF system and by emailing pdf versions to counsel, as follows:

Patricia Mack Bryan
Senate Legal Counsel
patricia_bryan@legal.senate.gov

Morgan J. Frankel
Deputy Senate Legal Counsel
morgan_frankel@legal.senate.gov

Grant R. Vinik
Assistant Senate Legal Counsel
grant_vinik@legal.senate.gov

/s/ Steven S. Michel

Steven S. Michel

# E X H I B I T - 1

Case No.______________

# United States District Court For the District of Columbia

Case: 1:16-cv-01729
Assigned To : Contreras, Rudolph
Assign. Date : 8/25/2016
Description: Pro Se Gen. Civil (F Deck)

STEVEN S. MICHEL, *pro se*

*Petitioner,*

v.

ADDISON MITCHELL MCCONNELL, JR., UNITED STATES SENATOR,
CHARLES ERNEST GRASSLEY, UNITED STATES SENATOR,
AND THE UNITED STATES SENATE,

*Respondents.*

## EMERGENCY PETITION FOR DECLARATORY JUDGMENT AND WRIT OF MANDAMUS

RECEIVED
AUG 25 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

STEVEN S. MICHEL
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

STATEMENT OF THE CASE ........ 1

RELIEF SOUGHT ........ 4

ISSUES PRESENTED ........ 5

PARTIES AND STANDING ........ 6

JURISDICTION AND VENUE ........ 10

FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED ........ 12

THE HARM CAUSED BY THE SENATE'S REFUSAL TO ACT ........ 16

ARGUMENT – THE COURT SHOULD ISSUE A DECLARATORY JUDGMENT AND WRIT OF MANDAMUS TO REMEDY THE SENATE'S FAILURE TO PERFORM ITS CONSTITUTIONAL DUTY ........ 19

I. When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent ........ 19

II. The Senate, by its refusal to consider the nomination of Judge Garland, has neglected its duty and should be required to promptly undertake that determination ........ 25

A. Justiciability ........ 28
B. Speech or Debate Clause ........ 29
C. Political Question Doctrine ........ 31

CONCLUSION ........ 33

## TABLE OF AUTHORITIES

**CASES:**

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

*Bell v. Hood,* 327 U.S. 678 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917). . . . . . . . . . . . . . . . . 26

*Coleman v. Miller*, 307 U.S. 433 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Dollar General Corp. v. Mississippi Band of Choctaw Indians,* No. 13-496 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eastland v. United States Serviceman's Fund,* 421 U.S. 491 (1975) . . . . . . . . . . . . 30

*Freytag v. Commissioner*, 501 U.S. 868 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Friedrichs v. California Teachers Association*, No. 14-915 (2016). . . . . . . . . . . . . .16

*Hawkins v. Community Bank of Raymore,* No. 14-520 (2016) . . . . . . . . . . . . . . . .16

*In re: Aiken County, et al.*, 725 F.3d 255 (D.C. Circuit 2013) . . . . . . . . . . . . . . . . .27

*INS v. Chadha*, 462 U.S. 919 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Circuit 1970). . . . . . . . . 26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marbury v. Madison*, 5 U.S. 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 26, 27

*Morrison v. Olson,* 487 U.S. 654, 704-5 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Circuit 1974). . . .25

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Powell v. McCormack*, 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . 10, 25, 26, 28-32

*Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989). . . . . . . 28

*United States v. Ballin*, 144 U.S. 1 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Texas*, No. 15-673 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**CONSTITUTION, STATUTES AND RULES:**

U.S. CONSTITUTION, ARTICLE I, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

U.S. CONSTITUTION, ARTICLE I, § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

U.S. CONSTITUTION, ARTICLE I, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

U.S. CONSTITUTION, ARTICLE II, § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

U.S. CONSTITUTION, ARTICLE I, § 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

U.S. CONSTITUTION, ARTICLE II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 13, 19, 20, 22

U.S. CONSTITUTION, ARTICLE III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. CONSTITUTION, AMENDMENT XVII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 21

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

28 U.S.C. § 1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 26

28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDING RULES OF THE SENATE, RULE XXV. 113TH CONGRESS, 1ST SESSION. DOCUMENT 113-18. REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDING RULES OF THE SENATE, RULE XXXI. 113TH CONGRESS, 1ST SESSION. DOCUMENT 113-18. REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**OTHER:**

Aisch, Gregor; Keller, Josh; Lai, K.K. Rebecca and Yourish, Karen: "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times*, updated 3/16/16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

American Bar Association, Status of Federal Judicial Vacancies, Nominations and Confirmations: 103rd – 113th Congress (1993-2014). http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnomscons.authcheckdam.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

American Bar Association, ABA Washington Letter, June 2016. http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html . . . . . . . . . . . . . . . . . . . . . . . . . .14

Cushman, John H., Jr.: "Senate Imperils Judicial System, Rehnquist Says." *New York Times,* January 1, 1998, A1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Dinan, Stephen and Boyer, Dave: "Republicans rule out replacing Antonin Scalia until new president is elected." *The Washington Times*, February 13, 2016. . . . . .12

Fandos, Nicholas: "Garland Shouldn't Be Considered After Election, McConnell Says," *The New York Times* March 20, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . .14

Grassley, Senator Chuck: Letter from Senator Grassley and Senate Judiciary Committee members to Senate Majority Leader McConnell, February 23, 2016. . . . . . . . 12

McConnell and Grassley: "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia." Op-Ed. *The Washington Post,* February 18, 2016 . . . . 12

McConnell, Senator Mitchell: Posting to Facebook page: https://www.facebook.com/mitchmcconnell/posts/1021148581257166 . . . . . 12

Obama, President Barack: "Merrick Garland Deserves a Vote—For Democracy's Sake." Op-Ed. *The Wall Street Journal,* July 17, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?" N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . . .17, 19, 23, 32

Sutherland Statutory Construction, § 45:2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States Courts website ("Judicial Emergencies" listed under Judicial Vacancies): http://www.uscourts.gov/judges-judgeships . . . . . . . . . . . . . . . . . 18

## STATEMENT OF THE CASE

Supreme Court Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member United States Supreme Court. On that same day Senate Majority Leader Mitchell McConnell issued a statement saying: "this vacancy should not be filled until we have a new President."

Ten days later, on February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senator McConnell announcing their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." The members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."

Article II Section 2 of the United States Constitution states that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint… Judges of the supreme Court…." Pursuant to this provision, on March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The Senate, by the statements of a small group of senators that control the Senate's consideration of judicial nominees, has made clear that it will not take any action on that nomination. And no action has been taken.

The Senate's refusal to even consider whether to provide "advice and consent" for a duly nominated justice for the Supreme Court has created a constitutional crisis that threatens the balance and separation of power among our three branches of government. The Senate's refusal has divested the President of his constitutional power to appoint justices to the Supreme Court, has divested individual senators and their constituents of each senator's right to evaluate and vote on whether to confirm a Supreme Court nominee, has compromised the viability and strength of the judiciary, and has disenfranchised United States citizens of the outcome of their votes for President and senator.

As of the date this Petition is filed, Judge Garland's nomination will have been pending longer than any other Supreme Court nominee in United States history. This situation is an emergency which necessitates prompt resolution because, unless remedied before the end of President Obama's term on January 20, 2017, his power to nominate and appoint judges to the Supreme Court during his four-year term will have been permanently foreclosed. This means the electorate that voted for President Obama in 2012 will have been forever deprived of an outcome of the election – which was to provide President Obama with all of the powers and duties of the Presidency for the entirety of his four-year term. This also means that much of the electorate that voted for senators to represent them in Washington will have been forever divested of their representation, through their elected senators, on whether Judge Garland's nomination should be provided Senate advice and consent.

To remedy this peril, Petitioner requests that the Court determine that the Senate has a duty to decide whether to provide advice and consent for the nomination of Judge Garland, and also requests that the Court direct the Senate to promptly fulfill that duty.

## RELIEF SOUGHT

By this action, Petitioner seeks a *declaratory judgment* from the Court declaring that the Senate, as a body, has a non-discretionary constitutional duty to determine within a reasonable time whether to provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court. Petitioner also asks the Court to issue a *writ of mandamus* directing Respondents to promptly fulfill, or cause the United States Senate to fulfill, its constitutional duty to determine whether to provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court.

Petitioner is not requesting that the Court cause the Senate to *provide* its advice and consent, only that it cause the Senate to determine *whether* to provide advice and consent. In other words, Petitioner requests that the Court instruct Respondents that the Senate cannot ignore a presidential Supreme Court nominee.

No adequate remedy exists to resolve Respondents' refusal to undertake their constitutional duty other than the relief Petitioner requests from this Court.

## ISSUES PRESENTED

The primary issue which Petitioner asks this Court to determine is whether the United States Senate has a non-discretionary duty, under Article II Section 2 of the United States Constitution, to determine within a reasonable time whether to provide its advice and consent when the President of the United States duly nominates a person to fill a vacancy on the United States Supreme Court.

Petitioner also asks this Court to determine whether the Senate, by its refusal to consider the nomination of Judge Garland, has neglected that duty and must therefore be instructed to promptly undertake that determination.

## PARTIES AND STANDING

**Petitioner Steven S. Michel** is a United States citizen, a resident of Santa Fe County in New Mexico, and a registered voter in that county of New Mexico. In recent elections Petitioner has voted for President Barack Obama and for the current U.S. Senators representing New Mexico, Thomas Udall and Martin Heinrich.

**Respondent Addison Mitchell McConnell** is a duly elected United States Senator from the State of Kentucky, and leader of the majority party in the Senate. As Majority Leader, Senator McConnell is able to schedule or refuse votes of the full Senate. He has refused to allow a vote on whether the Senate should provide advice and consent for the nomination of Judge Garland.

**Respondent Charles Ernest Grassley** is a duly elected United States Senator from the State of Iowa, and Chairman of the Senate Judiciary Committee. Pursuant to the Standing Rules of the Senate, all judicial nominations are referred to the Judiciary Committee,[1] which then recommends to the full body whether it should provide advice and consent. As Chairman, Senator Grassley has refused to allow the Committee to consider the Supreme Court nomination of Judge Garland.

**Respondent United States Senate** is the constitutional body of the United States government that must determine whether to provide advice and consent for nominees to the Supreme Court. The Senate has not, and by the statements of a small group of senators that control Senate responsibility, will not undertake this

---

[1] Standing Rules of the Senate, Revised 2013, Rule XXV.

constitutional duty with respect to the nomination of Judge Garland to the Supreme Court.

Petitioner has *standing* to bring this action. The situation which Petitioner requests be resolved is of "imperative constitutional necessity" [2] and has caused him, and others similarly situated, specific injury-in-fact which can be remedied only by the relief requested herein.[3]

Petitioner is filing this action on his own behalf and on behalf of all citizens of New Mexico who are similarly situated, and have had the effectiveness of their vote for United States senators diminished because those senators have been deprived of their ability to vote in the Senate with respect to the nomination of Judge Garland. This deprivation has caused Petitioner specific injury-in-fact of a nature recognized as sufficient to establish standing.

In *Department of Commerce et al. v. United States House of Representatives et al.*, a case involving the Constitution's Census Clause and voter standing, the Supreme Court found:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting

---

[2] *Nixon v. Fitzgerald*, 457 U.S. 731, 761 (1982) (Burger, C.J., concurring)

[3] These three factors: injury, causation and ability to redress, were established in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 573-4, 578 (1992).

> 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[4]

Other cases have confirmed the constitutionally-protected interest citizens and others have in protecting the effectiveness of their vote.[5]

The 17th Amendment of the United States Constitution states:

> The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and *each Senator shall have one vote*....

(Emphasis added). This constitutional provision vests citizens with the right to vote for senators who are each to have one vote on Senate actions.

When a group of senators blocks Senate consideration of a Supreme Court nominee, and senators such as those representing Petitioner are prohibited from voting, Petitioner is deprived of the effectiveness of his constitutionally provided right to vote for senators. This is not a diminution of voting power shared equally by all citizens, but is a disproportionate impairment to those citizens, such as Petitioner, who are not represented by the senators blocking Senate action. Because Petitioner's senators have been prevented from voting on the nomination of Judge Garland, these senators have effectively lost their ability to represent the voters of New Mexico on the Garland nomination – and this has diminished the effectiveness

---

[4] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[5] See, e.g. *Coleman v. Miller*, 307 U.S. 433, 438 (1939), where the U.S. Supreme Court discussed the right and privilege under the U.S. Constitution of state senators in Kansas to have their votes given effect.

of Petitioner's vote just as if he had no senator at all representing him in the Supreme Court nomination process.

Respondents' refusal to allow Senate consideration of Judge Garland's Supreme Court nomination has directly caused the injury suffered by Petitioner, and only the relief requested herein – causing the full Senate to decide whether it will provide advice and consent to the nomination of Judge Garland, will remedy this injury.

## JURISDICTION AND VENUE

The United States District Court for the District of Columbia has jurisdiction over the present action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1361 (action to compel the performance of a duty), 28 U.S.C. §1651 (writs)[6], 28 U.S.C. §2201(the declaratory judgment act),[7] and 28 U.S.C. §2202 (further relief). Because granting this Petition will protect the power and function of the federal judiciary, this action is *in aid of* this Court's jurisdiction. A determination of the Senate's constitutional "advice and consent" role, and declaring what that role is, is inherent in deciding the merits of this action.

This Court has subject matter jurisdiction because this action arises under the Constitution.[8] A case "arises under" the Constitution if a claim "will be sustained if the Constitution… [is] given one construction and will be defeated if given another."[9] Petitioner's claim is that the Respondent Senators, and the Senate, have refused to

---

[6] 28 U.S.C. §1651: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law (emphasis added)."

[7] 28 U.S.C. §2201(a): "In a case of actual controversy within its jurisdiction…, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such (emphasis added)."

[8] U.S. Constitution, Article III, §2

[9] *Bell v. Hood,* 327 U.S. 678, 685 (1946); *Powell v. McCormack,* 395 U.S. 486, 514 (1969)

perform a function that the Constitution requires them to do, and that this refusal has injured Petitioner and others.

Federal District Court for the District of Columbia is the proper venue. 28 U.S.C. § 1391, as amended, provides that a civil action in the nature of this Petition may be brought in the judicial district where the events or omissions giving rise to the claim took place. Respondent United States Senate is located within the District of Columbia, which is where the events and omissions took place. The offices of Respondents Senator McConnell and Senator Grassley are also within the District of Columbia.

## FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member[10] United States Supreme Court. On that same day Senate Majority Leader McConnell issued a statement saying: "The American people should have a voice in the selection of their next Supreme Court Justice. Therefore, this vacancy should not be filled until we have a new President."[11]

On February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senate Majority Leader McConnell stating their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." Those members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."[12] By Senate rules, the Judiciary Committee provides recommendations to the full Senate on

---

[10] 28 U.S.C. §1

[11] https://www.facebook.com/mitchmcconnell/posts/1021148581257166; see also "Republicans rule out replacing Antonin Scalia until new president is elected," by Stephen Dinan and Dave Boyer, *The Washington Times*, February 13, 2016; "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia" by Mitch McConnell and Chuck Grassley, *The Washington Post,* February 18, 2016.

[12] The letter is attached as an Exhibit to this Petition

judicial nominees *before* those nominees are considered by the Senate.[13] In other words, the refusal identified in the February 23rd letter precludes Senate action, ever, on President Obama's nominee, and divests the President of his appointment power for the remainder, nearly one-fourth (11 months), of his four-year term.

On March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The President's nomination was pursuant to Article II Section 2 of the United States Constitution, which provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint… Judges of the supreme Court…."

On March 20, 2016, in a widely reported statement, Senate Majority Leader McConnell re-affirmed that the Senate would never consider President Obama's nomination of Judge Garland, and would instead await a nomination from an as-yet-

[13] The Senate Judiciary Committee recommends to the full body whether the Senate should advise and consent to a nomination by the President to fill a Supreme Court vacancy. Rule XXXI of the Standing Rule of the Senate (Rev. 2013) states: "When nominations shall be made by the President of the United States to the Senate, they shall, unless otherwise ordered, be referred to appropriate committees; and the final question on every nomination shall be, 'Will the Senate advise and consent to this nomination?'"

to-be-elected President: "The principle is the American people are choosing their next president, and their next president should pick this Supreme Court nominee."[14]

On June 21, 2016, the American Bar Association Standing Committee on the Federal Judiciary, after a months-long investigation, unanimously gave Judge Garland its highest rating of "Well-Qualified." In its June of 2016 newsletter, following the release of its rating, ABA President Paulette Brown was quoted as saying:

> It is now imperative that the Senate fulfills its constitutional responsibilities to consider and act promptly on the Supreme Court nominee. While the Court continues to function, its 4-4 decisions do not establish precedent and leave open questions on issues that are vital to the lives of everyday people.[15]

As of August 15, 2016, Judge Garland's Supreme Court nomination had awaited Senate action for 153 days – representing the longest time for such a nomination in United States history. Prior to Judge Garland, the average time for a Supreme Court nominee to be either confirmed, rejected or withdrawn was 25 days. The longest confirmation process to date, prior to Judge Garland, was 125 days for Justice Brandeis in 1916. By January 20, 2017, when President Obama's term ends,

[14] See, e.g. "Garland Shouldn't Be Considered After Election, McConnell Says," by Nicholas Fandos, *The New York Times* March 20, 2016.

[15] http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html

Judge Garland's nomination will have awaited Senate action for 311 days, by far the longest for any Supreme Court nominee in American history.[16]

[16] "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times,* by Gregor Aisch, Josh Keller, K.K. Rebecca Lai and Karen Yourish, updated March 16, 2016

## THE HARM CAUSED BY THE SENATE'S REFUSAL TO ACT

The Senate's refusal to undertake its role of advice and consent is a result of the obstruction of Respondent Senate Majority Leader McConnell, Respondent Judiciary Committee Chairman Grassley and eleven (11) members of the Senate Judiciary Committee that have blocked Committee action. In addition to the injuries caused to Petitioner and others as explained earlier, Respondents' refusal to consider the nomination of Judge Garland has and will adversely and impermissibly impact all three branches of the federal government:

(1) the President is deprived of his power to appoint judges to the United States Supreme Court;

(2) the Senate is unable to fulfill its "advice and consent" role in the judicial appointment process because senators are not allowed to vote on whether to provide advice and consent; and

(3) the Supreme Court is deprived of its statutorily-prescribed nine justices,[17] creating a situation where the Court is unable to resolve important issues and establish a uniform system of laws throughout the United States.

The lack of nine members on the Supreme Court has had a critical and adverse effect on the Court's ability to perform its responsibilities. Four important cases on the Supreme Court's 2016 docket were decided by default as a result of a 4-4 tie, which has the effect of affirming the lower court judgment.[18] When the Circuit courts disagree, the Supreme Court must be able to resolve those disputes in

---

[17] 28 U.S.C. §1

[18] *United States v. Texas*, No. 15-673; *Dollar General Corp. v. Mississippi Band of Choctaw Indians*, No. 13-496; *Friedrichs v. California Teachers Association*, No. 14-915; *Hawkins v. Community Bank of Raymore*, No. 14-520.

order to provide a uniform system of laws throughout the United States. Otherwise, citizens may have different speech, due process and other rights depending on where in the United States they live.

In addition, as a result of the Senate's refusal to act on the nomination of Judge Garland, citizens of the United States are denied a voting record for their senators. A voting record for senators is essential to enable citizens to exercise their role as informed electors in a representative government.[19]

Finally, it is important to recognize that the refusal to act on the Garland nomination is the culmination of a trend over the years in which the Senate has neglected its advice and consent role for judicial nominations by delay and inaction. That trend should be halted and reversed in order to avoid further degradation of the judiciary.

According to the Administrative Office of the U.S. Courts, judicial vacancies have been increasing to the point where, as of August 15, 2016, there were a total of 92 judicial vacancies in the federal court system, and 57 nominations pending. There are currently 31 "judicial emergencies" in the United States due to the Senate's delay, neglect and obstruction of the judicial nomination and appointment process. A "judicial emergency" in federal court is a situation in which the courts are

---

[19] "Advice, Consent, and Senate Inaction – Is Judicial Resolution Possible?" by Lee Renzin, N.Y.U. Law Review, Volume 73:1739, November 1998 at 1747-8.

unable to keep pace with the cases before them. [20]According to the American Bar Association, the number of judicial vacancies existing at the end of the current 114th Congress will be among the highest ever.[21]

---

[20] http://www.uscourts.gov/judges-judgeships; For Circuit Courts, it is defined as "any vacancy in a court of appeals where adjusted filings per panel are in excess of 700; or any vacancy in existence more than 18 months where adjusted filings are between 500 to 700 per panel." For District Courts it is defined as "any vacancy where weighted filings are in excess of 600 per judgeship; or any vacancy in existence more than 18 months where weighted filings are between 430 to 600 per judgeship; or any court with more than one authorized judgeship and only one active judge.

[21] http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnomscons.authcheckdam.pdf

## ARGUMENT

## THE COURT SHOULD ISSUE A DECLARATORY JUDGMENT AND WRIT OF MANDAMUS TO REMEDY THE SENATE'S FAILURE TO PERFORM ITS CONSTITUTIONAL DUTY

When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide advice and consent. By its refusal to consider the nomination of Judge Garland, the Senate has neglected its constitutional duty and should be required to promptly undertake that determination.

### I. When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent.

The subject matter of this Petition implicates the powers and duties of all three branches of the federal government. A New York University Law Review article on this subject in 1998 noted:

> A trifurcated government structure is arguably the most remarkable creation of the Framers. It was designed both to enhance the functioning of each branch and to prevent the aggrandizement of power by one branch. When, throughout the course of the nation's existence, breakdowns in that system have arisen, the Supreme Court has intervened to restore the system to its proper balance [citations omitted].[22]

The President and the Senate share the power and duty to fill vacancies on the Supreme Court. The United States Constitution, Article II Section 2, establishes

[22] Renzin, "Advice, Consent…,"at 1751-2; see also *Freytag v. Commissioner*, 501 U.S. 868, 878 (1991)

the process by which Supreme Court vacancies are filled: the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court...." To the extent there is ambiguity as to what the "advice and consent" role of the Senate requires, "[i]t is emphatically the province and duty of the judicial department to say what the law is."[23] Petitioner submits that the Senate's role, at a minimum, requires a determination by the Senate - as a body - of whether to provide or withhold the "advice and consent" necessary for the President to appoint a Supreme Court nominee.

The Constitution's language in Article II Section 2 establishes the inter-dependent roles of the President and Senate in the process of filling vacancies on the Supreme Court. The President shall nominate, *and by and with* the Senate's advice and consent, shall appoint. When read in its entirety, Article II Section 2 clarifies that the appointment of justices to the Supreme Court is a power and duty *jointly* vested in the President and the Senate. This clarity comes from the final clause of that section which states that, unlike the Supreme Court, the appointment of other officers may, by law, vest in the President *alone*:

> ...[the President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint... Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: <u>but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone</u>, in the Courts of Law, or in the Heads of Departments. (Emphasis added)

---

[23] *Marbury v. Madison*, 5 U.S. 137, 177 (1803)

When the Senate is procedurally blocked from deciding whether to provide "advice and consent" for a Presidential nominee, the constitutional process breaks down and the President is divested of his power to appoint. Taken to its logical conclusion, if the Senate entirely neglected its advice and consent role, the judicial branch of government would be of no consequence,[24] and eventually eliminated. In order to protect the viability of the judiciary and the power of the President, the Senate *must decide* whether to provide or withhold advice and consent. To presume as Respondents do, that the Senate, obstructed by a small group of senators, can ignore its advice and consent role with respect to nominees of a particular President, is to also presume that the Senate can eliminate the judiciary and the constitutional appointment powers of the President. That does not make sense.

An issue before this Court is whether the Senate's inaction with respect to Judge Garland has crossed the line, from a permissible management of Senate business,[25] to an impermissible abrogation of its constitutional duty. Petitioner contends that the Senate's outright refusal to even consider the President's nominee, as evidenced by the Senate Judiciary Committee letter and the statements of Leader McConnell, crosses that line and must be redressed. The Senate's refusal compromises the viability of the judiciary and the power of the presidency. In *United*

[24] The Supreme Court must have at least six (6) justices to constitute a quorum. 28 U.S.C. §1

[25] U.S. Constitution, Article I, § 5: "Each House may determine the Rules of its Proceedings…"

*States v. Ballin,* the Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[26]

The advice and consent role is not a function that a select group of senators, be it a majority of the Senate Judiciary Committee, the Chairman of that Committee, or the Senate Majority Leader, can block the Senate from performing. The Senate acts by a vote of its members, with each Senator having one vote.[27] Obstruction by an individual senator or group of senators is not a Senate action. And the appointment of judges to the Supreme Court requires the *Senate* to determine whether it will provide advice and consent.[28]

It is also important to recognize that Respondents' blocking of Senate action has effectively reduced the number on the Supreme Court from nine to eight – at least for the time during which no nomination would be considered. This type of *de facto* one-house repeal of legislation establishing the size of the judiciary violates the constitutional requirements of bicameralism (2 houses) and presentment (to the President for signature) for laws to take effect.[29]

---

[26] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[27] U.S. Constitution, Article I, §3:"each Senator shall have one Vote."

[28] U.S. Constitution, Article II, §2

[29] U.S. Constitution, Article 1, §1; §7, cl.3; *INS v. Chadha*, 462 U.S. 919, 952, 957-9 (1983)

As was stated in an N.Y.U. Law Review article by Lee Renzin in 1998:

> The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance.... In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate. [30]

Recently, in a Wall Street Journal opinion article, President Obama explained the constitutional crisis that the country is facing, and the threat it poses to the balance of power among the three branches of government. He discussed that if a group of senators

> refuse even to consider a nominee in the hopes of running out the clock until they can elect a president from their own party, so that he can nominate his own justice to the Supreme Court, then they will effectively nullify the ability of any president from the opposing party to make an appointment to the nation's highest court. They would reduce the very functioning of the judicial branch of the government to another political leverage point.
>
> We cannot allow the judicial confirmation process to descend into an endless cycle of political retaliation. There would be no path to fill a vacancy for the highest court in the land. The process would stall. Court backlogs would grow. An entire branch of government would be unable to fulfill its constitutional

[30] (citations omitted); Renzin, "Advice, Consent…," at 1757

role. And some of the most important questions of our time would go unanswered.[31]

In 1998, in response to the slowing of the judicial confirmation process, former Chief Justice Rehnquist noted, "[t]he Senate is surely under no obligation to confirm any particular nominee, but after the necessary time for inquiry, it should vote him up or vote him down."[32] In the present case, we are not just dealing with a slowing, we are dealing with a complete stoppage. A select group of senators has prevented the Senate from performing its constitutional function, determining that they would *never* consider a nominee of President Obama.

Petitioner therefore requests that the Court remedy this undoing of our system of government, and the injury to Petitioner and others similarly situated, by instructing the Senate, and instructing the Respondent senators to cause the Senate, to promptly consider and determine whether to provide advice and consent to the nomination of Judge Garland as a justice of the Supreme Court. In addition, Petitioner asks this Court to declare that, when a President nominates a justice to the Supreme Court, the Senate has a non-discretionary duty to undertake the "advice and consent" process within a reasonable time.

---

[31] "Merrick Garland Deserves a Vote—For Democracy's Sake," by Barack Obama, President of the United States, *The Wall Street Journal,* July 17, 2016.

[32] "Senate Imperils Judicial System, Rehnquist Says," by John H. Cushman, Jr., *New York Times,* January 1, 1998, A1

II. The Senate, by its refusal to consider the nomination of Judge Garland, has violated its constitutional duty and therefore should be required to promptly undertake that determination.

When a small group of senators, as is the case here, procedurally prevents the Senate from undertaking its constitutional role of advice and consent for a Supreme Court nominee, there is an adverse impact to all three branches of government and this Court may issue both a declaratory judgment and a writ of mandamus to right the situation. The action presented by this Petition is justiciable, and is not barred by either the Speech or Debate Clause of the United States Constitution or the Political Question Doctrine.

This Court has the power to provide *declaratory* relief in situations involving the other branches of government. In *National Treasury Employees Union v. Nixon,* the District of Columbia Circuit declared that the President had a constitutional duty to comply with the law. In that case, the Court viewed declaratory relief as a mechanism to provide relief without disrupting the balance of power.[33] Similarly, in *Powell v McCormack,* the Supreme Court determined that a federal "court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.... A declaratory judgment can then be used as a predicate to further relief, including an injunction."[34] In *Powell*, the Court declared that the House of Representatives lacked the power to refuse to seat a duly elected Representative from New York.[35]

[33] *National Treasury Employees Union v. Nixon,* 492 F.2d 587, 616 (D.C. Circuit 1974)

While there is case law holding that courts may not issue a *writ of mandamus* against Congress,[36] the issue is unsettled and Petitioner submits that the current situation warrants that form of extraordinary relief. 28 U.S.C. Section 1651(a) provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The plain language[37] of this statute encompasses mandamus actions against senators and the Senate.

In the landmark case of *Marbury v. Madison,* Justice Marshall described the history and use of writs of mandamus, and wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used. "Whenever," says the very able judge, "there is a right to execute an office, perform a service, or exercise a franchise (more especially if it be a matter of public concern or attended with profit), and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government." In the same case, he says, "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."[38]

---

[34] *Powell v. McCormack*, 395 U.S. 486, 499 (1969)

[35] Ibid. at 550

[36] See, e.g. *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Circuit 1970)

[37] "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise" §45:2 Sutherland Statutory Construction. See also, *Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917)

[38] *Marbury v. Madison*, 5 U.S. 137, 168-9 (1803)

The circumstances described in Justice Marshall's opinion, a right to execute an office, in a "matter of public concern," with no other legal remedy, apply to the situation now before the Court, and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government."

Moreover, in extraordinary cases the federal courts have issued mandamus against other branches of government when they neglected a clear statutory duty. In *In re Aiken County, et al.,* the D.C. Circuit Court of Appeals held, in granting a petition for a writ of mandamus against the Executive Branch, that:

> Our analysis begins with settled, bedrock principles of constitutional law. Under Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute.
>
> * * * *
>
> This case has serious implications for our constitutional structure. It is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case....[39]

Unlike other situations, where mandamus could be viewed as compromising the separation of power, in the situation at hand Petitioner seeks to employ mandamus to *restore* the separation of power. Justice Kennedy has said that "It remains one of the most vital functions of this Court to police with care the

---

[39] In *In re: Aiken County, et al.*, 725 F.3d 255,259 and 266-7 (D.C. Circuit 2013), the U.S. Court of Appeals - D.C. issued a writ of mandamus against the executive branch, specifically the Nuclear regulatory Commission, compelling it to proceed with a legally mandated licensing process.

separation of the governing powers."[40] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[41]

Finally, this action is justiciable, and is not barred by either the Speech or Debate Clause of the Constitution or the Political Question Doctrine.

A. <u>Justiciability</u>

In *Powell v. McCormack* the Supreme Court was asked to declare whether a duly elected member of the House of Representatives, Adam Clayton Powell, Jr. was unconstitutionally denied his seat. Among the preliminary requirements for the case to proceed was a determination that the case was "justiciable." In *Powell* the Court determined that it was, and went on to find that the House of Representatives was without power to exclude Powell. Similarly, this Petition is justiciable.

In deciding whether a claim is justiciable, two findings must be made: 1) that "the duty asserted can be judicially identified and its breach determined," and 2) that an effective remedy can be fashioned.[42] Petitioner has asked this Court to determine that the Senate has a non-discretionary duty to determine whether it will

[40] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring)

[41] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)
[42] *Baker v. Carr*, 369 U.S. 186, 198 (1962)

provide advice and consent to the Supreme Court nomination of Judge Garland, and that the Senate has breached that duty. Petitioner requests that the Court grant both mandamus and declaratory relief to remedy that breach of duty. Granting that relief would cause the Senate to consider Judge Garland's nomination and would remedy the situation. In *Powell,* the Court determined that declaratory relief satisfied the justiciability requirement.[43]

B. <u>Speech or Debate Clause</u>

The Speech or Debate Clause of the United States Constitution, Article I, Section 6, provides that "for any Speech or Debate in either House, [senators or representatives] shall not be questioned in any other Place."

The Speech or Debate Clause does not bar this action against Respondent Senators McConnell and Grassley. That clause only provides protection from lawsuits against legislators resulting from "words spoken in debate… [c]ommittee reports, resolutions, and the act of voting… [and] things done generally in a session of the House by one of its members in relation to business before it.'"[44] Petitioner submits that the *refusal to act* by a handful of senators, in order to procedurally prevent the Senate from performing its duty to participate in the judicial

[43] *Powell* at 516-18
[44] *Powell* at 502

appointment process for Supreme Court justices, is not an activity "done generally" by senators "in relation to business before" them.

In addition, the Speech or Debate Clause does not apply to a *refusal* to act: "it is clear from the language of the Clause that protection extends only to an act that has already been performed."[45]

However, even if this Court disagrees and determines that the Speech or Debate Clause bars this action against Senator McConnell and Senator Grassley, the Court may still review the propriety of, and act on, the *Senate's* failure to participate in the Supreme Court judicial nomination and appointment process. The Speech or Debate Clause applies only to individuals and does not apply to an action against the Senate.[46] It is also important to note that, in *Powell,* the Court left open the question of whether the Speech or Debate Clause would bar an action against individual members of Congress if no other remedy was available.[47]

C. Political Question Doctrine

The premise underlying the Political Question Doctrine is the desire to prevent federal courts from deciding policy issues. This doctrine "helps to preserve the separation of powers by ensuring that courts do not overstep their bounds."[48]

---

[45] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

[46] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 513 (1975) (Marshall, J. concurring)

[47] *Powell* at note 26

The action here does not invoke a "political question," but rather an interpretation as to whether the Constitution requires the Senate to determine if it will provide advice and consent for Supreme Court nominations. In *Baker* the Court determined that legislative apportionment is not a political question, and therefore is appropriate for judicial review. Similarly, in *Powell*, the Court decided that it could determine whether the House of Representatives properly refused to seat a duly elected and constitutionally qualified member, and found it was improper.

In the current situation, Petitioner is asking the Court to determine that the Senate, i.e. all senators, must be allowed to vote on whether to provide "advice and consent" for a duly nominated Supreme Court justice. The Senate acts by voting, and the "advice and consent" role must be carried out by *the Senate,* and not be blocked by one senator or a group of senators less than a majority. To cause the Senate to not even consider a nominee duly presented to it undermines the foundational framework of our government, and denies Petitioner the full value of his vote for United States senators and President.

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.... [I]t is the responsibility of this Court to act as the ultimate

---

[48] See *Baker v. Carr*, 369 U.S. 186, 210 (1962)

interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[49]

Eighteen years ago, in a law review article discussing the Senate's abrogation of its duty to timely consider judicial nominees, the author concluded:

> Over the past two centuries, the importance of the federal judiciary's role in the nation's framework has increased markedly, to a position surely even beyond the vision of President Washington [citation omitted]. The integrity and efficiency with which the judiciary carries out that role, however, is being jeopardized by the Senate's failure to fulfill its constitutionally mandated duties to provide advice and consent with respect to presidential nominations for federal judgeships. A judicial remedy ought to be available to respond to this threatening situation.[50]

The situation today is worse, and a judicial remedy is imperative.

---

[49] *Powell* at 549.
[50] Renzin, "Advice, Consent…," at 1787

## CONCLUSION

WHEREFORE, for the foregoing reasons, Petitioner prays for 1) an order declaring that the Senate, as a body, has a constitutional duty to determine within a reasonable time whether it will provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court, 2) a writ of mandamus directing Respondents to promptly fulfill, or cause the Senate to fulfill, its constitutional duty to determine whether it will provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court, and 3) such other and further relief as the Court deems just and proper.

Dated: August 25, 2016

Respectfully submitted,

STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

EXHIBIT

CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH
JEFF SESSIONS, ALABAMA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
JEFF FLAKE, ARIZONA
DAVID VITTER, LOUISIANA
DAVID A. PERDUE, GEORGIA
THOM TILLIS, NORTH CAROLINA

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
CHARLES E. SCHUMER, NEW YORK
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT

*Kolan L. Davis, Chief Counsel and Staff Director*
*Kristine J. Lucius, Democratic Chief Counsel and Staff Director*

# United States Senate

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

February 23, 2016

The Honorable Mitch McConnell
Senate Majority Leader
United States Senate
Washington, DC 20510

Dear Majority Leader McConnell,

As we write, we are in the midst of a great national debate over the course our country will take in the coming years. The Presidential election is well underway. Americans have already begun to cast their votes. As we mourn the tragic loss of Justice Antonin Scalia, and celebrate his life's work, the American people are presented with an exceedingly rare opportunity to decide, in a very real and concrete way, the direction the Court will take over the next generation. We believe The People should have this opportunity.

Over the last few days, much has been written about the constitutional power to fill Supreme Court vacancies, a great deal of it inaccurate. Article II, Section 2 of the Constitution is clear. The President may nominate judges of the Supreme Court. But the power to grant, *or withhold*, consent to such nominees rests exclusively with the United States Senate. This is not a difficult or novel constitutional question. As Minority Leader Harry Reid observed in 2005, "The duties of the Senate are set forth in the U.S. Constitution. Nowhere in that document does it say the Senate has a duty to give the Presidential nominees a vote. It says appointments shall be made with the advice and consent of the Senate. That is very different than saying every nominee receives a vote."

We intend to exercise the constitutional power granted the Senate under Article II, Section 2 to ensure the American people are not deprived of the opportunity to engage in a full and robust debate over the type of jurist they wish to decide some of the most critical issues of our time. Not since 1932 has the Senate confirmed in a presidential election year a Supreme Court nominee to a vacancy arising in that year. And it is necessary to go even further back — to 1888 — in order to find an election-year nominee who was nominated and confirmed under divided government, as we have now.

Accordingly, given the particular circumstances under which this vacancy arises, we wish to inform you of our intention to exercise our constitutional authority to withhold consent on any nominee to the Supreme Court submitted by this President to fill Justice Scalia's vacancy. Because our decision is based on constitutional principle and born of a necessity

to protect the will of the American people, this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017.

Sincerely,

Charles E. Grassley
Chairman, Senate Judiciary Committee

Orrin G. Hatch
United States Senator

Jeff Sessions
United States Senator

Lindsey O. Graham
United States Senator

John Cornyn
United State Senator

Michael S. Lee
United States Senator

Ted Cruz
United States Senator

Jeff Flake
United States Senator

David Vitter
United States Senator

David A. Perdue
United States Senator

Thom Tillis
United States Senator

# AFFIDAVIT

CITY OF WASHINGTON )
)
DISTRICT OF COLUMBIA )

I, the undersigned, upon being duly sworn, state the following:

My name is Steven S. Michel and I am the Petitioner. I am capable of making this affidavit, and the facts contained in this affidavit are true and correct to the best of my knowledge and belief. I have read the foregoing *Emergency Petition for Declaratory Judgment and Writ of Mandamus (Petition),* and the facts stated within it are true and correct, and the letter attached as an exhibit to the *Petition* is a true and correct copy of the original.

Further Affiant sayeth not.

STEVEN S. MICHEL

Subscribed and sworn to before me this 25th day of August, 2016.

DAVID GOODMAN
Notary Public of District of Columbia
My Commission Expires July 14, 2021

My commission expires: July 14, 2021

DAVID GOODMAN NOTARY EXPIRES JULY 14, 2021 PUBLIC DISTRICT OF COLUMBIA

## CERTIFICATE OF SERVICE

I hereby certify that on this 25 day of August, 2016, I served the foregoing *Emergency Petition for Declaratory Judgment and Writ of Mandamus* by placing a true copy in the United States mail, with certified delivery, to the following:

Loretta E. Lynch,
Attorney General of the United States
Office of the Attorney General – U.S. Department of Justice
1350 Pennsylvania Avenue, NW #409
Washington, D.C. 20004

United States Attorney's Office
Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

United States Senate
Dirksen Senate Office Building
Washington, D.C. 20510

Office of Senator Addison Mitchell McConnell
United States Senate
Washington, D.C. 20510

Office of Senator Charles Ernest Grassley
United States Senate
Washington, D.C. 20510

Steven S. Michel

E X H I B I T – 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL,** ***pro se*** | ) | |
| ***Plaintiff,*** | ) | |
| **v.** | ) | |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | **Civil Action No.: 16-1729 (RC)** |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | **Oral Argument Requested** |
| ***Defendants.*** | ) | |
| | ) | |

**MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff Steven S. Michel, *pro se,* and for his *Motion for Preliminary Injunction,* states the following:

1. On September 6, 2016 I filed a *Motion* to establish a response time and schedule for this case. That *Motion* was denied on October 11, 2016. Along with that denial, however, the Court instructed Defendants to respond to the *Petition* on or before November 25, 2016 and, recognizing the "time-sensitive" nature of the claims therein, indicated that an extension of the November 25, 2016 date was unlikely.

2. As stated in both the *Petition* and September 6th *Motion*, it is important that this matter be resolved in a time frame that permits any remedy to be meaningful and useful. Unless the Senate, as a body, considers and determines whether to provide advice and consent for Judge Garland's Supreme Court nomination before it adjourns in

December, Plaintiff's vote for President and senators will have been rendered meaningless with regard to an important judicial nomination during the term of President Obama.

3. The 114th Congress is scheduled to permanently adjourn December 16, 2016, after which Judge Garland's nomination cannot be considered by this Congress. While the December 16th adjournment may perhaps be extended until the end of 2016, the urgency of the situation exists regardless. According to online information from the United States Senate website, for the remainder of the 114th Congress the Senate is scheduled to be in session only the week of November 14, 2016, and the three weeks between November 28, 2016 and December 16, 2016. That leaves very little time for the Senate to act.

4. Because of the urgency of the situation which is the subject of my *Petition*, and my belief that the facts necessary to render a decision are uncontested, I request that the Court, pursuant to Fed. R. Civ. P. No. 65(a), issue a preliminary injunction requiring the Senate to vote to determine whether to provide its advice and consent to Judge Garland's U.S. Supreme Court nomination, before the 114th Congress adjourns at the end of the year.

5. I recognize that the Court may need time after the November 25th responses are filed to decide the merits of the *Petition* and grant appropriate relief in the nature of a declaratory judgment and/or mandamus. The Constitutional issues raised are very important. Nevertheless, unless the Senate acts to vote on Judge Garland's nomination before the end of the year, I will have been irreparably harmed with respect to that nomination and appointment process. Requiring a Senate vote on Judge Garland's

nomination before the end of the year, however, will do no harm to the rights of any person, nor compromise the public interest. The full Senate is fully entitled to vote Judge Garland's nomination up or down, as it chooses.

6. Unless a preliminary injunction is granted in this case it will be difficult or impossible for the Court to resolve this case in a time-frame that protects my rights as a voter under the 17th Amendment.

7. A *Memorandum of Points and Authorities* accompanies this *Motion*, along with an affidavit. The *Memorandum of Points and Authorities* includes many of the arguments found in my *Petition*, but also includes updated facts, some additional authority regarding standing, and discussion and reference to the *Federalist Papers.*

8. As required by Rule 65(a)(1), I have provided notice to Defendants as indicated in the attached Certificate of Service. As a courtesy I have also emailed the *Motion* and *Memorandum of Points and Authorities* to the United States Attorney and United States Senate counsel, also as indicated by the Certificate of Service. I telephonically notified both of these offices, and the office of Judge Contreras, of my intent to file this *Motion* one day prior.

9. Finally, I request that the Court determine that the security amount required by Rule 65(c) should be zero because no significant costs and damages will be sustained by Defendants if the injunction is issued and later turns out to be wrongly imposed.

10. Oral argument is requested. A proposed form of order is attached to this *Motion*.

WHEREFORE, for the foregoing reasons, Plaintiff prays for a Court order issuing a preliminary injunction that 1) requires Senator McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requires Senator Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate on the Garland nomination, and 3) requires that the Senate, as a body, vote before the end of the 114th Congress on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court.

Respectfully submitted,

STEVEN S. MICHEL, *pro se*
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL,** ***pro se*** | ) | |
| ***Plaintiff,*** | ) | |
| **v.** | ) | |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | **Civil Action No.: 16-1729 (RC)** |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | **Oral Argument Requested** |
| ***Defendants*****.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

STEVEN S. MICHEL, *pro se*
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

**TABLE OF CONTENTS**

INTRODUCTION....................................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT – .......................................................................................................7

STANDARD FOR GRANTING INJUNCTIVE RELIEF..........................................7

1) PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF THE *PETITION*.........8

a) Plaintiff has standing.......................................................................8

b) When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent..........................................................12

c) By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination.......................................................................16

d) This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine." ...................................................................20

2) ABSENT AN INJUNCTION, PLAINTIFF WILL SUFFER IRREPARABLE HARM FOR WHICH THERE IS NO ADEQUATE LEGAL REMEDY...........................23

(3) AN INJUNCTION WILL NOT HARM OTHER PARTIES.........................................24

(4) AN INJUNCTION WILL NOT HARM THE PUBLIC INTEREST................................25

CONCLUSION.....................................................................................................26

## TABLE OF AUTHORITIES

**CASES:**

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 22

*Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917). . . . . . . . . . . . . . . . . . . . . .18

*Coleman v. Miller*, 307 U.S. 433 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Department of Commerce et al. v. United States House of Representatives, et al.*, 525 U.S. 316 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Dollar General Corp. v. Mississippi Band of Choctaw Indians,* No. 13-496 (2016). . . . . . . . 6

*Eastland v. United States Serviceman's Fund,* 421 U.S. 491 (1975). . . . . . . . . . . . . . . . . 22

*Freytag v. Commissioner*, 501 U.S. 868 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Friedrichs v. California Teachers Association*, No. 14-915 (2016). . . . . . . . . . . . . . . . . . . 6

*Hawkins v. Community Bank of Raymore,* No. 14-520 (2016). . . . . . . . . . . . . . . . . . . . . 6

*In re: Aiken County, et al.*, 725 F.3d 255 (D.C. Circuit 2013). . . . . . . . . . . . . . . . . . . . . . .19

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Circuit 1970). . . . . . . . . . . . . . .17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Marbury v. Madison*, 5 U.S. 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 18

*Morrison v. Olson,* 487 U.S. 654, 704-5 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Circuit 1974). . . . . . . . 17

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Powell v. McCormack,* 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20-23

*Public Citizen v. United States Department of Justice,* 491 U.S. 440 (1989). . . . . . . . . . . 19

*Serono Labs, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . 8

*Taylor v. Resolution Trust Corp.* 56 F.3d 1497, 1506 (D.C. Cir. 1995). . . . . . . . . . . . . . . . .8

*United States v. Ballin*, 144 U.S. 1 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Munoz-Flores,* 495 U.S. 385, 393-5 (1990). . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Texas*, No. 15-673 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**CONSTITUTION, STATUTES AND RULES:**

U.S. CONSTITUTION, ARTICLE I, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. CONSTITUTION, ARTICLE I, § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. CONSTITUTION, ARTICLE II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 13

U.S. CONSTITUTION, AMENDMENT XVII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

28 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 13

28 U.S.C. § 1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

STANDING RULES OF THE SENATE, RULES XXV, XXXI. 113TH CONGRESS, 1ST SESSION. DOCUMENT 113-18. REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

**OTHER:**

Aisch, Gregor; Keller, Josh; Lai, K.K. Rebecca and Yourish, Karen: "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times*, updated 3/16/16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

American Bar Association, Status of Federal Judicial Vacancies, Nominations and Confirmations: 103rd – 113th Congress (1993-2014). http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnomscons.authcheckdam.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

American Bar Association, ABA Washington Letter, June 2016. http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cushman, John H., Jr.: "Senate Imperils Judicial System, Rehnquist Says," *New York Times,* January 1, 1998, A1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DeBonis, Mike and Kane, Paul: "Supreme Court is an issue again after McCain suggests Clinton blockade," *The Washington Post*, October 17, 2016, https://www.washingtonpost.com/news/powerpost/wp/2016/10/17/supreme-court-is-an-issue-again-after-mccain-suggests-clinton-blockade/ . . . . . . . . . . . . . . . . . . . . . . 16

Dinan, Stephen and Boyer, Dave: "Republicans rule out replacing Antonin Scalia until new president is elected." *The Washington Times*, February 13, 2016. . . . . . . . . . . . . . . . . . . . 2

Fandos, Nicholas: "Garland Shouldn't Be Considered After Election, McConnell Says," *The New York Times* March 20, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Grassley, Senator Chuck: Letter from Senator Grassley and Senate Judiciary Commit-tee members to Senate Majority Leader McConnell, February 23, 2016. . . . . . . . . . . . . . . 2, 3

Hamilton, Madison, and Jay; *Federalist Papers* (1788), Nos. 66, 67, 70, 76, 77. . . . . . 2, 11-14

Massie, Chris, "John McCain: 'I don't know' if Trump will be better for Supreme Court than Clinton," *CNN,* October 17, 2016, http://www.cnn.com/2016/10/17/politics/mccain-clinton-trump-supreme-court/index.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McConnell and Grassley: "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia." Op-Ed. *The Washington Post,* February 18, 2016. . . . . . . . . . . 2

McConnell, Senator Mitchell: Posting to Facebook page: https://www.facebook.com/mitchmcconnell/posts/1021148581257166 . . . . . . . . . . . 2

Obama, President Barack: "Merrick Garland Deserves a Vote - For Democracy's Sake." Op-Ed. *The Wall Street Journal,* July 17, 2016.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?" N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . . . . . . . 6, 12, 15, 25

Sutherland Statutory Construction, § 45:2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States Courts website ("Judicial Emergencies" listed under Judicial Vacancies): http://www.uscourts.gov/judges-judgeships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**INTRODUCTION**

I, the Plaintiff in this case, seek a preliminary injunction requiring Defendants to take those actions, prior to the adjournment of the 114th Congress, necessary for the Senate to determine, by a vote of the entire body, whether it will provide its advice and consent to the nomination of Judge Merrick Garland to the United States Supreme Court. A preliminary injunction is needed because on December, 16, 2016 the 114th Congress is scheduled to adjourn, and I will have forever been deprived of my rights, under the 17th Amendment to the United States Constitution, to have my elected senators exercise their equal vote on whether to provide advice and consent to the nomination of Judge Garland.

In this action, I have sought a *declaratory judgment* from the Court declaring that the Senate, as a body, has a non-discretionary duty under Article II Section 2 of the United States Constitution to determine, within a reasonable time, whether to provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court. I have also asked the Court to issue a *writ of mandamus* directing Defendants to promptly fulfill, or cause the United States Senate to fulfill, its constitutional duty to determine whether to provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court.

Defendants are to respond to my Petition by November 25, 2016,[1] which leaves little time for the Court to evaluate and provide the relief I have requested before it is too late to protect me from irreparable injury. As stated in my *Petition*, this case involves Constitutional issues of the utmost importance, and I believe the facts and law support my

---

[1] Case 1:16-cv-01729-RC, *Order*, ECF Document 11, October 11, 2016

prevailing on the merits. Absent a preliminary injunction, however, it will be extremely difficult, if not impossible, to protect my rights with respect to the nomination of Judge Garland. On the other hand, issuing a preliminary injunction will cause the Defendants no harm, because I have not requested that the Court cause the Senate to *provide* its advice and consent, only that it cause the Senate to determine *whether* to provide advice and consent. It is hard to imagine any scenario where having the Senate vote on whether to provide advice and consent for a U.S. Supreme Court nomination would not be in the public interest.

**FACTUAL BACKGROUND**

Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member[2] United States Supreme Court. On that same day Senate Majority Leader McConnell issued a statement saying: "The American people should have a voice in the selection of their next Supreme Court Justice. Therefore, this vacancy should not be filled until we have a new President."[3]

On February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senate Majority Leader

---

[2] 28 U.S.C. §1

[3]https://www.facebook.com/mitchmcconnell/posts/1021148581257166; see also "Republicans rule out replacing Antonin Scalia until new president is elected," by Stephen Dinan and Dave Boyer, *The Washington Times*, February 13, 2016; "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia" by Mitch McConnell and Chuck Grassley, *The Washington Post,* February 18, 2016.

It is important to understand that the Framers did not appear to believe that voters should choose Supreme Court justices: "The exercise of [the appointment power] by the people at large will be readily admitted to be impracticable; as waiving every other consideration, it would leave them little time to do anything else." *Federalist Papers* No. 76, Hamilton.

McConnell stating their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." Those members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."[4] By Senate rules, the Judiciary Committee provides recommendations to the full Senate on judicial nominees *before* those nominees are considered and voted upon by the Senate.[5] In other words, the refusal identified in the February 23rd letter precludes Senate action, ever, on President Obama's nominee, and divests the President of his appointment power for the remainder, nearly one-fourth (11 months), of his four-year term.

On March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The President's nomination was pursuant to Article II Section 2 of the United States Constitution, which provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint… Judges of the supreme Court…."

On March 20, 2016, in a widely reported statement, Senate Majority Leader McConnell re-affirmed that the Senate would never consider President Obama's nomination of Judge Garland, and would instead await a nomination from an as-yet-to-be-

---

[4] The letter is attached as an Exhibit to this Petition

[5] The Senate Judiciary Committee recommends to the full body whether the Senate should advise and consent to a nomination by the President to fill a Supreme Court vacancy. Rule XXXI of the Standing Rule of the Senate (Rev. 2013) states: "When nominations shall be made by the President of the United States to the Senate, they shall, unless otherwise ordered, be referred to appropriate committees; and the final question on every nomination shall be, 'Will the Senate advise and consent to this nomination?'"

elected President: "The principle is the American people are choosing their next president, and their next president should pick this Supreme Court nominee."[6]

On June 21, 2016, the American Bar Association Standing Committee on the Federal Judiciary, after a months-long investigation, unanimously gave Judge Garland its highest rating of "Well-Qualified." In its June of 2016 newsletter, following the release of its rating, ABA President Paulette Brown was quoted as saying:

> It is now imperative that the Senate fulfills its constitutional responsibilities to consider and act promptly on the Supreme Court nominee. While the Court continues to function, its 4-4 decisions do not establish precedent and leave open questions on issues that are vital to the lives of everyday people.[7]

As of October 17, 2016, Judge Garland's Supreme Court nomination had awaited Senate action for 216 days – representing the longest time for such a nomination in United States history. Prior to Judge Garland, the average time for a Supreme Court nominee to be either confirmed, rejected or withdrawn was 25 days. The longest confirmation process to date, prior to Judge Garland, was 125 days for Justice Brandeis in 1916. By January 20, 2017, when President Obama's term ends, Judge Garland's nomination will have awaited Senate action for 311 days, by far the longest for any Supreme Court nominee in American history.[8]

---

[6] See, e.g. "Garland Shouldn't Be Considered After Election, McConnell Says," by Nicholas Fandos, *The New York Times* March 20, 2016.

[7]http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html

[8] "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times,* by Gregor Aisch**,** Josh Keller, K.K. Rebecca Lai and Karen Yourish, updated March 16, 2016

The Senate's refusal to undertake its role of advice and consent is a result of the obstruction of Defendant Senate Majority Leader McConnell, Defendant Judiciary Committee Chairman Grassley and eleven (11) members of the Senate Judiciary Committee that have blocked Committee action.[9]

In addition to my injuries, as explained earlier, Defendants' refusal to consider the nomination of Judge Garland has and will adversely and impermissibly impact all three branches of the federal government:

(1) the President is deprived of his power to appoint judges to the United States Supreme Court;

(2) the Senate is unable to fulfill its "advice and consent" role in the judicial appointment process because senators are not allowed to vote on whether to provide advice and consent; and

(3) the Supreme Court is deprived of its statutorily-prescribed nine justices,[10] creating a situation where the Court is unable to resolve important issues and establish a uniform system of laws throughout the United States.

The lack of nine members on the Supreme Court has had a critical and adverse effect on the Court's ability to fulfill its responsibilities. Four important cases on the Supreme

[9] Defendant Kentucky Senator McConnell, as leader of the majority party in the Senate, is able to schedule or refuse votes of the full Senate. He has refused to allow a vote on whether the Senate should provide advice and consent for the nomination of Judge Garland. Defendant Iowa Senator Grassley is Chairman of the Senate Judiciary Committee and, pursuant to the Standing Rules of the Senate, all judicial nominations are referred to the Judiciary Committee which then recommends to the full body whether it should provide advice and consent. As Chairman, Senator Grassley has refused to allow the Committee to consider the Supreme Court nomination of Judge Garland. Defendant United States Senate is the constitutional body of the United States government that must determine whether to provide advice and consent for nominees to the Supreme Court. The Senate has not, and by the statements of a small group of senators that control Senate business, will not undertake this constitutional duty with respect to the nomination of Judge Garland to the Supreme Court.

[10] 28 U.S.C. §1

Court's 2016 docket were decided by default as a result of a 4-4 tie, which has the effect of affirming the lower court judgment.[11] When the circuit courts disagree, the Supreme Court must be able to resolve those disputes in order to provide a uniform system of laws throughout the United States. Otherwise, citizens may have different speech, due process and other rights depending on where in the United States they live.

In addition, as a result of the Senate's refusal to act on the nomination of Judge Garland, citizens of the United States are denied a voting record for their senators. A voting record for senators is essential to enable citizens to exercise their role as informed electors in a representative government.[12]

Finally, it is important to recognize that the refusal to act on the Garland nomination is the culmination of a trend over the years in which the Senate has neglected its advice and consent role for judicial nominations by delay and inaction. That trend should be halted and reversed in order to avoid further degradation of the judiciary.

According to the Administrative Office of the U.S. Courts, judicial vacancies have been increasing to the point where, as of October 17, 2016, there were a total of 99 judicial vacancies in the federal court system, and 59 nominations pending. There are currently 35 "judicial emergencies" in the United States due to the Senate's delay, neglect and obstruction of the judicial nomination and appointment process. All of these numbers have increased significantly since I filed my original *Petition* in late August. A "judicial

---

[11] *United States v. Texas*, No. 15-673; *Dollar General Corp. v. Mississippi Band of Choctaw Indians*, No. 13-496; *Friedrichs v. California Teachers Association*, No. 14-915; *Hawkins v. Community Bank of Raymore,* No. 14-520.

[12] "Advice, Consent, and Senate Inaction – Is Judicial Resolution Possible?" by Lee Renzin, N.Y.U. Law Review, Volume 73:1739, November 1998 at 1747-8.

emergency" in federal court is a situation in which the courts are unable to keep pace with the cases before them. [13]According to the American Bar Association, the number of judicial vacancies existing at the end of the current 114th Congress will be among the highest ever.[14]

**ARGUMENT**

The standards that govern whether a preliminary injunction should be issued support such relief in this case. The law and facts of the situation surrounding the Garland nomination, I believe, indicate that I will succeed on the merits. Absent an injunction, I will suffer irreparable harm for which there is no adequate legal remedy, and granting a preliminary injunction as requested will not harm the Defendants and will be in the public interest.

**Standard for Granting Injunctive Relief**

By this motion I am asking the Court to provide preliminary injunctive relief pursuant to Fed. R. Civ. P 65(a). No other avenue for adequate relief exists, and my claims satisfy the four-part test for interim injunctive relief, which is: (1) that I am likely to

---

[13] http://www.uscourts.gov/judges-judgeships; For Circuit Courts, it is defined as "any vacancy in a court of appeals where adjusted filings per panel are in excess of 700; or any vacancy in existence more than 18 months where adjusted filings are between 500 to 700 per panel." For District Courts it is defined as "any vacancy where weighted filings are in excess of 600 per judgeship; or any vacancy in existence more than 18 months where weighted filings are between 430 to 600 per judgeship; or any court with more than one authorized judgeship and only one active judge.

[14]http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnomscons.authcheckdam.pdf

succeed on the merits of my *Petition*, (2) that in the absence of an injunction I will suffer irreparable harm for which there is no adequate legal remedy, (3) that the injunction will not substantially harm other parties, and (4) that the injunction will not significantly harm the public interest.[15]

**(1) Plaintiff is Likely to Succeed on the Merits of the *Petition***

The facts and law governing this action indicate that I should succeed on the merits. I have standing. In addition, I believe the law requires that when the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent. By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination. This case is justiciable, and the claims I am making do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."

**a) Plaintiff Has Standing**

As stated in my *Petition,* I am a United States citizen, a resident of Santa Fe County in New Mexico, and a registered voter in that county of New Mexico. In recent elections I have voted for President Barack Obama and for the current U.S. Senators representing New Mexico, Thomas Udall and Martin Heinrich.

---

[15] *Taylor v. Resolution Trust Corp.* 56 F.3d 1497, 1506 (D.C. Cir. 1995). These four factors have generally been evaluated in a manner that balances them against each other. *See Serono Labs, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir. 1998).

I have standing to bring this action because the situation which I request be resolved is of "imperative constitutional necessity" [16] and has caused me specific injury-in-fact which can be remedied only by the relief requested herein.[17]

I have filed this action because I have had the effectiveness of my vote for United States senators diminished as a result of the actions of Defendants. Those actions have denied the Senators that represent me in the Senate of their ability to vote in the Senate with respect to the nomination of Judge Garland. This deprivation has caused me specific injury-in-fact of a nature recognized as sufficient to establish standing.

In *Department of Commerce et al. v. U.S. House of Representatives et al.*, a case involving the Constitution's "Census Clause" and voter standing, the Supreme Court held:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[18]

Other cases have confirmed the constitutionally-protected interest citizens and others have in protecting the effectiveness of their vote. [19] The 17th Amendment of the United States Constitution states:

---

[16] *Nixon v. Fitzgerald*, 457 U.S. 731, 761 (1982) (Burger, C.J., concurring)

[17] These three factors: injury, causation and ability to redress, were established in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 573-4, 578 (1992).

[18] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[19] See, e.g. *Coleman v. Miller*, 307 U.S. 433, 438 (1939), where the U.S. Supreme Court discussed the right and privilege under the U.S. Constitution of state senators in Kansas to have their votes given effect.

> The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and *each Senator shall have one vote*....

(Emphasis added). This constitutional provision vests citizens with the right to vote for senators who are each to have one vote on Senate actions.

When a group of senators blocks Senate consideration of a Supreme Court nominee, and senators representing me are prohibited from voting, I am deprived of the effectiveness of my constitutionally provided right to vote for, and be represented by, United States senators. This is not a diminution of voting power shared equally by all citizens, but is a disproportionate impairment to those citizens, such as me, who are not represented by the senators blocking Senate action. Because my senators have been prevented from voting on the nomination of Judge Garland, these senators have effectively lost their ability to represent the voters of New Mexico on the Garland nomination – and this has diminished the effectiveness of my vote just as if I had no senator at all representing me in the Supreme Court nomination process. On the other hand, constituents of the senators blocking Senate action have been provided powers exceeding their "one vote" constitutional allocation.

It is important to recognize that the harm I am claiming is different from the generalized harm that has precluded voter standing in situations where the Senate declines to consider legislation. My injury, and claim of standing, are based upon rights that I have under the 17th Amendment to vote for United States senators, and to have each of those senators represent my interests with "one vote" in the Senate. I understand that my voting power is not necessarily diminished when the Senate refuses to consider legislation and other things that are within its discretion to act (or not act) upon. My voting power *is*

diminished, however, when my senators are procedurally blocked by other senators, who possess disproportionate power to control Senate action, from voting on items that the Senate, as a body, *must* vote on – such as whether to provide advice and consent for a Supreme Court nominee. In other words, when the entire Senate votes, my Senators must be provided "one vote." And in the specific situation of U.S. Supreme Court nominations, the Constitution requires that the entire Senate must vote. In the situation at hand, a minority of senators have co-opted the Senate's deliberation and voting process, and attempted to withhold advice and consent for the Garland nomination by blocking Senate consideration.

As will be discussed in more detail later, the framers of the Constitution intended the *entire* Senate to vote on Supreme Court nominees. This is supported by the writings of the contemporaneous *Federalist Papers.* Alexander Hamilton authored No. 76, which explains why the *entire* Senate must participate in the appointment process. It basically says that while "some individuals" in the Senate might be improperly influenced, if the entire "body" is acting there will always be a "large proportion" of "independent and public-spirited" senators to preserve the integrity of the process:

> But it is as little to be doubted that there is always a large proportion of the body which consists of independent and public-spirited men who have an influential weight in the councils of the nation… That it might therefore be allowable to suppose that the executive might occasionally influence some individuals in the Senate, yet the supposition that he could in general purchase the integrity of the whole body would be forced and improbable.

Defendants' refusal to allow Senate consideration of Judge Garland's Supreme Court nomination has directly caused my injury, and only the relief requested herein – causing the full Senate to decide whether it will provide advice and consent to the nomination of Judge Garland, can remedy this injury.

**b) When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent.**

The subject matter of this Petition implicates the powers and duties of all three branches of the federal government. A New York University Law Review article on this subject in 1998 noted:

> A trifurcated government structure is arguably the most remarkable creation of the Framers. It was designed both to enhance the functioning of each branch and to prevent the aggrandizement of power by one branch. When, throughout the course of the nation's existence, breakdowns in that system have arisen, the Supreme Court has intervened to restore the system to its proper balance [citations omitted].[20]

The President and the Senate share the power and duty to fill vacancies on the Supreme Court. The United States Constitution, Article II Section 2, establishes the process by which Supreme Court vacancies are filled: the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court…." To the extent there is ambiguity as to what the "advice and consent" role of the Senate requires, "[i]t is emphatically the province and duty of the judicial department to say what the law is."[21] I believe the Senate's role, at a minimum, requires a determination by the Senate - as a body - of whether to provide or withhold the "advice and consent" necessary for the President to appoint a Supreme Court nominee. The Senate cannot ignore a nomination. In the *Federalist Papers*, Alexander Hamilton, says: "[the Senate] can <u>only</u> ratify or reject the choice [the President] may have made." (emphasis added).[22] Any fair reading

---

[20] Renzin, "Advice, Consent…,"at 1751-2; see also *Freytag v. Commissioner*, 501 U.S. 868, 878 (1991)

[21] *Marbury v. Madison,* 5 U.S. 137, 177 (1803)

[22] *Federalist Papers* No. 66, Hamilton

of the *Federalist Papers* recognizes that *inaction* was not an option ever even contemplated by the Framers.

The Constitution's language in Article II Section 2 establishes the inter-dependent roles of the President and Senate in the process of filling vacancies on the Supreme Court. The President shall nominate, *and by and with* the Senate's advice and consent, shall appoint. When read in its entirety, Article II Section 2 clarifies that the appointment of justices to the Supreme Court is a power and duty *jointly* vested in the President and the Senate.[23] When the Senate is procedurally blocked from deciding whether to provide "advice and consent" for a Presidential nominee, the constitutional process breaks down and the President is divested of his power to appoint. Such procedural maneuvers also thwart the Framers understanding that Senate co-operation was a required part of the process.[24] Taken to its logical conclusion, if the Senate – acting through the procedural power of a few senators - entirely neglected its advice and consent role, the judicial branch of government would be of no consequence,[25] and eventually eliminated. That does not make sense.

---

[23] "The ordinary power of appointment is confided to the President and Senate *jointly*…," *Federalist Papers* No. 67, Hamilton; This clarity comes from the final clause of that section which states that, unlike the Supreme Court, the appointment of other officers may, by law, vest in the President *alone*:

> … [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint… Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: <u>but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone</u>, in the Courts of Law, or in the Heads of Departments.

(Emphasis added).

[24] *Federalist Papers* Nos. 76,77 Hamilton

[25] The Supreme Court must have at least six (6) justices to constitute a quorum. 28 U.S.C. §1

Moreover, there was a reason why the Framers vested the appointment power in the President *and the Senate*, and not the electorate or the House of Representatives. The Senate was perceived to be a stable and deliberative body. Unlike the House of Representatives, it was not "so fluctuating" and "numerous" as to threaten an orderly appointment process – which, if assigned to the House, would invite "infinite delays and embarrassments." The Framers expected that the Senate would exhibit "deliberation" and "circumspection," and serve as an "excellent check" to assure that Presidential nominees were not governed by "private inclinations and interests."[26] The current situation in the Senate is the complete opposite of what the Framers intended – with a small group of powerful Senators obstructing an orderly nomination and appointment process to fill Supreme Court vacancies.

An issue before this Court is whether the Senate's inaction with respect to Judge Garland has crossed the line, from a permissible management of Senate business[27] to an impermissible abrogation of its constitutional duty. The Senate's outright refusal to even consider the President's nominee, as evidenced by the Senate Judiciary Committee letter and the statements of Leader McConnell, crosses that line and must be redressed. The Senate's refusal compromises the viability of the judiciary and the power of the presidency. In *United States v. Ballin,* the Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[28]

---

[26] *Federalist Papers* Nos. 70, 76, 77

[27] U.S. Constitution, Article I, § 5: "Each House may determine the Rules of its Proceedings…"

As was stated in an N.Y.U. Law Review article by Lee Renzin in 1998:

> The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance…. In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate. [29]

Recently, in a Wall Street Journal opinion article, President Obama explained the constitutional crisis that the country is facing, and the threat it poses to the balance of power among the three branches of government. He discussed that if a group of senators

> refuse even to consider a nominee in the hopes of running out the clock until they can elect a president from their own party, so that he can nominate his own justice to the Supreme Court, then they will effectively nullify the ability of any president from the opposing party to make an appointment to the nation's highest court. They would reduce the very functioning of the judicial branch of the government to another political leverage point.
>
> We cannot allow the judicial confirmation process to descend into an endless cycle of political retaliation. There would be no path to fill a vacancy for the highest court in the land. The process would stall. Court backlogs would grow. An entire branch of government would be unable to fulfill its constitutional role. And some of the most important questions of our time would go unanswered.[30]

President Obama's forewarning appears to be valid. On October 17, 2016 Senator John McCain from Arizona was quoted as saying: "I promise you that we will be united

---

[28] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[29] (citations omitted); Renzin, "Advice, Consent…," at 1757

[30] "Merrick Garland Deserves a Vote—For Democracy's Sake," by Barack Obama, President of the United States, *The Wall Street Journal,* July 17, 2016.

against any Supreme Court nominee that Hillary Clinton, if she were president, would put up." While a spokesperson for Senator McCain later walked that statement back, it is nevertheless indicative of a Senate process that is so broken, and so contrary to what the Constitution intended and requires, that court intervention is warranted and necessary.[31]

In 1998, in response to the slowing of the judicial confirmation process, former Chief Justice Rehnquist noted, "[t]he Senate is surely under no obligation to confirm any particular nominee, but after the necessary time for inquiry, it should vote him up or vote him down."[32] In the present case, we are not just dealing with a slowing, we are dealing with a complete stoppage.

**c) By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination.**

When a small group of senators, as is the case here, procedurally blocks the Senate from undertaking its constitutional role of advice and consent for a Supreme Court nominee, there is an adverse impact to all three branches of government and this Court may issue both a declaratory judgment and a writ of mandamus to right the situation. In the interim, to avoid irreparable harm, the Court may issue a preliminary injunction to assure the Senate considers the Garland nomination. The action presented by my *Petition* is

---

[31] DeBonis, Mike and Kane, Paul: "Supreme Court is an issue again after McCain suggests Clinton blockade," *The Washington Post*, October 17, 2016, https://www.washingtonpost.com/news/powerpost/wp/2016/10/17/supreme-court-is-an-issue-again-after-mccain-suggests-clinton-blockade/; "John McCain: 'I don't know' if Trump will be better for Supreme Court than Clinton," Chris Massie, *CNN,* 10/17/16, http://www.cnn.com/2016/10/17/politics/mccain-clinton-trump-supreme-court/index.html.

[32] "Senate Imperils Judicial System, Rehnquist Says," by John H. Cushman, Jr., *New York Times,* January 1, 1998, A1

justiciable, and is not barred by either the "Speech or Debate Clause" of the United States Constitution or the Political Question Doctrine.

This Court has the power to provide *declaratory* relief in situations involving the other branches of government. In *National Treasury Employees Union v. Nixon,* the District of Columbia Circuit declared that the President had a constitutional duty to comply with the law. In that case, the Court viewed declaratory relief as a mechanism to provide relief without disrupting the balance of power.[33] Similarly, in *Powell v McCormack,* the Supreme Court determined that a federal "court may grant declaratory relief even though it chooses not to issue an injunction or mandamus…. A declaratory judgment can then be used as a predicate to further relief, including an injunction."[34] In *Powell*, the Court declared that the House of Representatives lacked the power to refuse to seat a duly elected Representative from New York.[35]

In the present case, there is simply insufficient time to issue a declaratory judgment and wait to see whether it must be followed up by injunctive relief. The Senate of the 114th Congress will adjourn on December 16, 2016, after which a new Senate, and shortly thereafter a new President, will be seated. At that point, my right to have equal Senate representation in the confirmation process for Judge Garland will have been lost.

While there is case law holding that courts may not issue a *writ of mandamus* against Congress,[36] the issue is unsettled and Plaintiff submits that the current situation

---

[33] *National Treasury Employees Union v. Nixon,* 492 F.2d 587, 616 (D.C. Circuit 1974)

[34] *Powell v. McCormack*, 395 U.S. 486, 499 (1969)

[35] Ibid. at 550

[36] See, e.g. *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Circuit 1970)

warrants that form of extraordinary relief. 28 U.S.C. Section 1651(a) provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The plain language[37] of this statute encompasses mandamus actions against senators and the Senate. The preliminary injunction I am seeking by this motion would have the same effect, with respect to the nomination of Judge Garland, as the writ of mandamus requested in my *Petition*.

In the landmark case of *Marbury v. Madison,* Justice Marshall described the history and use of writs of mandamus, and wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used. "Whenever," says the very able judge, "there is a right to execute an office, perform a service, or exercise a franchise (more especially if it be a matter of public concern or attended with profit), and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government." In the same case, he says, "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."[38]

The circumstances described in Justice Marshall's opinion, a right to execute an office, in a "matter of public concern," with no other legal remedy, apply to the situation now before the Court, and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government."

---

[37] "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise" §45:2 Sutherland Statutory Construction. See also, *Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917)

[38] *Marbury v. Madison*, 5 U.S. 137, 168-9 (1803)

It is also worth noting that in extraordinary cases the federal courts have issued mandamus against other branches of government when they neglected a clear statutory duty. In *In re Aiken County, et al.,* the D.C. Circuit Court of Appeals held, in granting a petition for a writ of mandamus against the Executive Branch, that:

> Our analysis begins with settled, bedrock principles of constitutional law. Under Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute.
>
> * * * *
>
> This case has serious implications for our constitutional structure. It is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case....[39]

Unlike other situations, where mandamus, or in the case of this *Motion* a preliminary injunction, could be viewed as compromising the separation of power, in the situation at hand I am seeking injunctive relief to *restore* the separation of power. Justice Kennedy has said that "It remains one of the most vital functions of this Court to police with care the separation of the governing powers."[40] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the

---

[39] In *In re: Aiken County, et al.*, 725 F.3d 255,259 and 266-7 (D.C. Circuit 2013), the U.S. Court of Appeals - D.C. issued a writ of mandamus against the executive branch, specifically the Nuclear Regulatory Commission, compelling it to proceed with a legally mandated licensing process.

[40] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring); see also, *United States v. Munoz-Flores,* 495 U.S. 385, 393-5 (1990); Recognizing the language from *Morrison, infra.* that "[t]he Framers of the Constitution . . . viewed the principle of separation of powers as the absolutely central guarantee of a just Government," the *Munoz-Flores* Court noted that "the Court has repeatedly adjudicated separation-of-powers claims brought by people acting in their individual capacities."

Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[41]

**d) This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."**

The claims in my *Petition* are justiciable, and are not barred by either the "Speech or Debate Clause" of the U.S. Constitution or the Political Question Doctrine.

Justiciability

In *Powell v. McCormack* the Supreme Court was asked to declare whether a duly elected member of the House of Representatives, Adam Clayton Powell, Jr. was unconstitutionally denied his seat. Among the preliminary requirements for the case to proceed was a determination that the case was "justiciable." In *Powell* the Court determined that it was, and went on to find that the House of Representatives was without power to exclude Powell. Similarly, this Petition is justiciable.

In deciding whether a claim is justiciable, two findings must be made: 1) that "the duty asserted can be judicially identified and its breach determined," and 2) that an effective remedy can be fashioned.[42] I have asked this Court to determine that the Senate has a non-discretionary duty to determine whether it will provide advice and consent to the Supreme Court nomination of Judge Garland, and that the Senate has breached that duty. I have also requested that the Court grant both declaratory and mandamus relief to remedy that breach of duty. Granting that relief would cause the Senate to consider Judge

[41] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)

[42] *Baker v. Carr*, 369 U.S. 186, 198 (1962)

Garland's nomination and would remedy the situation. In *Powell,* the Court determined that declaratory relief satisfied the justiciability requirement.[43]

Speech or Debate Clause

The "Speech or Debate Clause" of the United States Constitution, Article I, Section 6, provides that "for any Speech or Debate in either House, [senators or representatives] shall not be questioned in any other Place."

The "Speech or Debate Clause" is not a bar to this action against Defendants Senator McConnell and Senator Grassley. That clause only provides protection from lawsuits against legislators resulting from "words spoken in debate… [c]ommittee reports, resolutions, and the act of voting… [and] things done generally in a session of the House by one of its members in relation to business before it.'"[44] The *refusal to act* by a handful of senators, in order to procedurally prevent the Senate from performing its duty to participate in the judicial appointment process for Supreme Court justices, is not an activity "done generally" by senators "in relation to business before" them.

In addition, the Speech or Debate Clause does not apply to a *refusal* to act: "it is clear from the language of the Clause that protection extends only to an act that has already been performed."[45]

---

[43] *Powell* at 516-18

[44] *Powell* at 502

[45] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

However, even if this Court disagrees and determines that the Speech or Debate Clause bars this action against Senator McConnell and Senator Grassley, the Court may still review the propriety of, and act on, the *Senate's* failure to participate in the Supreme Court judicial nomination and appointment process. The Speech or Debate Clause applies only to individuals and does not apply to an action against the Senate.[46] It is also important to note that, in *Powell,* the Court left open the question of whether the Speech or Debate Clause would bar an action against individual members of Congress if no other remedy was available.[47]

Political Question Doctrine

The premise underlying the Political Question Doctrine is the desire to prevent federal courts from deciding policy issues. This doctrine "helps to preserve the separation of powers by ensuring that courts do not overstep their bounds."[48] The action here does not invoke a "political question," but rather an interpretation as to whether the Constitution requires the Senate to determine if it will provide advice and consent for Supreme Court nominations. In *Baker* the Court determined that legislative apportionment is not a political question, and therefore is appropriate for judicial review. Similarly, in *Powell*, the Court decided that it could determine whether the House of Representatives

---

[46] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 513 (1975) (Marshall, J. concurring)

[47] *Powell* at note 26

[48] See *Baker v. Carr*, 369 U.S. 186, 210 (1962)

properly refused to seat a duly elected and constitutionally qualified member, and found it was improper.

In the current situation, I am asking the Court to interpret the Constitution and determine that the Senate, i.e. all senators, must be allowed to vote on whether to provide "advice and consent" for a duly nominated Supreme Court justice. The Senate acts by voting, and the "advice and consent" role must be carried out by *the Senate,* and not be blocked by one senator or a group of senators less than a majority. By causing the Senate to not even consider a nominee duly presented to it undermines the foundational framework of our government, Defendants have denied me the full value of my vote for United States senators and President.

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.... [I]t is the responsibility of this Court to act as the ultimate interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[49]

**(2) Absent an Injunction, Plaintiff Will Suffer Irreparable Harm for which there is No Adequate Legal Remedy**

As stated in both the *Petition* and September 6th *Motion*, it is important that this matter be resolved in a time frame that permits any remedy to be meaningful and useful. Unless the Senate, as a body, considers and determines whether to provide advice and consent for Judge Garland's Supreme Court nomination before it adjourns in December, my

[49] *Powell* at 549.

vote for President and senators will have been rendered meaningless with regard to a very important judicial nomination during the term of President Obama. The 114th Congress is scheduled to permanently adjourn December 16, 2016, after which Judge Garland's nomination cannot be considered by this Congress. While the December 16th adjournment may perhaps be extended until the end of 2016, the urgency of the situation exists regardless.

Once the Senate adjourns in December, my rights will have been permanently lost. In January, a new Congress will convene with different senators than exist today. The influence that my senators may have in the new Congress, and the importance of their vote in a future Congress confirmation process is unknown, but will assuredly be different. Nor is there any cause to believe that Judge Garland's nomination will continue after December. For obvious reasons, monetary damages, even if available, could not restore my voting power on this particular confirmation. Unless the Court causes or directs the full Senate to determine whether to provide advice and consent for the Garland nomination by the end of December, the harm to me will be irreparable.

**(3) An Injunction Will Not Harm Other Parties**

While an injunction is necessary to protect my rights, causing the Senate to perform its Constitutionally-required role in the Supreme Court nomination process will not harm any other party. As I have stated throughout this action, I am not asking for a particular outcome of the confirmation process, only that the process itself be undertaken in a meaningful time-frame. The Senate may decide not to provide advice and consent for the Garland nomination, in which case the outcome will be the same as the current situation.

Or, the Senate may vote as a body to confirm Judge Garland. If the Senate, by a majority vote, confirms the Garland nomination, there is again no harm to any party. Fulfilling its constitutional role can hardly be construed as a harm to any of the Defendants.

**(4) An Injunction Will Not Harm the Public Interest**

An injunction would cause the Senate to consider and determine whether to provide its advice and consent for the Garland nomination. This does not harm the public interest - it supports the public interest. The Supreme Court nomination and appointment process is broken in the Senate. This is a threat to our democracy. Restoring some workability to one part, of one branch, of government, and assuring that dysfunction in the Senate does not impair the powers and duties of the executive and judicial branches, can only serve the public interest.

Eighteen years ago, in a law review article discussing the Senate's abrogation of its duty to timely consider judicial nominees, the author concluded:

> Over the past two centuries, the importance of the federal judiciary's role in the nation's framework has increased markedly, to a position surely even beyond the vision of President Washington [citation omitted]. The integrity and efficiency with which the judiciary carries out that role, however, is being jeopardized by the Senate's failure to fulfill its constitutionally mandated duties to provide advice and consent with respect to presidential nominations for federal judgeships. A judicial remedy ought to be available to respond to this threatening situation.[50]

The situation today is worse, and a judicial remedy with respect to the Garland nomination is imperative.

---

[50] Renzin, "Advice, Consent...," at 1787

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff prays for a Court order granting his request for a preliminary injunction that 1) requires Senator Mitchell McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requires Senator Charles Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate, 3) requires that the Senate, as a body, vote on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court, and 4) grants such other and further relief as the Court deems just and proper.

Dated: October 19, 2016

Respectfully submitted,

______________________________

STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

E X H I B I T

CHARLES E. GRASSLEY, IOWA, CHAIRMAN
ORRIN G. HATCH, UTAH
JEFF SESSIONS, ALABAMA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
JEFF FLAKE, ARIZONA
DAVID VITTER, LOUISIANA
DAVID A. PERDUE, GEORGIA
THOM TILLIS, NORTH CAROLINA
PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
CHARLES E. SCHUMER, NEW YORK
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT

KOLAN L. DAVIS, *Chief Counsel and Staff Director*
KRISTINE J. LUCIUS, *Democratic Chief Counsel and Staff Director*

United States Senate
COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

February 23, 2016

The Honorable Mitch McConnell
Senate Majority Leader
United States Senate
Washington, DC 20510

Dear Majority Leader McConnell,

As we write, we are in the midst of a great national debate over the course our country will take in the coming years. The Presidential election is well underway. Americans have already begun to cast their votes. As we mourn the tragic loss of Justice Antonin Scalia, and celebrate his life's work, the American people are presented with an exceedingly rare opportunity to decide, in a very real and concrete way, the direction the Court will take over the next generation. We believe The People should have this opportunity.

Over the last few days, much has been written about the constitutional power to fill Supreme Court vacancies, a great deal of it inaccurate. Article II, Section 2 of the Constitution is clear. The President may nominate judges of the Supreme Court. But the power to grant, *or withhold*, consent to such nominees rests exclusively with the United States Senate. This is not a difficult or novel constitutional question. As Minority Leader Harry Reid observed in 2005, "The duties of the Senate are set forth in the U.S. Constitution. Nowhere in that document does it say the Senate has a duty to give the Presidential nominees a vote. It says appointments shall be made with the advice and consent of the Senate. That is very different than saying every nominee receives a vote."

We intend to exercise the constitutional power granted the Senate under Article II, Section 2 to ensure the American people are not deprived of the opportunity to engage in a full and robust debate over the type of jurist they wish to decide some of the most critical issues of our time. Not since 1932 has the Senate confirmed in a presidential election year a Supreme Court nominee to a vacancy arising in that year. And it is necessary to go even further back — to 1888 — in order to find an election-year nominee who was nominated and confirmed under divided government, as we have now.

Accordingly, given the particular circumstances under which this vacancy arises, we wish to inform you of our intention to exercise our constitutional authority to withhold consent on any nominee to the Supreme Court submitted by this President to fill Justice Scalia's vacancy. Because our decision is based on constitutional principle and born of a necessity

to protect the will of the American people, this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017.

Sincerely,

Charles E. Grassley
Chairman, Senate Judiciary Committee

Orrin G. Hatch
United States Senator

Jeff Sessions
United States Senator

Lindsey O. Graham
United States Senator

John Cornyn
United State Senator

Michael S. Lee
United States Senator

Ted Cruz
United States Senator

Jeff Flake
United States Senator

David Vitter
United States Senator

David A. Perdue
United States Senator

Thom Tillis
United States Senator

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL,** ***pro se*** | ) | |
| ***Plaintiff,*** | ) | |
| **v.** | ) | |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | **Civil Action No.: 16-1729 (RC)** |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | |
| ***Defendants.*** | ) | |
| | ) | |

**AFFIDAVIT**

STATE OF NEW MEXICO )
)
COUNTY OF SANTA FE )

STEVEN S. MICHEL, upon being duly sworn, states the following:

My name is Steven S. Michel. I am the Plaintiff (Petitioner) and I am capable of making this affidavit. I have read the foregoing *Motion for Preliminary Injunction* and accompanying *Memorandum of Points and Authorities,* and the facts stated therein are true and correct to the best of my knowledge and belief.

Further Affiant sayeth not.

[signature]
STEVEN S. MICHEL

SUBSCRIBED AND SWORN to before me this 18th day of October, 2016.

My commission expires: February 4, 2018

[signature]
Glenda M. Murphy, Notary

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL,** ***pro se*** | ) | |
| ***Plaintiff,*** | ) | |
| **v.** | ) | **Civil Action No.: 16-1729 (RC)** |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | |
| ***Defendants.*** | ) | |
| ______________________________________ | ) | |

**PROPOSED FORM OF ORDER**

WHERAS this matter came before the Court upon the Plaintiff's *Motion for Preliminary Injunction,* and the Court having considered that *Motion* and the *Petition* in this Case, the Court FINDS that a *Preliminary Injunction* should be issued.

IT IS, THEREFORE, ORDERED that a Preliminary Injunction is issued to Defendants McConnell, Grassley and the United States Senate, as follows: 1) requiring Senator McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requiring Senator Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate, and 3) requiring that the Senate, as a body, vote on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court.

IT IS FURTHER ORDERED that Defendants shall within seven (7) days provide the Court and the Plaintiff with a schedule of actions they will take to comply with this Order.

Date______________________

______________________________
RUDOLPH CONTRERAS
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2016, I telephonically contacted the Judge's clerk, U.S. Attorney and U.S. Senate counsel to inform each that I would be filing this *Motion for Preliminary Injunction* on October 19, 2016. In all instances I either spoke with counsel or an assistant, or left a message and a telephone number to reach me. On October 19, 2016, I served the foregoing *Motion for Preliminary Injunction* and *Memorandum of Points and Authorities,* by placing a true copy in the United States mail, with certified delivery, to the following persons. Courtesy copies were also provided by email as indicated:

Loretta E. Lynch, U.S. Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

United States Attorney's Office
Civil Process Clerk, Rm. E4207
555 Fourth Street, NW
Washington, D.C. 20530
*Email:* daniel.vanhorn@usdoj.gov

United States Senate
Dirksen Senate Office Building
Washington, D.C. 20510
*Email:* grant_vinik@legal.senate.gov

Senator Addison Mitchell McConnell
United States Senate
Washington, D.C. 20510

Senator Charles Ernest Grassley
United States Senate
Washington, D.C. 20510

______________________________
Steven S. Michel

E X H I B I T – 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEVEN S. MICHEL,<br><br>Plaintiff,<br><br>v.<br><br>ADDISON MITCHELL MCCONNELL, JR.,<br>CHARLES ERNEST GRASSLEY, and<br>UNITED STATES SENATE,<br><br>Defendants. | ) | Case No. 16-1729-RC |

**DEFENDANTS' MOTION TO DISMISS**

Defendants United States Senate and United States Senators Mitch McConnell and Charles Grassley, through undersigned counsel, hereby respectfully move this Court, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss without leave to amend plaintiff's Emergency Petition for Declaratory Judgment and Writ of Mandamus. The grounds for this motion are: (i) plaintiff lacks Article III standing; (ii) the Speech or Debate Clause of the Constitution bars this suit; (iii) the petition seeks to present a nonjusticiable political question; and (iv) the statutes plaintiff's petition relies upon do not establish a cause of action here.

For these reasons, which are explained more fully in the accompanying Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction and in

Support of Defendants' Motion to Dismiss, plaintiff's petition should be dismissed without leave to amend.

Respectfully submitted,

/s/ Patricia Mack Bryan

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (telephone)
(202) 224-3391 (facsimile)

October 31, 2016

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEVEN S. MICHEL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 16-1729-RC |
| ADDISON MITCHELL MCCONNELL, JR., CHARLES ERNEST GRASSLEY, and UNITED STATES SENATE, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (telephone)
(202) 224-3391 (facsimile)

October 31, 2016

Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . iii

INTRODUCTION. . . . . 1

PLAINTIFF'S COMPLAINT. . . . . 3

ARGUMENT. . . . . 4

I. PLAINTIFF CANNOT MAKE AN EXCEPTIONALLY STRONG SHOWING OF A LIKELIHOOD OF SUCCESS ON THE MERITS AND THE COMPLAINT SHOULD BE DISMISSED. . . . . 5

A. Plaintiff Lacks Article III Standing. . . . . 5

1. Plaintiff's Complaint Presents a Generalized Grievance That is Not Concrete, Particularized, or Actual. . . . . 6

2. The Causation Requirement is Lacking. . . . . 12

3. Plaintiff's Claims Are Not Redressable by This Suit. . . . . 12

B. The Speech or Debate Clause Bars This Suit. . . . . 14

C. This Action Is Nonjusticiable Under the Political Question Doctrine. . . . . 17

1. The Constitution Commits to the Senate Alone the Manner in Which It Provides "Advice and Consent" Concerning Judicial Nominations and Determines the "Rules of Its Proceedings" for Doing So. . . . . 18

2. There Are No Judicially Discoverable Standards to Resolve This Case. . . . . 21

3. The Court's Consideration of Plaintiff's Claims Would Demonstrate a Lack of Respect for a Co-Equal Branch. . . . . 22

D. The Complaint Lacks a Cause of Action. . . . . 24

II. PLAINTIFF CANNOT MAKE AN EXCEPTIONALLY STRONG SHOWING THAT THE REMAINING FACTORS FAVOR INJUNCTIVE RELIEF. . . . . . . . . . . . . . . 25

A. Plaintiff Cannot Show Irreparable Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B. An Injunction Would Substantially Harm the Senate.. . . . . . . . . . . . . . . . . . . . . . . . . 26

C. Granting the Requested Injunction Is Not in the Public Interest. . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

**Adams v. Vance*, 570 F.2d 950 (D.C. Cir. 1978). . . . . . . . . . *passim*

*Alaska Legislative Council v. Babbitt*, 181 F.3d 1333 (D.C. Cir. 1999).. . . . . . . . . . 9

*Allen v. Wright*, 468 U.S. 737 (1984).. . . . . . . . . . 5

*Anderson v. Carter*, 802 F.3d 4 (D.C. Cir. 2015). . . . . . . . . . 25

*Awala v. U.S. Congress*, 2005 WL 3447644 (D. Del. Dec. 15, 2005). . . . . . . . . . 11

*Baker v. Carr*, 369 U.S. 186 (1962).. . . . . . . . . . 18, 21

*Brown v. Hansen*, 973 F.2d 1118 (3d Cir. 1992) (per curiam).. . . . . . . . . . 23

*Campbell v. Clinton*, 203 F.3d 19 (D.C. Cir. 2000). . . . . . . . . . 9

*Chenoweth v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999). . . . . . . . . . 9

**Cogswell v. U.S. Senate*, 2009 WL 529243 (D. Colo. Mar. 2, 2009),
*aff'd*, 353 F. App'x 175 (10th Cir. 2009). . . . . . . . . . *passim*

*Coleman v. Miller*, 307 U.S. 433 (1939). . . . . . . . . . 9, 22

**Common Cause v. Biden*, 909 F. Supp. 2d 9 (D.D.C. 2012),
*aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir. 2014). . . . . . . . . . *passim*

*Dastmalchian v. Dep't of Justice*, 71 F. Supp. 3d 173 (D.D.C. 2014),
*aff'd,* 2015 WL 3372295 (D.C. Cir. May 4, 2015).. . . . . . . . . . 15

*Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999). . . . . . . . . . 10

*Doe v. McMillan*, 412 U.S. 306 (1973). . . . . . . . . . 14

*Dorfmann v. Boozer*, 414 F.2d 1168 (D.C. Cir. 1969). . . . . . . . . . 26

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975). . . . . . . . . . 2, 14, 15

*Emily's List v. Fed. Election Comm'n*, 362 F. Supp. 2d 43 (D.D.C.), *aff'd*, 170 F. App'x 719 (D.C. Cir. 2005) . . . . . 26

**Ex parte Levitt*, 302 U.S. 633 (1937) (per curiam) . . . . . 8

*Fairchild v. Hughes*, 258 U.S. 126 (1922) . . . . . 12

*Goldwater v. Carter*, 444 U.S. 996 (1979) (Rehnquist, J.) (plurality) . . . . . 20

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . 15

*Hastings v. U.S. Senate*, 1989 WL 122685 (D.C. Cir. Oct. 18, 1989) . . . . . 5, 13

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . 13

*Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308 (1985) (Rehnquist, J., in chambers) . . . . . 27

*Hoffman v. Jeffords,* 2002 WL 1364311 (D.C. Cir. May 6, 2002), *aff'g*, 175 F. Supp. 2d 49 (D.D.C. 2001) . . . . . 10, 11

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) . . . . . 6

*In Re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) . . . . . 3

**Judicial Watch, Inc. v. U.S. Senate*, 340 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 432 F.3d 359 (D.C. Cir. 2005) . . . . . 11, 13, 23, 26

*Katz v. Georgetown Univ.*, 246 F.3d 685 (D.C. Cir. 2001) . . . . . 26

*Kimberlin v. McConnell*, No. 16-1211 (D. Md. June 3, 2016), *appeal docketed*, No. 16-1657 (4th Cir. June 9, 2016) . . . . . 11

*Lance v. Coffman*, 549 U.S. 437 (2007) . . . . . 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) . . . . . 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . 6, 7, 8, 12

*Marsh v. U.S. Congress*, 1997 WL 215519 (6th Cir. Apr. 29, 1997) . . . . . 17

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**McClure v. Carter*, 513 F. Supp. 265 (D. Idaho),
*aff'd mem. sub nom.*, *McClure v. Reagan*, 454 U.S. 1025 (1981). . . . . . . . . . . . . . . . . . . . 8

*Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mexichem Specialty Resins, Inc. v. E.P.A.,* 787 F.3d 544 (D.C. Cir. 2015). . . . . . . . . . . . . . . . . 26

*N.L.R.B. v. New Vista Nursing and Rehabilitation*, 719 F.3d 203 (3d Cir. 2013). . . . . . . . . . . . 16

**Nat'l Treasury Emp. Union v. Bush*, 715 F. Supp. 405 (D.D.C. 1989). . . . . . . . . . . . . . . . . 18, 22

*Nat'l Treasury Emp. Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974). . . . . . . . . . . . . . . . . . . . . 22

*Nixon v. United States*, 506 U.S. 224 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

**Page v. Shelby*, 995 F. Supp. 23 (D.D.C.),
*aff'd*, 172 F.3d 920 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 25

**Patterson v. U.S. Senate*, 2014 WL 1349720 (N.D. Cal. Mar. 31, 2014),
*aff'd,* 2016 WL 4137638 (9th Cir. Aug. 4, 2016). . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 26

*Pauling v. Eastland*, 288 F.2d 126 (D.C. Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Powell v. McCormack*, 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

**Raines v. Byrd*, 521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 10

*Raiser v. Daschle*, 54 F. App'x 305 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

*Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013),
*aff'd*, 785 F.3d 19 (D.C. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 25

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974). . . . . . . . . . . . . . . . . . . . 7

*Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Schultz v. Sundberg*, 759 F.2d 714 (9th Cir. 1985) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Shoshone Bannock Tribes v. Reno,* 56 F.3d 1476 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . 24

*Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*,
193 F. Supp. 2d 6 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*,
446 U.S. 719 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Thomas v. Holder*, 750 F.3d 899 (D.C. Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**United States v. Ballin*, 144 U.S. 1 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Choi*, 818 F. Supp. 2d. 79 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*United States v. Peoples Temple of the Disciples of Christ*,
515 F. Supp. 246 (D.D.C. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*West v. Spellings*, 480 F. Supp. 2d 213 (D.D.C. 2007),
*recons. denied*, 539 F. Supp. 2d 55 (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wisconsin Gas Co. v. Fed. Regulatory Comm'n*, 758 F.2d 669 (D.C. Cir. 1985).. . . . . . . . . . . . . 25

**CONSTITUTION AND STATUTES**

U.S. Const.:

art. I, § 2, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
art. I, § 4, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
art. I, § 4, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
art. I, § 5, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
art. I, § 5, cl. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
art. I, § 6, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14
art. II, § 2, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

28 U.S.C. § 1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1651(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONGRESSIONAL MATERIAL

Richard S. Beth and Betsy Palmer, Cong. Research Serv., RL33247, *Supreme Court Nominations: Senate Floor Procedure and Practice, 1789-2011* (2011), *available at* https://fas.org/sgp/crs/misc/RL33247.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Standing Rules of the Senate, Rule XXXI.6, *reprinted in* S. Doc. No. 113-18, at 43 (2013), http://www.gpo.gov/fdsys/pkg/CDOC-113sdoc18/pdf/CDOC-113sdoc18.pdf. . . . . . . . . . . . . . . 16

**RULES**

Fed. R. Civ. P. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 81(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

* Cases and authorities chiefly relied upon are denoted with an asterisk.

## INTRODUCTION

The *pro se* plaintiff in this case advances the extraordinary claim that he has a judicially enforceable right to compel the Senate to vote on a pending legislative matter, here, a Supreme Court nomination. No court has ever ordered either House of Congress to vote on a matter before it. To the contrary, to our knowledge, every prior suit challenging alleged delays in voting on judicial nominations or legislation has been rejected. As one court concluded in summarily dismissing a similar claim arising out of the Senate's alleged delay in voting on two judicial nominations:

> [A] federal court is not the proper forum to press general complaints about the way in which government goes about its business. . . . The Constitution clearly allocates the power to appoint judges of the supreme court, and all other officers of the United States to the Executive Branch upon the advice and consent of the Senate; the Judicial Branch lacks the power to restructure the apparatus established by the Executive Branch and Legislative Branch. . . .

*Cogswell v. U.S. Senate*, 2009 WL 529243, at *10 (D. Colo. Mar. 2, 2009) (citations and quotations omitted), *aff'd*, 353 F. App'x 175 (10th Cir. 2009).

Accordingly, plaintiff's motion for a preliminary injunction should be denied because, as an initial matter, he cannot establish that he has any likelihood of success on his claims. As set forth below, this action, like the ones before it, is precluded by threshold doctrines grounded in the separation of powers and because the statutes plaintiff relies upon do not establish a cause of action here.

*First*, plaintiff cannot satisfy any of the three constitutional requirements for Article III standing. Plaintiff's allegation that the "effectiveness" of his and others' votes for New Mexico's United States Senators has been "diminished" because those Senators have not voted on a

pending judicial nomination amounts to a quintessential generalized grievance that does not establish injury in fact to bring this suit. Nor is there a causal link between the conduct he complains of (the Senate's consideration in 2016 of the nomination at issue), and his claim of injury (the alleged diminished "effectiveness" of votes he and others cast in 2012 and 2014 for New Mexico's Senators). Redressability is also absent because separation of powers principles preclude the issuance of any judicial order that would control the exercise of the Senate's constitutional authority to advise and consent with regard to judicial nominations.

*Second*, because plaintiff's claims arise out of the Senate's constitutional power to provide advice and consent, they are barred by the Speech or Debate Clause, U.S. Const. art. I, sec. 6, cl. 1, which affords the Senate and its Members an absolute immunity for all conduct arising out of "matters which the Constitution places within the jurisdiction of either House." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) (quotations omitted). Since Article II of the Constitution expressly assigns to the Senate the power to advise and consent to judicial nominations, Speech or Debate immunity interposes an absolute bar to this complaint.

*Third*, this action is nonjusticiable under the political question doctrine. The timing and processes by which the Senate provides advice and consent with regard to judicial nominations are constitutionally committed to the Senate alone; there is a lack of judicially manageable standards for resolving this case; and, granting the relief plaintiff seeks would deeply disrespect the constitutional role of a coordinate branch of government.

*Fourth*, the statutes plaintiff relies upon do not establish a cause of action here.

In addition to plaintiff's lack of a likelihood of success on his claims, plaintiff would not suffer any irreparable injury if the Court denies the injunction he requests, and the entry of an injunction would substantially injure other interested parties, namely the Senate, and cause great harm to the public interest.

Accordingly, plaintiff's motion for a preliminary injunction should be denied. In addition, because this suit is subject to dismissal for the several grounds identified above and explained below, the complaint should be dismissed without leave to amend.

**PLAINTIFF'S COMPLAINT**

Steven Michel brings this petition for writ of mandamus "on his own behalf and on behalf of all citizens of New Mexico" seeking a judicial order compelling the Senate to vote this year on the nomination of Judge Merrick Garland to the United States Supreme Court. Emergency Pet. for Declaratory J. and Writ of Mandamus at 7, 33 (Aug. 25, 2016), ECF No. 1 [hereinafter "Compl."]. The "respondents" are the United States Senate, Senate Majority Leader Mitch McConnell, and Senate Judiciary Committee Chairman Charles Grassley.[1]

Plaintiff alleges that the Senate has a "non-discretionary constitutional duty to determine within a reasonable time whether to provide advice and consent" to Supreme Court nominations. *Id.* at 4. He further alleges that because the Senate has not voted on the nomination at issue, he

[1] Since Rule 81(b) of the Federal Rules of Civil Procedure "long ago abolished the writ of mandamus in the district courts . . . it is not technically accurate to speak of . . . actions as [a] petition[] for a writ of mandamus." *In Re Cheney*, 406 F.3d 723, 728-29 (D.C. Cir. 2005). Rather, "[r]elief previously available" under mandamus "may be obtained by appropriate *action* or motion under these rules." Fed. R. Civ. P. 81(b) (emphasis added). "There is one form of action–the civil action," Fed. R. Civ. P. 2, which "is commenced by filing a complaint." Fed. R. Civ. P. 3. We thus construe Mr. Michel's "petition" as a complaint and the "petitioner" and "respondents" as the plaintiff and defendants, respectively.

and the citizens of New Mexico like him "have had the effectiveness of their vote for United States senators diminished because those senators have been deprived of their ability to vote" on the nomination. *Id.* at 7.

Plaintiff seeks a declaratory judgment that "the Senate, as a body, has a constitutional duty" to vote on pending Supreme Court nominations "within a reasonable time" from such nominations being made. *Id.* at 33. Plaintiff also seeks a writ of mandamus instructing the Senate Majority Leader, the Senate Judiciary Committee Chairman, and the Senate "promptly" to vote on the pending nomination. *Id.*

On October 19, 2016, plaintiff moved for a preliminary injunction, requesting preliminary relief not sought in the complaint. *See* Mot. for Prelim. Injunct. at 26, ECF No. 12 (requesting a preliminary injunction directing: (i) Senator McConnell "to schedule a vote of the full Senate" before the 114th Congress adjourns; (ii) Senator Grassley "to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate"; and (iii) the Senate to vote on the nomination).

**ARGUMENT**

A preliminary injunction is "an extraordinary remedy," *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*, 193 F. Supp. 2d 6, 13 (D.D.C. 2001), that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citations omitted).

A plaintiff seeking "a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

Here, plaintiff must make an "exceptionally strong showing on the relevant factors" because the preliminary injunction he seeks would directly intrude into the constitutional functions of a coordinate branch of government. *Adams v. Vance*, 570 F.2d 950, 955-56 (D.C. Cir. 1978) ("[W]hen requested immediate injunctive relief deeply intrudes into the core concerns of [another] branch, a court is 'quite wrong in routinely applying . . . the traditional standards governing more orthodox stays.'" (citation omitted); *Hastings v. U.S. Senate*, 1989 WL 122685, at *1 (D.C. Cir. Oct. 18, 1989) (recognizing same in dismissing challenges to Senate impeachment trials).

As explained below, because plaintiff's moving papers do not make an "exceptionally strong showing" on any of the four factors, his motion for a preliminary injunction should be denied. And because plaintiff's complaint is foreclosed for the numerous reasons set forth in Part I, *infra*, it should be dismissed without leave to amend.

## I. PLAINTIFF CANNOT MAKE AN EXCEPTIONALLY STRONG SHOWING OF A LIKELIHOOD OF SUCCESS ON THE MERITS AND THE COMPLAINT SHOULD BE DISMISSED

### A. Plaintiff Lacks Article III Standing.

Plaintiff cannot make an "exceptionally strong showing" of a likelihood of success warranting a preliminary injunction, *Adams,* 570 F.2d at 955-56, and his complaint should be dismissed, because he cannot establish Article III standing to sue. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*,

468 U.S. 737, 750 (1984). To meet this threshold jurisdictional requirement, a plaintiff must have "standing" to challenge the action sought to be adjudicated. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). A party seeking to invoke a federal court's jurisdiction bears the burden of establishing his standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy this burden, plaintiff must establish the familiar elements of standing. *First*, he must show an "injury in fact," consisting of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and internal quotation marks omitted). *Second*, plaintiff must demonstrate the existence of "a causal connection between the injury and the conduct complained of. . . ."' *Id.* (internal punctuation omitted). *Finally*, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

The Supreme Court has emphasized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). That is because the standing doctrine "'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citation omitted).

**1. Plaintiff's Complaint Presents a Generalized Grievance That is Not Concrete, Particularized, or Actual.**

Plaintiff's complaint presents a quintessential generalized grievance that does not confer subject matter jurisdiction upon this Court. The Supreme Court has:

> consistently held that a plaintiff . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large [] does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573-74.

In accordance with this bedrock principle, "standing to sue may not be predicated upon an interest of the kind . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.3 (2014) (clarifying that generalized grievances are precluded for constitutional, not merely "prudential," reasons) (citations and quotations omitted).

Plaintiff's allegation that the "effectiveness" of all votes cast by New Mexico citizens for their United States Senators has been "diminished" because the Senate has not voted on a pending judicial nomination presents precisely the kind of undifferentiated, widely-shared, and abstract injury that does not constitute "injury in fact." Compl. at 7. In 1937, the Supreme Court summarily dismissed, for lack of such injury, a constitutional challenge to the appointment of Justice Hugo Black, stating:

> The motion papers disclose no interest upon the part of the petitioner *other than that of a citizen and a member of the bar of this Court. That is insufficient.* It is an established principle that to entitle a private individual to invoke the judicial power to determine the

> validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.

*Ex parte Levitt*, 302 U.S. 633, 636 (1937) (per curiam) (emphasis added).

*Ex parte Levitt* was the basis for the Supreme Court's subsequent rejection of a suit brought by a United States Senator, both in his personal and official capacities, challenging the appointment of a D.C. Circuit judge. *See McClure v. Carter*, 513 F. Supp. 265, 270 (D. Idaho) (three-judge court) ("As a private individual . . . Senator McClure does not have a sufficient personal interest in the validity of [the] Judge['s] appointment to have standing in federal court"), *aff'd mem. sub nom.*, *McClure v. Reagan*, 454 U.S. 1025 (1981).

Plaintiff's claim that the Senate, by not voting on the nomination, has "diminished" the "effectiveness" of votes cast for his Senators in 2012 and 2014 is no more particularized or concrete than the widely-shared, abstract injuries alleged in *Ex Parte Levitt* and *McClure.* Plaintiff's claimed injury is not "particularized" because it does not "affect [him] in a *personal and individual way*." *Lujan,* 504 U.S. at 560 n.1 (emphasis added). Rather, it is an alleged injury shared by the citizens not only of New Mexico, but of all fifty States, who, like plaintiff, believe that the "effectiveness" of their votes for their Senators has been diminished by the Senate's consideration of this nomination.

Furthermore, necessary to plaintiff's claim that the Senate has diminished the "effectiveness" of votes for his Senators is a concomitant injury to those Senators in not voting on the nomination at issue. But the Supreme Court in *Raines v. Byrd* rejected the claim that individual Members of Congress suffer cognizable injury from executive or legislative actions

that allegedly diminish the "effectiveness" of their votes. *Raines*, 521 U.S. at 825-26. *Raines* held that the six Member-of-Congress plaintiffs there lacked standing to challenge the Line Item Veto Act, reasoning that the Members' alleged injury was neither concrete nor personal to them because their claim amounted to "a loss of political power" that was "wholly abstract" and "widely dispersed" among all Members of Congress. *Id.* at 821, 829.[2]

Shortly following *Raines*, the D.C. Circuit affirmed by summary order the dismissal of a private individual's suit – very much like this one – alleging that Senate voting rules unconstitutionally "*diminishe[d] [plaintiff's] voting power* to obtain legislation he desire[d]" because a minority of Senators could prevent a final vote on that legislation. *Page v. Shelby*, 995 F. Supp. 23, 28 (D.D.C.) (emphasis added), *aff'd*, 172 F.3d 920 (D.C. Cir. 1998). The district court found that

> Based on the [Supreme] Court's *Raines* reasoning, it might well be that Mr. Page's Senators would themselves lack standing to challenge the cloture rule in federal court because any injury arguably resulting from that rule is common to all Senators, amounts to a loss of political power, and is essentially an abstract dilution of institutional legislative power. *Any injury to Mr. Page is even more attenuated than the injury to his Senators and, therefore, certainly insufficient to support standing.*

---

[2] *Raines* identified two possible exceptions to its general rule against Member standing, neither of which is at issue here: 1) a Member suing because he was "singled out for specially unfavorable treatment," 521 U.S. at 821 (*citing Powell v. McCormack*, 395 U.S. 486 (1969)); or 2) a sufficient number of Members, "suing as a bloc," establishing that their "votes would have been sufficient to defeat (or enact) a specific legislative Act" and "that legislative action goes into effect (or does not go into effect)," *id.* at 822-23 (*citing Coleman v. Miller,* 307 U.S. 433 (1939)). Since *Raines*, the D.C. Circuit has rejected every suit by individual Members predicated on legislative standing. *See Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1338 (D.C. Cir. 1999) ("[T]here is not the slightest suggestion here that these particular legislators had the votes to enact a particular measure, that they cast those votes or that the federal statute or the federal defendants did something to nullify those votes."); *Chenoweth v. Clinton*, 181 F.3d 112, 115 (D.C. Cir. 1999) (stating that Members' alleged "dilution of their authority as legislators" was "identical to the injury the Court in *Raines* deprecated as 'widely dispersed' and 'abstract'"); *Campbell v. Clinton*, 203 F.3d 19, 23 (D.C. Cir. 2000).

*Id.* at 28 (emphasis added) (recognizing that plaintiff "cannot show that he will suffer any *personal* harm" should the legislation he supported "not come to a vote") (emphasis in original).

Plaintiff's claims thus do not establish cognizable injury because they are predicated upon both a claimed loss of political power by his Senators that the Supreme Court rejected in *Raines* as well as a derivative claim of diminished voting power by him as a private individual that the D.C. Circuit rejected in *Page*. *See also Hoffman v. Jeffords,* 2002 WL 1364311, at *1 (D.C. Cir. May 6, 2002) (affirming for lack of injury in fact dismissal of plaintiffs' claim that Senator's actions diminished likelihood of enactment of legislation favored by them), *aff'g*, 175 F. Supp. 2d 49, 55-57 (D.D.C. 2001) ("Plaintiffs do not . . . demonstrate how they will be personally affected by the lack of legislation relating to these issues.").[3]

Other circuit courts have had equally little difficulty rejecting, for lack of injury in fact, claims indistinguishable from this one. In *Patterson v. U.S. Senate,* 2016 WL 4137638, at *1 (9th Cir. Aug. 4, 2016), for example, the Ninth Circuit summarily affirmed for lack of injury in fact the dismissal of a complaint alleging that Senate voting rules violated plaintiff's Seventeenth Amendment rights because the rules allegedly "*dilute[d] [plaintiff's] voting power* as a resident of California" by allowing a minority of Senators to preclude consideration of matters favored by a majority. *Patterson v. U.S. Senate*, 2014 WL 1349720, at *2, *4-7 (N.D. Cal. Mar. 31, 2014)

---

[3] Plaintiff's reliance on *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999) (challenging the method of conducting the census for apportionment), Compl. at 7-8 & Mot. for Prelim. Injunct. at 9, is unavailing. Neither apportionment nor redistricting, which directly impact the relative weight of the votes of individuals from different districts, is at issue in this case. Even if this case did implicate the vote-dilution interests in such cases, plaintiff's failure to allege a concrete, particularized injury to him would still be fatal. *See Lance v. Coffman*, 549 U.S. 437, 441 (2007) (rejecting as generalized grievance four voters' complaint that state Constitution deprived their state legislature of its authority to draw congressional districts).

(dismissing complaint as generalized grievance, stating plaintiff had not shown that his asserted injury, which was "derivative of his Senators' alleged vote dilution injury," survived *Raines*); *Cogswell*, 353 F. App'x at 175-76 (affirming dismissal of generalized grievance alleging unconstitutional Senate delay in filling two district court vacancies); *Raiser v. Daschle*, 54 F. App'x 305, 306-07 (10th Cir. 2002) (affirming dismissal of challenge to Senate's rule referring judicial nominations to Judiciary Committee, holding that pendency of plaintiff's other cases and "claims of alleged delay because of vacancies in the courts do not establish an injury").

The district courts have concluded similarly. *See, e.g.*, *Common Cause v. Biden*, 909 F. Supp. 2d 9, 23 (D.D.C. 2012) (dismissing as generalized grievance challenge by nonprofit organization, Members of House of Representatives, and others to Senate voting rules governing legislation), *aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir. 2014); *Judicial Watch, Inc. v. U.S. Senate*, 340 F. Supp. 2d 26, 29 (D.D.C. 2004) (nonprofit organization challenging Senate voting rules governing judicial nominations), *aff'd on other grounds*, 432 F.3d 359 (D.C. Cir. 2005); *Kimberlin v. McConnell*, No. 16-1211 (D. Md. June 3, 2016) (challenge to Senate consideration of Garland nomination), *appeal docketed*, No. 16-1657 (4th Cir. June 9, 2016).[4]

In sum, because "the right, possessed by every citizen, to require that the Government be administered according to law . . . does not entitle a private citizen to institute [suit] in the federal

---

[4] While plaintiff alleges that the Senate's consideration of the nomination at issue has "adversely and impermissibly impact[ed] all three branches of the federal government," Compl. at 16, plaintiff does not, and cannot, rely upon such allegations of abstract, third-party effects in an effort to establish his standing. *See, e.g.*, *Judicial Watch, Inc.*, 340 F. Supp. 2d at 32 (alleged "harm to the proper functioning of the judiciary" insufficient); *Hoffman v. Jeffords*, 175 F. Supp. 2d 49, 57 (D.D.C. 2001) (alleged "destr[uction of] the foundation of good government" and "diminished . . . confidence [in] electorate" insufficient); *Awala v. U.S. Congress*, 2005 WL 3447644, at *2 (D. Del. Dec. 15, 2005) (alleged harm to judiciary insufficient).

courts," *Fairchild v. Hughes*, 258 U.S. 126, 129-30 (1922), plaintiff's allegations are insufficient to establish injury in fact.

**2. <u>The Causation Requirement is Lacking</u>.**

Plaintiff lacks standing for the additional reason that he cannot establish the Article III causation requirement.

Simply put, the causation requirement is lacking because there is no "causal link" between the Senate's consideration of a judicial confirmation in 2016 and the "effectiveness" of the votes cast for plaintiff's Senators in 2012 and 2014. Those votes were "effective" when they were counted in those elections. Upon election, New Mexico's Senators, like all other Senators, became subject to the Senate's rules and procedures governing how and when the Senate and its committees consider the thousands of bills, judicial and executive nominations, treaties, and other legislative matters coming before the Senate in each Member's six-year term of office. The Senate's consideration of any one of those legislative matters does not "cause" citizens' prior votes for each Senator to be any more – or less -- "effective."

Accordingly, plaintiff's "claimed injury is too speculative and remote to satisfy Article III's causation requirement." *Patterson*, 2014 WL 1349720, at *7; *Page*, 995 F. Supp. at 29 (same).

**3. <u>Plaintiff's Claims Are Not Redressable by This Suit</u>.**

Plaintiff's complaint is also not "likely" to be "'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citation omitted).

Plaintiff's complaint is not redressable because the relief plaintiff seeks cannot be ordered consistent with our system of separated powers. A judicial order, whether in the nature of a

declaration or an injunction, purporting to instruct the Senate on the timing of its consideration of a pending legislative matter would amount to a "judgment respecting the validity of contemplated Congressional action [that] would violate the doctrine of the separation of powers and would be an illegal impingement by the judicial branch upon the duties of the legislative branch." *Pauling v. Eastland*, 288 F.2d 126, 130 (D.C. Cir. 1960) (stating that a declaratory judgment was no less precluded than an injunction).

"[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, *whether rightfully or wrongfully exercised*, is not a subject for judicial interference." *Hearst v. Black*, 87 F.2d 68, 71-72 (D.C. Cir. 1936) (emphasis added). The courts have never retreated from that rule. *See Hastings*, 1989 WL 122685, at *1-2 ("[W]e have not found any case in which the judiciary has issued injunctive or declaratory relief intercepting ongoing proceedings of the legislative branch").

Indeed, courts have recognized the constitutionally impermissible nature of the relief sought in dismissing challenges like this one. *See Judicial Watch*, 432 F.3d at 361 (noting that relief requested "would obviously raise the most acute problems, given the Senate's independence in determining the rules of its proceedings and the novelty of judicial interference with such rules"); *Patterson*, 2014 WL 1349720, at *7 (stating that "[p]laintiff has not cited any authority demonstrating that this Court has the authority to order the Senate to rewrite its rules");

*Cogswell*, 2009 WL 529243, at *10 (stating "the Judicial Branch lacks the power" to redress plaintiff's injury).[5]

**B. The Speech or Debate Clause Bars This Suit.**

Plaintiff cannot make an "exceptionally strong showing" of a likelihood of success warranting a preliminary injunction, *Adams,* 570 F.2d at 955-56, and his complaint should be dismissed, because this suit is also precluded by the Speech or Debate Clause of the Constitution. The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.

The Supreme Court has "[w]ithout exception" read the Clause "broadly to effectuate its purposes," which are "to insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland*, 421 U.S. at 501-02. Where it applies, the Clause affords an absolute immunity from all forms of relief, whether for injunction, damages, or declaratory judgment, and regardless of claims of unconstitutionality.[6]

Legislative activity protected by the Clause encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v.*

---

[5] Because Article III standing, Speech or Debate immunity, and the political question doctrine are all jurisdictional defenses, this Court, in considering defendants' dismissal motion, may address them in any order, prior to the remaining dismissal ground below. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015).

[6] *See Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 732 & n.10 (1980) (establishing that common-law legislative immunity, like Speech or Debate immunity, "is equally applicable to . . . actions seeking declaratory or injunctive relief"); *Eastland*, 421 U.S. at 496, 503, 512 (directing dismissal of complaint seeking injunctive and declaratory relief); *Rangel*, 785 F.3d at 24 (recognizing that courts have "rejected time and again" claims that Speech or Debate immunity does not apply where conduct is allegedly unlawful or motivated by an improper purpose).

*McMillan*, 412 U.S. 306, 311 (1973). The Clause accordingly precludes inquiry into "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation *or with respect to other matters which the Constitution places within the jurisdiction of either House*." *Gravel v. United States*, 408 U.S. 606, 625 (1972) (emphasis added).

When Speech or Debate immunity is raised in defense to a suit, the only question is whether the claims presented "fall within the 'sphere of legitimate legislative activity.'" *Eastland*, 421 U.S. at 501 (citation omitted). "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere,' the Speech or Debate Clause is an absolute bar to interference." *Id.* at 503; *see also id.* at 501, 507, 509-10 & n.16 (Speech or Debate protections are absolute); *Gravel*, 408 U.S. at 623 n.14 (same).

Because the Constitution expressly assigns to the Senate the power to provide "Advice and Consent," art. II, § 2, cl. 2, a pending judicial nomination is plainly a "matter[] which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. Speech or Debate immunity, therefore, interposes an absolute bar to plaintiff's suit challenging the Senate's consideration of this nomination. *See id.* at 617 (Speech or Debate immunity "equally cover[s]" "voting" as it does actual speech or debate); *Schultz v. Sundberg*, 759 F.2d 714, 717 (9th Cir. 1985) (per curiam) (legislative immunity barred suit against state Senate president for compelling legislator to attend session to consider confirmation of gubernatorial nominees); *Dastmalchian v. Dep't of Justice*, 71 F. Supp. 3d 173, 178 (D.D.C. 2014) (Speech or Debate immunity barred suit against Senate Judiciary Committee arising out of judicial confirmation), *aff'd,* 2015 WL 3372295 (D.C. Cir. May 4, 2015).

Plaintiff erroneously contends that Speech or Debate immunity protects neither "the Senate" (as opposed to its individual Members) nor what he characterizes as the "refusal to act" at issue here. Compl. at 29-30 & Mot. for Prelim. Injunct. at 21-22. Plaintiff incorrectly assumes that a final vote on the floor of the Senate is the only legislative act by which the Senate may withhold its consent to a judicial nomination. To the contrary, over two-thirds of the 36 Supreme Court nominations not confirmed by the Senate failed for reasons *other than* the outcome of a final vote on the Senate floor. *See* Richard S. Beth and Betsy Palmer, Cong. Research Serv., RL33247, *Supreme Court Nominations: Senate Floor Procedure and Practice, 1789-2011* (2011), *available at* https://fas.org/sgp/crs/misc/RL33247.pdf (detailing 25 Supreme Court nominations that failed prior to receiving a final vote). "After all, the Senate's decision not to act on a nomination effectively is a rejection of that nomination, as evidenced by the Senate's routine return to the president of nominations [that] have not been acted upon." *N.L.R.B. v. New Vista Nursing and Rehabilitation*, 719 F.3d 203, 234-35 (3d Cir. 2013); *see also* Standing Rules of the Senate, Rule XXXI.6, *reprinted in* S. Doc. No. 113-18, at 43 (2013), http://www.gpo.gov/fdsys/pkg/CDOC-113sdoc18/pdf/CDOC-113sdoc18.pdf ("[A]ll nominations pending and not finally acted upon at the time of taking such adjournment or recess shall be returned by the Secretary to the President. . . .").

All methods, therefore, of withholding the consent necessary to confirm a nominee are legislative acts, whether characterized as a "refusal to act" or whether performed by "the Senate" (as opposed to its individual Members). *See Supreme Court of Virginia*, 446 U.S. at 733-34 (holding "Supreme Court of Virginia" enjoyed common law legislative immunity, modeled after Speech or Debate immunity, for its "issuance of, *or failure to amend*, the challenged rules" and

recognizing preclusion of a similar suit against the "*Virginia Legislature* . . . its committees, or members" for an alleged "*refus[al] to amend*" such rules) (emphasis added); *Common Cause*, 748 F.3d at 1283-84 (recognizing that Speech or Debate immunity precluded plaintiffs from naming "the Senate" as a defendant in complaint challenging nonpassage of legislation allegedly favored by a majority of Senators); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 179 (D.D.C. 2013) (holding Members adjudicating disciplinary matter immune under Speech or Debate Clause based on their "fail[ure] to disclose" allegedly improper communications they received, stating "just as defendants are immune from suits based on speech within the legislative sphere, so are they protected for any failure to speak within the same sphere"), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015); *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (holding that Speech or Debate immunity bars suit challenging the "decision of individual Congressmen *not to take legislative action* in response to [plaintiff's] prompts") (emphasis added); *Marsh v. U.S. Congress*, 1997 WL 215519, at *1 (6th Cir. Apr. 29, 1997) (affirming district court's dismissal on Speech or Debate grounds of complaint against Congress for "neglecting to pass legislation" favored by plaintiff).

In sum, where, as here, the conduct complained of is legislative in nature, "judicial inquiry is at an end." *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 249 (D.D.C. 1981). "Such is the nature of absolute immunity, which is – in a word – absolute." *Rangel*, 785 F.3d at 24.

**C. This Action Is Nonjusticiable Under the Political Question Doctrine.**

Third, plaintiff cannot make an "exceptionally strong showing" of a likelihood of success warranting a preliminary injunction, *Adams,* 570 F.2d at 955-56, and his complaint should be

dismissed, because, beyond the barriers of lack of standing and legislative immunity, the complaint is also nonjusticiable under the political question doctrine. A complaint is nonjusticiable where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department," a "lack of judicially discoverable and manageable standards for resolving it," or where resolution of the claims would express "a lack of the respect due [a] coordinate branch[]." *Baker v. Carr*, 369 U.S. 186, 217 (1962). While the presence of any one factor renders an action nonjusticiable, *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005), here, each of the three factors does so.

**1. The Constitution Commits to the Senate Alone the Manner in Which It Provides "Advice and Consent" Concerning Judicial Nominations and Determines the "Rules of Its Proceedings" for Doing So.**

The complaint seeks to present a nonjusticiable political question because the Senate's determinations regarding how and when it provides "Advice and Consent," and the "Rules of its Proceedings" for doing so, are committed by the Constitution to the Senate exclusively, and are beyond review in this case.

Article II, Section 2, Clause 2, of the Constitution commits to the Senate the exclusive responsibility to provide "Advice and Consent" with respect to the appointment by the President of "Officers of the United States." The Appointments Clause, which speaks only of the President and the Senate, "makes no reference to *any* role of the judiciary." *Nat'l Treasury Emp. Union v. Bush*, 715 F. Supp. 405, 407 (D.D.C. 1989) (emphasis added) (holding nonjusticiable claim that President had nondiscretionary duty to nominate officer to fill agency vacancy). Senate confirmation was designed to be the only check on the appointment of judges for the same reasons that "impeachment was designed to be the only check," *Nixon v. United States*, 506 U.S.

224, 235 (1993), on their tenure. *See id.* (holding nonjusticiable challenge to process by which Senate conducted impeachment trial of federal judge). The interposition of the Judiciary in either process would "place final reviewing authority with respect to impeachments" and appointments "in the hands of the same body that the impeachment process," and the appointment process, are "meant to regulate." *Id.*

The Appointments Clause is not the only provision of the Constitution that insulates from judicial review the manner in which Members of the Senate provide "Advice and Consent." The Supreme Court has long recognized that Article I, Section 5 provides each House with broad discretion to determine its "Rules of Proceedings." A House of Congress

> may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained. *But within these limitations all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, more accurate, or even more just. The power to make rules . . . within the limitations suggested [is] absolute and beyond the challenge of any other body or tribunal.*

*United States v. Ballin*, 144 U.S. 1, 5 (1892) (emphasis added) (concluding that because "[t]he Constitution has prescribed no method" for determining the presence of a quorum, it fell within the competency of each House to do so).

Accordingly, to present a justiciable challenge to internal congressional processes, a plaintiff must point to a "separate provision of the Constitution" that contains an "identifiable textual limit" upon the Senate's consideration of legislative business before it. *Nixon*, 506 U.S. at 237-38 (concluding that word "try" in Impeachment Trial Clause was not sufficiently "defined and fixed" by the Constitution to render justiciable challenge to Senate's rules of impeachment trial proceedings) (citation omitted); *Common Cause*, 909 F. Supp. 2d at 28 ("[I]n order to

present a justiciable challenge to congressional procedural rules, Plaintiffs must identify a separate provision of the Constitution that limits the rulemaking power.").

Although several constitutional provisions prescribe time requirements for the Senate, *see, e.g.*, U.S. Const. art. I, § 4, cl. 1 (time, place, and manner for congressional elections); art. I, § 4, cl. 2 (date for Congress to assemble); art. I, § 5, cl. 4 (length of time for adjournment without consent of other House), no constitutional provision expressly regulates the amount of time the Senate may consider a nomination or the means by which it may provide, or withhold, its consent. The lack of constitutional guidance governing the Senate's procedures for considering nominations thus distinguishes this action from those cases in which the courts have found challenges to congressional rules or practices to be justiciable.

For example, in *Powell v. McCormack*, 395 U.S. 486 (1969), the Supreme Court relied on the express qualifications for membership in the House of Representatives provided by Article I, Section 2, Clause 2 (age, residency, and citizenship) in reviewing the House's exercise of its Article I, Section 5, Clause 1 power to judge the qualifications of its Members. The Court held that, while the Constitution committed to the House the power to judge those three qualifications of its Members, the House could not interpose additional qualifications beyond those expressly set forth in the Constitution. *See id.* at 547-50. Thus, the House's exclusion of Representative-elect Powell for reasons other than age, residency, and citizenship did not present a political question. *See id.* at 547-48.

Unlike the qualifications for House membership, however, the constitutional provision relied upon here -- the Senate's advice and consent power -- does not expressly limit the Senate's authority when to provide, or withhold, that consent. *See id.*; *Goldwater v. Carter*, 444 U.S. 996,

1003 (1979) (Rehnquist, J.) (plurality) (challenge to President's termination of treaty nonjusticiable, reasoning that "while the Constitution is express" as to Senate participation in "ratification of a treaty, it is silent as to that body's participation in the abrogation of a treaty"); *Cogswell*, 2009 WL 529243, at *10-11 (challenge to timing of Senate consideration of judicial nominations nonjusticiable, stating that "[t]he Constitution, in its plain text, bestows no such power onto the Judiciary to regulate the timing in which the Executive or Legislature exercises their Constitutional duties" with regard to judicial nominations); *Common Cause*, 909 F. Supp. 2d at 13 (challenge to Senate rules governing voting on legislation nonjusticiable, stating "[n]owhere does the Constitution contain express requirements regarding the proper length of, or method for, the Senate to debate proposed legislation").

Accordingly, because "nowhere does the Constitution contemplate the participation by the third, non-political branch, that is the Judiciary, in the appointment of judges," *Cogswell,* 2009 WL 529243, at *10-11, the Senate has unreviewable authority to determine how and when it provides advice and consent with regard to this judicial nomination.

**2. <u>There Are No Judicially Discoverable Standards to Resolve This Case</u>.**

A second reason the complaint presents a nonjusticiable political question is that there are no judicially discoverable standards for resolving this case. *Baker*, 369 U.S. at 217. From what standards would this Court derive plaintiff's proferred rule that, after a "reasonable" amount of time, a court may instruct the Senate to vote on a pending nomination?

There are simply no principles from which this Court could derive guidance to order the relief plaintiff seeks placing the "Advice and Consent" power of the Senate in the hands of the courts. *See Nixon*, 506 U.S. at 229-30 (holding that grant of constitutional power to Senate to

"try all Impeachments" did not provide any measure by which a court could judge the Senate's exercise of that power); *Coleman v. Miller*, 307 U.S. 433, 451-53 (1939) (holding nonjusticiable claim that constitutional amendment was not ratified by Kansas within a "reasonable" amount of time from being proposed by Congress, asking "[w]here are to be found the criteria for such a judicial determination? None are to be found in Constitution or statute"); *Cogswell,* 2009 WL 529243, at *10-11 ("[N]othing in Article III indicates the Court should presume it has 'judicially discoverable and manageable standards' to control the timeliness of actions explicitly delegated by the Constitution to the Executive and Legislative Branches."); *Common Cause*, 909 F. Supp. 2d at 30-31 ("Plaintiffs point to no standard within the Constitution by which the Court could judge" challenge to Senate rules governing consideration of legislative matters before it); *Bush*, 715 F. Supp. at 407 (holding nonjusticiable claim that President Bush had duty to appoint agency officials within a specified period of time because it was "beyond the scope of judicial expertise" to "ask[] the Court to determine how much time should reasonably be permitted [for the President] to evaluate and select a nominee for" the agency).[7]

### 3. The Court's Consideration of Plaintiff's Claims Would Demonstrate a Lack of Respect for a Co-Equal Branch.

Finally, for a court to engage in the review plaintiff seeks would express an extraordinary lack of respect for the Senate as a coordinate branch of government. That is because "reaching

[7] Plaintiff's citation to *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974), *see* Compl. at 25 & Mot. for Prelim. Inj. at 17, is inapposite. As the court in *NTEU v. Bush* recognized, *NTEU v. Nixon*, which held that the President had an express, statutory, nondiscretionary duty to make federal pay adjustments by a specific date mandated by law, did not call into question the President's appointment power. *See NTEU v. Bush*, 715 F. Supp. at 408. Furthermore, the *NTEU v. Nixon* court recognized that its authority to issue declaratory relief in that case was predicated upon the existence of mandamus jurisdiction there, *NTEU v. Nixon,* 492 F.2d at 616, which is not present here. *See* Part I(D).

the merits of this case would require an invasion into internal Senate processes at the heart of the Senate's constitutional prerogatives as a House of Congress." *Common Cause*, 909 F. Supp. 2d at 31. Furthermore, a determination of this claim would also "call into question the application of every Senate or House standing-rule that interferes with or delays the enactment of legislation, the adoption of treaties, or the confirmation of executive [and judicial] officers." *Judicial Watch, Inc.*, 340 F. Supp. 2d at 38; *see also Raiser,* 54 F. App'x at 306-07 (challenge to Senate's rule referring nominations to committee). That "would amount to an unprecedented exercise of the judicial power, directed at the core functions of the United States Congress." *Judicial Watch, Inc.*, 340 F. Supp. 2d at 38.

Under our system of separated powers, the Senate, and not this Court, is the appropriate institution to address the timing and processes of the Senate's consideration of judicial nominations. *See Brown v. Hansen*, 973 F.2d 1118, 1122 (3d Cir. 1992) (per curiam) ("Absent a clear command from some external source of law, we cannot interfere with the internal workings of the Virgin Islands Legislature 'without expressing lack of the respect due coordinate branches of government.'") (challenge to legislature's voting rules) (citation omitted); *Cogswell*, 2009 WL 529243, at *10 (stating that "by granting Plaintiff's request, the Court would engage in the utmost expression of a 'lack of the respect due coordinate branches of government,'" as "Article III . . . preclud[es] the sort of judicial oversight of the political branches in which [Plaintiff] invite[s] [the Court] to engage") (citation omitted). Thus, plaintiff's complaint is nonjusticiable.

**D. The Complaint Lacks a Cause of Action.**

Finally, plaintiff cannot make an "exceptionally strong showing" of a likelihood of success warranting a preliminary injunction, *Adams,* 570 F.2d at 955-56, and his complaint should be dismissed, because the statutes the complaint relies upon – the federal mandamus statute, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651(a), *see* Compl. at 26 – do not supply a cause of action here.

The mandamus statute, by its terms, is not applicable to the Legislative Branch, *see United States v. Choi*, 818 F. Supp. 2d. 79, 84 (D.D.C. 2011) (collecting cases), and plaintiff, in any event, cannot satisfy its stringent requirements. *See Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014) (recognizing that mandamus "is a drastic remedy," which may be invoked only in the "extraordinary circumstances" where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available"); *Shoshone Bannock Tribes v. Reno,* 56 F.3d 1476, 1480 (D.C. Cir. 1995) (stating that the alleged duty must be "*ministerial* and the obligation to act *peremptory and clearly defined.* The law must not only authorize the demanded action, *but require it*; *the duty must be clear and undisputable.*") (emphasis added, citation omitted).

Nor can the All Writs Act supply the cause of action not afforded by the mandamus statute because the Act "does not . . . provide federal courts with an independent grant of jurisdiction," *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002), and thus does not supply a cause of action. *West v. Spellings*, 480 F. Supp. 2d 213, 218 (D.D.C. 2007), *recons. denied*, 539 F. Supp. 2d 55, 58 (D.D.C. 2008). Moreover, the circumstances for its sparing and extraordinary use are not present here since this Court lacks "appellate jurisdiction" over internal

Senate practices. *See Choi*, 818 F. Supp. 2d at 84, 87 (explaining that "[k]ey to a court's issuance of a writ of mandamus [under the All Writs Act] is that it be acting in support of its appellate jurisdiction," and requires a showing*, inter alia*, that "the lower court has a clear duty to act"). The statutes relied upon by plaintiff thus cannot establish a cause of action here.[8]

## II. PLAINTIFF CANNOT MAKE AN EXCEPTIONALLY STRONG SHOWING THAT THE REMAINING FACTORS FAVOR INJUNCTIVE RELIEF

### A. Plaintiff Cannot Show Irreparable Injury.

Plaintiff cannot make an "exceptionally strong showing" of irreparable injury warranting a preliminary injunction. *Adams,* 570 F.2d at 955-56. It is a "well known and indisputable principle[]" that vague or speculative injury cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Wisconsin Gas Co. v. Fed. Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Plaintiff cannot demonstrate irreparable injury because, as explained in Part I(A), assuming *arguendo* that the Senate's consideration of a legislative matter has any bearing at all on the "effectiveness" of prior votes cast for its Members, any such injury amounts to nothing more than an abstract and diffuse dilution of voting power. *See Page,* 995 F. Supp. at 27-28 (concluding that claim by private individual that Senate voting rules "diminishe[d] [plaintiff's] voting power" was not an "actual injury" "personal" to him but was "vague and conjectural");

---

[8] Defendants do not address the underlying merits of plaintiff's claims because a determination on the merits is precluded by the jurisdictional doctrines set forth herein. *See Anderson v. Carter*, 802 F.3d 4, 8 (D.C. Cir. 2015) ("The Supreme Court has taught . . . that when a federal court has no jurisdiction over a case, it cannot determine . . . the merits of that action."); *Rangel*, 20 F. Supp. 3d at 183 n.24 (acknowledging same, merits precluded by lack of Article III standing, the political question doctrine and legislative immunity).

*Patterson*, 2014 WL 1349720, at *5-6 (concluding that plaintiff's alleged "dilution of . . . voting power" was an injury that was "abstract and hypothetical, rather than concrete and real"). That, however, is the antithesis of irreparable injury – a personal injury that is "certain and great," "actual and not theoretical," and " of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. E.P.A.,* 787 F.3d 544, 555 (D.C. Cir. 2015) (recognizing the "high standard for irreparable injury") (citation omitted); *Emily's List v. Fed. Election Comm'n*, 362 F. Supp. 2d 43, 58 (D.D.C.) (finding no irreparable injury from challenged regulation that had no impact on plaintiff's speech or practices), *aff'd*, 170 F. App'x 719 (D.C. Cir. 2005).

Plaintiff, therefore, cannot establish irreparable injury warranting injunctive relief.

**B. An Injunction Would Substantially Harm the Senate.**

Preliminary injunctive relief should not be granted where it would substantially injure other interested parties. *Katz v. Georgetown Univ.*, 246 F.3d 685, 687 (D.C. Cir. 2001). "[E]ven where denial of a preliminary injunction will harm the plaintiff," absent an "overwhelming case in the plaintiff's favor," an "injunction should not be issued where it would work a great and potentially irreparable harm to the party enjoined, unless an overwhelming case in the plaintiff's favor is present on the merits and equities of the controversy." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

An injunction that effectively instructs the Senate to vote on a matter would cause the Senate substantial harm. *First*, any such injunction would intrude directly into a core constitutional power of the Senate to advise and consent to judicial nominations. *E.g., Common Cause,* 909 F. Supp. 2d at 31; *Judicial Watch*, 340 F. Supp. 2d at 38. Judicial control of the

timing of Senate action on a matter before it would injure the Senate by making it subservient to a coordinate branch, in derogation of our system of separated powers. *See Adams,* 570 F.2d at 953-54, 956 (reversing injunction that "deeply intrude[d] into the core concerns of the executive branch" and "did not merely preserve the status quo pending further proceedings, but commanded an unprecedented action irreversibly altering" executive determinations).

*Second*, the interim relief that plaintiff seeks is essentially the ultimate relief sought in this case: an order directing the Senate to vote on a judicial nomination. But a preliminary injunction, standing on its own, should not constitute an adjudication of the merits of a case. *See, e.g., Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."); *Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308, 1313-14 (1985) (Rehnquist, J., in chambers) (staying preliminary injunction, stating that the district court's "requirement that the Secretary promulgate new nationwide regulations cannot possibly be justified as necessary to preserve the status quo").

**C. Granting the Requested Injunction Is Not in the Public Interest.**

Nor can plaintiff make an "exceptionally strong showing" that a preliminary injunction is in the public interest. *Adams,* 570 F.2d at 955-56. Rather, a preliminary injunction would be strongly contrary to the public interest, as it would undermine the separation of powers that guard against incursions on our representative government. Because "[t]he ultimate purpose of th[e] separation of powers is to protect the liberty and security of the governed," *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 272 (1991), the

public interest is served by the Senate exercising its constitutional authority to determine the timing and manner in which it fulfills its role to provide advice and consent.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be denied and the complaint dismissed without leave to amend.

Respectfully submitted,

/s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (telephone)
(202) 224-3391 (facsimile)

October 31, 2016

Attorneys for Defendants

# E X H I B I T – 4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**STEVEN S. MICHEL,** ***pro se*** )
***Plaintiff,*** )
**v.** )
)
**ADDISON MITCHELL MCCONNELL, JR.,** ) **Civil Action No.: 16-1729 (RC)**
**CHARLES ERNEST GRASSLEY, and** )
**UNITED STATES SENATE,** )
***Defendants.*** )
______________________________)

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

STEVEN S. MICHEL, *pro se*
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

1) The Senate's contention that I must make an "exceptionally strong showing" to justify my requested relief is wrong, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2) The law supports the likelihood of success on the merits of my *Complaint*. . . . .5

3) My injury is not generalized, and not shared by all U.S. citizens or voters. . . . . 7

4) The Senate's inaction on the Garland nomination *has* diminished the effectiveness of my 2012 and 2014 votes for New Mexico senators. . . . . . . . 12

5) Granting the relief I request would not have the judiciary impermissibly control the Senate's authority to provide advice and consent. . . . . . . . . . . . 12

6) The Speech or Debate Clause does *not* apply to the Senate's inaction. . . . . . . 17

7) The issues raised by my Complaint are *not* political questions. . . . . . . . . . . .18

8) Judicially manageable standards can resolve this case. . . . . . . . . . . . . . . . . .19

9) If "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary. . . . . . . . . . . . . . . . 21

10) The statutes I rely upon establish a cause of action. . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

## TABLE OF AUTHORITIES

**CASES:**

*Adams v. Vance*, 570 F.2d 950 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Bond v. U.S.*, 564 U.S. 211 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Colgrove v. Green*, 328 U.S. 549 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Conn. Coalition for Justice in Educ. Funding, Inc. v. Rell,* 295 Conn. 240,
990 A. 2d 206 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dept. of Commerce et al. v. U.S. House of Representatives et al.*, 525 U.S. 316 (1999). . . . . .10

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491(1975). . . . . . . . . . . . . . . . . . . . . . . . 16

*Ex parte Levitt*, 302 U.S. 633 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 11

*Goldwater v. Carter*, 444 U.S. 996 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Gravel v. U.S.*, 408 U.S. 606 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Hastings v. U.S. Senate*, 1989-WL 122685 (D.C. Cir. Oct. 18, 1989). . . . . . . . . . . . . . . . .4, 5

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*INS v. Chadha*, 462 U.S. 919 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221 (1986). . . . . . . . . . . .18, 19

*Judicial Watch, Inc. v. U.S. Senate, 432* F.3rd 359 (2005). . . . . . . . . . . . . . . . . . . . . . . . 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

**Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803). . . . . . . . . . . . . . .18, 19, 21

*Morrison v. Olson,* 487 U.S. 654 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**National Labor Relations Board v. Noel Canning,*
573 U.S.___, 134 S. Ct. 2550 (2014). . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 6, 13, 20, 21

*Nixon v. United States,* 506 U.S. 224 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Page v. Shelby,* 172 F. Supp. 23(D.D.C.), *aff'd* 172 F.3d 920 (D.C. Cir. 1998). . . . . . . . . . . 8

*Pauling v. Eastland,* 288 F.2d 126 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Powell v. McCormack*, 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . 16, 17, 22, 23, 24

*Public Citizen v. United States Department of Justice,* 491 U.S. 440 (1989). . . . . . . . . . . .14

*Raines v. Byrd*, 521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Stern v. Marshall,* 564 U.S. 462 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*The Pocket Veto Case,* 279 U.S. 655(1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*United States v. Ballin*, 144 U.S. 1 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. Choi*, 818 F. Supp. 79 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . .23

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Munoz,* 495 U.S. 385 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . .19

*Zivotofsky ex rel. Zivotofsky v. Clinton,* 132 S. Ct. 1421(2012). . . . . . . . . . . . . . . . . . 18, 19

**CONSTITUTION, STATUTES AND RULES:**

U.S. CONSTITUTION, ARTICLE 1, §1; §7, CL.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

U.S. CONSTITUTION, ARTICLE II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 5

U.S. CONSTITUTION, AMENDMENT XVII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 11, 12

28 U.S.C. §1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. §1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

STANDING RULES OF THE SENATE, RULES XXV, XXXI. 113TH CONGRESS, 1ST SESSION. DOCUMENT 113-18. REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 13

**OTHER:**

Fox, Lauren: "Senate No. 2 Won't Say if GOP Will Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016, http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 13

Hamilton, Madison, and Jay; *The Federalist* (1788). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?" N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . . . . . . . . . . . . . . . .14

United States Senate: http://www.senate.gov/pagelayout/reference/nominations/Nominations.htm. . . . . . . . . . . . . 7

**INTRODUCTION**

Defendants'[1] *Motion to Dismiss* checks off the all the usual boxes to dismiss a lawsuit filed by a citizen against the Senate: standing, justiciability, speech and debate clause, political question doctrine, etc. The *Motion* can be summarized as an argument that the Court should "just mind its own business."

But this is the Court's business.

The situation which is the subject of this lawsuit is of extraordinary importance. If a remedy is not available by this action, the trend-line of Senate obstruction leads to a dismantling of the Supreme Court by a small number of politically-motivated senators. Already, four United States Senators, two of whom sit on the Senate Judiciary Committee, have signaled the possibility of blocking *every* Supreme Court nomination made by a future President of an opposing political party.[2] Absent a Court determination that the Senate must participate in the Supreme Court nomination process, there is no mechanism to assure the continued viability of the U.S. Supreme Court.

At the end of his concurring opinion in *NLRB v. Canning*[3], which specifically dealt with the Constitution's Nominations and Appointments Clause[4], Justice Scalia wrote:

> It is not every day that we encounter a proper case or controversy requiring interpretation of the Constitution's structural provisions. Most of the time, the interpretation of those provisions is left to the political branches – which, in

---

[1] In this response, I will collectively refer to Senator McConnell, Senator Grassley and the U.S. Senate as "Defendants" or the "Senate"

[2] Fox, Lauren: "Senate No. 2 Won't Say if GOP Will Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016, http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms

[3] *National Labor Relations Board v. Noel Canning*, 573 U.S.___ , 134 S.Ct. 2550 (2014)

[4] U.S. Constitution, Article II, Sec.2

> deciding how much respect to afford the constitutional text, often take their cues from this Court. We should therefore take every opportunity to affirm the primacy of the Constitution's enduring principles over the politics of the moment.[5]

This action provides the Court with an opportunity to establish its interpretation of an ambiguous Constitutional provision of enormous consequence. It relates specifically to the function and viability of the United States Supreme Court. That opportunity should not be dismissed.

**ARGUMENT**[6]

In its *Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction and in Support of Defendant's Motion to Dismiss* ("*Dismissal Memorandum*"), the Senate argues that:

1) To justify my requested relief, I must make an "exceptionally strong showing" that I am likely to prevail on the merits of my *Complaint*;

2) I am unlikely to prevail on the merits of my Complaint;

3) My claim that the effectiveness of my vote has been diminished is a "generalized grievance that does not establish injury in fact;"

4) There is no causal link between the Senate's inaction on the Garland nomination and the diminished effectiveness of my 2012 and 2014 votes for New Mexico senators;

---

[5] *NLRB v. Canning* at 2617

[6] On October 31, Defendants filed arguments in a single *Memorandum of Points and Authorities* that combined their *Opposition to Plaintiff's Motion for Preliminary Injunction* with support for their *Motion to Dismiss* (ECF 16 and 17). Given the overlap of issues between these dual efforts, I understand the rationale behind such a combined pleading. On the other hand, the combined pleading puts me in the difficult position of sorting out which arguments apply to which effort – which is not completely clear. This *Memorandum in Opposition to Motion to Dismiss,* therefore, addresses the entirety of the arguments contained in the Senate's combined pleading – without attempting to distinguish Defendants' *Opposition* from Defendants' *Motion*. The exception to this is Section II of Defendants' *Memorandum,* which appears to relate only to the *Motion for Preliminary Injunction,* and which therefore I am not specifically responding to at this time.

5) Separation of power principles preclude the judiciary from controlling the Senate's authority to advise and consent;

6) The Speech or Debate Clause "affords the Senate and its Members absolute immunity for all conduct arising out of 'matters which the Constitution places within the jurisdiction of either House;'"

7) My claims are nonjusticiable under the political question doctrine because the advice and consent role is committed to the Senate alone;

8) There is no judicially manageable standard for resolving this case;

9) Granting the relief I request would "deeply disrespect the constitutional role of a coordinate branch of government"; and

10) The statutes I rely upon do not establish a cause of action.[7]

Contrary to Defendants' claims, I am not asking the Court to disregard precedent and law in order to impose a remedy that is not otherwise available. The law and facts, as applied to the obstructed nomination of Judge Garland, fit well within long-established legal precedent for remedying this perilous situation that threatens our democracy.

Defendants mischaracterize my claims and requested relief, and present arguments that defy common sense: Denying my *Complaint*[8] for the reasons argued by Defendants would allow one constitutionally-established branch of government to extinguish another.

Contrary to the claims made in Defendants' *Motion to Dismiss*, my *Complaint* and *Motion for Preliminary Injunction* should not be held to an "extraordinarily high standard." The facts and law underlying this action support the likelihood of success on the merits. The diminishment of my vote's effectiveness is not generalized, and not shared by all U.S. citizens or voters, and Senate inaction on the Garland nomination *has* diminished the

---

[7] *Dismissal Motion* at pp. 2-3

[8] To avoid confusion in the case, I refer to my *Petition* as the "Complaint"

effectiveness of my 2012 and 2014 votes for New Mexico senators. Granting the relief I request would not have the Judiciary impermissibly control the Senate's authority to provide advice and consent. The Speech or Debate Clause does *not* apply to the Senate's inaction, and the issues raised by my Complaint are *not* political questions. There exist judicially manageable standards to resolve this case and, if "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary. My case presents a lawful cause of action.

I will address each of these points.

**1) The Senate's contention that I must make an "exceptionally strong showing" to justify my requested relief is wrong.**

The Senate has argued that I must make an "exceptionally strong showing on the relevant factors" to justify a preliminary injunction. The Senate cites the D.C. Circuit's decision in *Adams v. Vance* and *Hastings v. U.S.*[9] as holding that this heightened standard applies because the "requested immediate injunctive relief deeply intrudes into the core concerns of [another] branch." These cases, however, involved different types of situation than the one I have presented. In *Adams*, the Court was asked to order the Secretary of State to file an objection with the International Whaling Commission. Although that objection could be later withdrawn, the D.C. Circuit overturned the injunction because of concern that even filing an objection could upset the "delicacies of diplomatic negotiations," which the Court lacked the capability to evaluate. It was that international sensitivity that

[9] *Adams v. Vance*, 570 F.2d 950, 955-6 (D.C. Cir. 1978), *Hastings v. U.S. Senate*, 1989-WL 122685 (D.C. Cir. Oct. 18, 1989).

caused the Court to reject the requested injunction. In *Hastings*, there was a challenge to holding committee hearings in an impeachment case.

My Compliant, however, does not ask for a specific outcome, as in *Adams*, nor am I seeking to halt a committee process as in *Hastings.* If I had requested the Court to instruct the Senate to *confirm* Judge Garland, or to bypass the Committee process, then perhaps *Adams* and *Hastings* might apply. But I am not. I am asking the Court only to have the Senate *participate* in the nomination and appointment process and make a decision one way or the other, as I believe the Senate is constitutionally required to do, and as it has historically done.

2) **The law supports the likelihood of success on the merits of my *Complaint*.**

In addition to the points and authorities I provided with my *Motion for Preliminary Injunction*, the recent Supreme Court case of *NLRB v. Canning*[10] also supports the merits of my claims.

In *NLRB v. Canning* the Court was tasked with interpreting the Recess Appointments Clause of the Constitution, which is part of the same Nominations and Appointments section[11] that is at issue in this case. A question before the Court was: When does a Senate adjournment becomes a "recess" that triggers the President's power to temporarily appoint officials without Senate advice and consent? The Constitutional language surrounding recess appointments was sparse and ambiguous. In its decision, the Court first made clear that having Senate approval for appointments was the norm:

---

[10] *National Labor Relations Board v. Noel Canning*, 573 U.S.___, 134 S.Ct. 2550 (2014)

[11] U.S. Constitution, Article II, Section 2

> The Federalist Papers make clear that the Founders intended this method of appointment, requiring Senate approval, to be the norm (at least for principle officers).[12]

Then, importantly, the Court explained that "*in interpreting the Clause, we put significant weight upon historical practice* (emphasis in original)."[13] The Court

> confirmed that "[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions" regulating the relationship between Congress and the President. *The Pocket Veto Case,* 279 U.S. 655, 689 (1929).[14]

The Court also held:

> That principle is neither new nor controversial. As James Madison wrote, it "was foreseen at the birth of the Constitution, that difficulties and differences of opinion might occasionally arise in expounding terms & phrases necessarily used in such a charter . . . and that it might require a regular course of practice to liquidate & settle the meaning of some of them." . . . . And our cases have continually confirmed Madison's view.[15]

The Court then looked to the history of use of the Recess Appointments Clause, from the Founding to the present, to determine when an absence would became a "recess":

> . . . the President has consistently and frequently interpreted the word "recess" to apply to intra-session recesses, and has acted on that interpretation. The Senate as a body has done nothing to deny the validity of this practice for at least three-quarters of a century. And three-quarters of a century of settled practice is long enough to entitle a practice to "great weight in a proper interpretation" of the constitutional provision. *The Pocket Veto Case,* 279 U.S., at 689.

This same type of historical analysis, I believe, demonstrates that the Nominations and Appointments Clause requires full Senate participation that either confirms or rejects a

---

[12] *NLRB* at 2558

[13] *NLRB* at 2559

[14] *NLRB* at 2559

[15] *NLRB* at 2560

nominee within a relatively short period of time. In other words, it supports the injunction, declaratory judgment and mandamus that I am seeking.

The Exhibit[16] to this *Memorandum* contains the U.S. Senate's compilation of the disposition of every Supreme Court nomination from 1789 until the present. During that time there were 161 nominations. Of those, only 9 nominations received "no action," and of those, four nominees were nevertheless confirmed or refused within months. Of the remaining five, one vacancy in 1866 was eliminated because the seat was abolished and the other four occurred in the short period between 1844 and 1853. In sum, but for a short *ante bellum* period in the mid-1800s, the practice of the Senate has always been to consider and act expeditiously to confirm or reject a Supreme Court nominee. This history is at least as consistent and compelling as the history relied upon by the *NLRB* Court, and demonstrates that considering and acting on Supreme Court nominations within a reasonable time is constitutionally required.

**3) My injury is not generalized, and not shared by all U.S. citizens or voters.**

The Senate argues that my Complaint presents a "generalized grievance" that does not confer jurisdiction to the Court. Referencing *Lujan*[17] and other holdings, the Senate argues that a harm to "every citizen's interest" that affects me and the "public at large" identically is not a particularized grievance sufficient to establish standing. Citing *Ex parte Levitt*,[18] Defendants also argue that individual senators lack standing to challenge inaction

[16] U.S. Senate: http://www.senate.gov/pagelayout/reference/nominations/Nominations.htm

[17] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

[18] *Ex parte Levitt*, 302 U.S.633 (1937)

on the Garland nomination. *Raines v. Byrd*[19] is cited by Defendants to show that individual senators would not have standing based upon their loss of political power. Finally, the Senate argues that my claims cannot be sustained, based upon the reasoning of *Page v. Shelby*,[20] which held that even though the Senate committee system deprives some senators of a voice in the passage of legislation, that is insufficient to establish standing. The situation described in my *Complaint*, and which I seek to remedy, is distinguishable from all of these cases cited by Defendants.

I recognize that, under *Lujan,* my injury must be particularized and not shared equally with the general citizenry. The injury I have sustained meets that standard. Eleven members of the Senate Judiciary Committee, to which judicial nominations are first considered under Senate rules,[21] have refused to hold hearings on any Supreme Court nomination made by President Obama. Senate Leader McConnell has refused Senate floor action. These decisions were made with almost a year left in the President's four-year term. The result has been to withhold consent to the Garland nomination without ever having presented the question to the full Senate, and allowing the Senate to act.

Put another way, 12 senators (11 Judiciary Committee members and Senator McConnell) have wielded a power that should require the vote of 51 senators to accomplish. My two senators from New Mexico have been provided zero votes in that process. At the same time, citizens from Utah and Texas, each with both of their senators

---

[19] *Raines v. Byrd*, 521 U.S.811 (1997)

[20] *Page v. Shelby,* 172 F. Supp. 23(D.D.C.), *aff'd* 172 F.3d 920 (D.C. Cir. 1998)

[21] *Standing Rules of the Senate*, Rules XXV and XXXI, 113th Congress, 1st Session, Doc. 113-18, Rev. to January 24, 2013; U.S. Government Printing Office, Nov. 4, 2013

sitting on the Judiciary Committee, have had their Senators assigned far more than the 1/100 voting power ("one vote")[22] which each senator is allotted by the Constitution. Defendants McConnell and Grassley have also been provided extraordinary voting power by virtue of their respective leadership and chairmanship. These activities have eliminated the effectiveness of my vote for United States senators in the Supreme Court nomination and appointment process.

Defendants gloss over the distinction the *Lujan*[23] court drew between injuries to a plaintiff versus injury to third parties. *Lujan* involved a group who asserted standing based on injury to *other* individuals, which requires a more difficult showing than where, as in my case, the injury is to me. The Court explained:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.[24]

My injury, and claim of standing, are based upon rights that I have under the 17th Amendment to vote for United States senators, and to have each of those senators represent my interests with "one vote" in the Senate. The injury is to me. The Supreme

---

[22] U.S. Constitution, Amendment XVII

[23] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

[24] *Lujan* at 561-562 (1992) (emphasis added)

Court has expressly held "that voters who allege facts showing disadvantage to themselves as individuals have standing to sue."[25] In *Department of Commerce et al. v. U.S. House of Representatives et al.*, a case involving the Constitution's "Census Clause" and voter standing, the Supreme Court held:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[26]

The fact that others may also have been injured by the Defendants behavior does not preclude standing.[27] The importance of individuals, such as myself, to be provided standing where separation of power concerns are raised, has also been frequently noted. The Supreme Court explained:

> Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well. In the precedents of this Court, the claims of individuals – not of Government departments – have been the principal source of judicial decisions concerning separation of powers and checks and balances.[28]

---

[25] *Baker v. Carr* , 369 U.S. 186, 206 (1962) referring to its holding in *Colgrove v. Green*, 328 U.S. 549 (1946) and then to several Supreme Court decisions following *Colgrove* recognizing standing of individual voters.

[26] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[27] *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

[28] *Bond v. United States,* 564 U.S. 211 at 222

It is also important to recognize that my standing does not succumb to the constraint suggested in *Page v. Shelby*, which dealt with diminished voting power in the *passage of legislation*. The distinction is that the Constitution imposes neither a requirement that legislation be passed, nor that it even be considered. The law-making function of the Senate, however, is different than the "advice and consent" function, which is separately assigned to the Senate by the Constitution and which is not discretionary. Therefore, while an injury stemming from unpassed legislation might be too speculative to establish standing, the injury of eliminating my Senate representation in a matter that the Senate must, as a body, participate in and vote on, is not speculative at all.

Because the Senate must vote on Supreme Court nominees, and because 12 senators – none of whom are from New Mexico - have procedurally assumed the voting power of 51, I have been deprived of the 17th Amendment one-vote-per-senator representation in the Senate that I am entitled to in Judge Garland's confirmation process. Unlike the passage of legislation, my injury does not depend on the success or failure of Judge Garland's nomination. My injury is the deprivation of my constitutionally-vested representation in that confirmation process. That deprivation is not trivial. As identified in the *Federalist Papers*, the Senate is to be a deliberative body where senators share their views and develop well-reasoned outcomes.[29] That deliberative process is destroyed when 12 senators procedurally block the other 88 senators from participating.

The Senate's *Raines* and *ex parte Levitt* argument, that individual senators lack injury and standing to challenge inaction on the Garland nomination, is a straw-man. I have not based my claims on any injury to senators.

---

[29] See *The Federalist* Nos. 70,76,77

**4) The Senate's inaction on the Garland nomination *has* diminished the effectiveness of my 2012 and 2014 votes for New Mexico senators.**

Defendants claim that there is no causation between denying my elected Senators a vote in the consideration of Judge Garland's nomination, and the effectiveness of my vote in the Senate elections of 2012 and 2014. According to the Defendants, the effectiveness of my vote for a senator was established by the fact that my vote was counted in the election. Their argument is a shell game.

By the Senate's reasoning, my Senate vote would maintain its full value even if the Senator I voted for was physically locked out of the Senate for the entirety of the six-year term. Defendants ignore the second part of the Constitution's 17th Amendment, which entitles citizens to elect senators *that are each have one vote*.

**5) Granting the relief I request would not have the judiciary impermissibly control the Senate's authority to provide advice and consent.**

Defendants argue that the courts may not insert themselves into the Senate's role of advice and consent. The Senate argues that an order prescribing the "timing for its consideration of a pending legislative matter" violates separation of power requirements. The Senate, however, overlooks that the remedy I have requested is in fact consistent with Senate rules, and how the Senate has historically administered Supreme Court nominations. Those rules call for nominations to be referred to the Judiciary Committee, which determines whether to recommend that a nominee be confirmed or rejected. The nomination then proceeds to the Senate floor, where the entire Senate votes on whether to

confirm or reject a nominee.[30] Nowhere do Senate rules suggest that a nomination may be ignored and never brought to the Senate floor for debate – as Defendants stated they will with any Supreme Court nomination President Obama may make during the final quarter of his term. If Defendants' position is sustained, the reasoning would allow a small group of senators to block consideration of every nomination of a future President – which some Senators have already suggested should be done.[31]

In *NLRB v. Canning* the Court explained that the

> Constitution explicitly empowers the Senate to "determine the Rules of its Proceedings." Art. I, § 5, cl. 2. And we have held that "all matters of method are open to the determination" of the Senate, as long as there is "a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained" and the rule does not "ignore constitutional restraints or violate fundamental rights." *United States v. Ballin,* 144 U.S. 1, 5, 12 S. Ct. 507, 36 L. Ed. 321 (1892).[32]

The Senate's rules cannot extend to preventing constitutionally required functions altogether, as Defendants contend. The notion that the Senate's "rules of proceedings" include allowing a small number of senators to block a proceeding from occurring at all, contrary to constitutional requirements, defies reason. A blanket refusal to act is not a "method" and is not a "rule of proceeding."

---

[30] *Standing Rules of the Senate*, Rules XXV and XXXI, 113th Congress, 1st Session, Doc. 113-18, Rev. to January 24, 2013; U.S. Government Printing Office, Nov. 4, 2013

[31] Senators McCain, Burr, Cruz and Cornyn. See, Fox, Lauren: "Senate No. 2 Won't Say if GOP Will Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016, http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms

[32] *NLRB v. Canning*, 134 S.Ct. 2550, 2574

As I referenced in my *Complaint*, a New York University Law Review article by Lee Renzin in 1998 pointed out that failing to redress Senate inaction on judicial nominations compromised, rather than preserved, the constitutionally-required separation of powers:

> The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance…. In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate. [33]

Unlike other situations, where instructing the Senate to act could be viewed as compromising the separation of power, by this action I am seeking relief that would *restore* the separation of power. As Justice Kennedy said in *Public Citizen*, "It remains one of the most vital functions of this Court to police with care the separation of the governing powers."[34] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[35]

---

[33] Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?" N.Y.U. Law Review, Volume 73:1739, Nov.1998 at 1757 (citations omitted)

[34] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring)

[35] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)

Finally, the case law cited by Defendants involves situations very different from the one at hand. *Pauling*[36] involved the Court being asked to issue a declaratory order in anticipation of a Senate action that had not occurred. Here, Defendants have made clear that they will *never* consider *any* nomination of President Obama. In *Hearst*[37] the Court was asked to rule on a committee's ability to seek and obtain information – managing in advance the committee's activities. I, however, am not asking the Court manage what a committee considers in its deliberations. I am asking the Court to interpret the Constitution, and instruct the Senate *to fulfill* its Constitutionally-required role of determining, as a body, whether to confirm or reject a Supreme Court nominee – something it has refused to do.

Furthermore, Defendants neglect to relate that *Hearst* also ruled: "Nothing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others." Defendants' refusal to fulfill its role in the nomination and appointment process, and thereby starve the judiciary, including the Supreme Court, of necessary judges to fulfill its judicial function, is the Senate impermissibly controlling, and weakening, the judiciary.

In *Judicial Watch*[38] the language quoted by Defendants about the Court's reluctance to address Senate rules was not a basis for the Court's decision, which turned on the plaintiff's inability to establish an injury. Defendants' remaining authorities, lower court

---

[36] *Pauling v. Eastland,* 288 F.2d 126 (1960)

[37] *Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936)

[38] *Judicial Watch, Inc. v. U.S. Senate, 432* F.3rd 359 (2005)

rulings questioning the Court's power to oversee Senate action, are superseded by *Powell v. McCormack,* in which the Supreme Court determined that the House of Representatives could not exclude a member based upon qualifications other than those prescribed by the Constitution,[39] and *United States v. Ballin,* where the Supreme Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[40]

**6) The Speech or Debate Clause does *not* apply to the Senate's inaction.**

Defendants argue that my *Complaint* is precluded by the Speech or Debate Clause. Their arguments were addressed in my *Complaint* and, as they acknowledge, that clause only applies to activities which "fall within the 'sphere of legitimate legislative activity.'"[41] Activity or inactivity which is contrary to Constitutional requirements, such as refusing to participate in judicial nominations and appointments, is not "legitimate." Furthermore, my *Complaint* is aimed at a lack of legislative action, and the Speech or Debate Clause does not apply to a *refusal* to act: "it is clear from the language of the Clause that protection extends only to an act that has already been performed."[42]

Notably, the Supreme Court explained in *Gravel v. United States* that the Speech or Debate Clause protections are limited:

---

[39] *Powell v. McCormack*, 395 U.S. 486, 550 (1969)

[40] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[41] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 at 501 (1975)

[42] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech and debate in either House, but "only when necessary to prevent indirect impairment of such deliberations.[43]

However, even if this Court disagrees and determines that the Speech or Debate Clause bars this action against Senators McConnell and Grassley, the Court may still review the propriety of, and act on, the *Senate's* failure to participate in the Supreme Court judicial nomination and appointment process. The Speech or Debate Clause applies only to individuals and does not apply to an action against the Senate.[44] It is also important to note that, in *Powell,* the Court left open the question of whether the Speech or Debate Clause would bar an action against individual members of Congress if no other remedy was available.[45]

**7) The issues raised by my Complaint are *not* political questions.**

Defendants argue that my *Complaint* presents a non-justiciable "political question" which the Court should refrain from deciding. Defendants confuse deciding a "political

---

[43] *Gravel* at 625.

[44] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 513 (1975) (Marshall, J. concurring)

[45] *Powell* at note 26: "Given our disposition of this issue, we need not decide whether, under the Speech or Debate Clause petitioners would be entitled to maintain this action solely against members of Congress where no agents participated in the challenged action and no other remedy was available."

question" with interpreting the Constitution. Although Defendants argue that participation in the Supreme Court appointment process is entirely within the Senate's discretion, this is exactly the issue which I am asking the Court to decide. Specifically, whether the Senate's discretion to manage its business allows it to ignore Supreme Court nominations and impair the judicial branch of government.[46]

The political question doctrine rests in part on mutual respect among the three branches of government. [47] The doctrine is a "narrow exception" to the rule that the judiciary has a responsibility to decide cases properly before it.[48] While the resolution of issues involving a coordinate branch of government will sometimes have political implications, the judicial branch must not neglect its duty to "say what the law is"[49] merely because its decision may have "significant political overtones."[50] The Supreme Court has repeatedly rejected the view that a claim is nonjusticiable simply because a court is called upon to resolve the propriety or constitutionality of the act of another branch of

---

[46] It is also important to recognize that Defendants' blocking of Senate action has effectively reduced the number on the Supreme Court from nine to eight – at least for the time during which no nomination would be considered. This type of de facto one-house repeal of legislation establishing the size of the judiciary violates the constitutional requirements of bicameralism (2 houses) and presentment (to the President for signature) for laws to take effect. U.S. Constitution, Article 1, §1; §7, cl.3; *INS v. Chadha*, 462 U.S. 919, 952, 957-9 (1983)

[47] *Goldwater v. Carter*, 444 U.S. 996, 1000 (1979) (Powell, J., concurring); *Nixon v. United States,* 506 U.S. 224, 253 (1993) (Souter, J., concurring in judgment); *Conn. Coalition for Justice in Educ. Funding, Inc. v. Rell,* 295 Conn. 240, 255, 990 A. 2d 206 (2010).

[48] *Zivotofsky ex rel. Zivotofsky v. Clinton,* 132 S. Ct. 1421, 1427 (2012).

[49] *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60(1803),

[50] *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 (1986) (the interpretation of statutory text is "one of the Judiciary's characteristic roles.").

government.[51] A blanket rule against judicial "interference," which Defendants seem to advocate, threatens the independence of the judiciary and its co-equal and critical role in protecting against legislative encroachments on the people's rights and freedoms. [52] The courts are "bulwarks of a limited Constitution, against Legislative encroachment."[53]

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.... [I]t is the responsibility of this Court to act as the ultimate interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[54]

**8) Judicially manageable standards can resolve this case.**

The Senate argues that the judiciary is unable to establish standards that could adequately remedy the harm I have identified. The Senate maintains that the Constitution provides no time limit for undertaking its advice and consent role, and therefore none can be judicially crafted. The Senate is wrong.

---

[51] *Zivotofsky,* 132 S. Ct. at 1432 (Sotomayor, J., concurring)(citing *United States v. Munoz,* 495 U.S. 385, 390-91 (1990)); *see also Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952) (noting that a categorical rule of nonjusticiability because of possible interference with executive power, even in times of war, has never existed).

[52] *Stern v. Marshall,* 564 U.S. 462, 483 (2011) (Roberts, C.J.) (explaining that the framers demanded that the judiciary remain "truly distinct from both the legislature and the executive")

[53] Hamilton, *The Federalist* No. 78.

[54] *Powell* at 549.

First, even if one assumed that a specific time frame for required action might be difficult to discern, the Senate's position that has the power to *never* consider a Presidential nomination, as it has done with the Garland nomination, is incorrect. A constitutional interpretation that, by extension, would allow a small minority of senators to dismantle the judiciary cannot prevail.

Second, the Supreme Court *has* established judicially manageable standards to address Constitutional timing issues similar to the one at issue in this case. The Senate's argument focuses on my request that the Court require the Senate to act within a "reasonable time" as being unmanageable. But a "reasonable time" is a timeframe well within the Court's ability to discern from historical practice.

*NLRB v. Canning* laid a foundation for concluding that the Court can and should look to historical practice to determine what a "reasonable time" is for the Senate to act. The Court held that:

> [T]he [Recess] Clause ensures that the President and Senate always have at least a full session to go through the nomination and confirmation process. *That process may take several months* (emphasis added).[55]

Aside from recognizing the obvious norm and tradition that judicial nominations and appointments are to be resolved within several months, the *NLRB* Court also looked to when the Recess Appointments Clause had been historically invoked to ascertain how long a recess should continue before triggering the President's unilateral recess appointment power:

> We therefor conclude, in light of historical practice, that a recess of more than 3 days, but less than 10 days is presumptively too short to fall within the Clause. We add the word "presumptively" to leave open the possibility that some very unusual circumstance – a national catastrophe, for instance, that renders the Senate

[55] *NLRB* at 17

> unavailable but calls for an urgent response – could demand the exercise of the recess-appointment power during a shorter break. (It should go without saying – except that JUSTICE SCALIA compels us to say it – that political opposition would not qualify as an unusual circumstance.)[56]

By the same token, the Exhibit to this *Memorandum*, which details the history of Supreme Court nominations in the United States, should provide ample information for the Court to establish a presumptively reasonable time. Given that the longest nomination process prior to Judge Garland was 126 days, that would seem to be the outside limit to a presumptively "reasonable time." At this juncture, however, in response to Defendants' dismissal motion and preliminary injunction opposition, all the Court needs to decide is that *never* is not permissible.

**9) If "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary.**

Defendants argue that it would be disrespectful to the Senate for the Court to engage in the review requested by my *Complaint.* Defendants confuse the roles of the Senate and Judiciary. While the Senate may determine how to conduct its business, that conduct cannot conflict with the Constitution. Resolving my *Complaint* would not, as Defendants claim, "call into question the application of every Senate or House standing rule that interferes with or delays [legislative activity]." It is the Court's province to interpret the Constitution[57] and my *Complaint* simply asks the Court to do that, and enforce that

---

[56] *NLRB* at 21

[57] *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803)

interpretation to the extent needed. It is up to the Senate to determine whether or what rule changes, if any, might be required to conform to the Constitution.

*Powell v. McCormack* explained the issue well:

> Powell's right to sit would require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a 'lack of the respect due (a) coordinate (branch) of government, nor does it involve an 'initial policy determination of a kind clearly for nonjudicial discretion.' *Baker v. Carr*, 369 U.S. 217, 82 S.Ct. 691 at 710. Our system of government requires that federal courts on occasion interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.[58]

As I stated in my *Complaint,* the Senate's refusal to even consider whether to provide "advice and consent" for a duly nominated justice for the Supreme Court has created a constitutional crisis that threatens the balance and separation of power among our three branches of government. The Senate's refusal has divested the President of his constitutional power to appoint justices to the Supreme Court, has divested individual senators and their constituents of each senator's right to evaluate and vote on whether to confirm a Supreme Court nominee, and has compromised the viability and strength of the judiciary.

Granting the relief requested in my *Complaint* and *Motion for Preliminary Injunction* would only have the Court interpreting the Constitution to require the Senate, *as a body*, to decide whether to confirm or reject Supreme Court nominees. Without that required Senate participation, our system of government does not work.

---

[58] *Powell v. McCormack*, 395 U.S. 486, 548-9 (1969)

**10) The statutes I rely upon establish a cause of action.**

Defendants assert that neither the All Writs Act nor the federal mandamus statute[59] provide a cause of action. Defendants cite the district court holding in *U.S. v. Choi*[60] to argue that the mandamus statute does not apply to the legislative branch, and that the All Writs Act only applies to appellate jurisdiction. However, the federal mandamus statute (28 U.S.C. §1361) makes no mention of not applying to the legislative branch, and the All Writs Act (28 U.S.C. §1651) is not limited to appellate jurisdiction: "The Supreme Court and *all courts* established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law (emphasis added)." *Powell v. McCormack* specifically recognized the possibility of mandamus being applied to a house of Congress.[61]

Injunctive relief is also presumably available under 42 U.S.C. §1983, which provides a civil action for a deprivation of any legal rights by any person, and specifically allows for equitable and injunctive relief.

Even if mandamus were precluded, however, that provides no basis to dismiss this action, which also requested declaratory relief. *Powell* made clear that, regardless of the availability of "coercive relief," declaratory relief was well within the province of the district courts:

> We need express no opinion about the appropriateness of coercive relief in this case, for petitioners sought a declaratory judgment, a form of relief the District

---

[59] 28 U.S.C. §1651 and 28 U.S.C. §1361

[60] *United States v. Choi*, 818 F. Supp. 79 (D.D.C. 2011)

[61] "Petitioners seek additional forms of equitable relief, including mandamus for the release of petitioner Powell's back pay. The propriety of such remedies, however, is more appropriately considered in the first instance by the courts below." *Powell* at 550.

Court could have issued. The Declaratory Judgment Act, 28 U.S.C. §2201 provides that a district court may 'declare the rights *** of any interested party *** whether or not further relief is or could be sought.'[62]

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff prays for a court order denying Defendants' *Motion to Dismiss* and granting such other and further relief as the Court deems just and proper.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2016.

Respectfully submitted,

STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

[62] *Powell* at 517.

E X H I B I T

Case 1:16-cv-01729-RC Document 18 Filed 11/08/16 Page 31 of 39
USCA Case #16-5340 Document #1647267 Filed: 11/22/2016 Page 185 of 201



## Supreme Court Nominations, present-1789 (1789-present)

Printer Friendly


- Virtual Reference Desk
- Statistics & Lists
- Bibliographies
- How To...
- Is It True That...
- Glossary
- Senate Organization
- The Constitution


The Constitution requires the president to submit nominations to the Senate for its advice and consent. Since the Supreme Court was established in 1789, presidents have submitted 161 nominations for the Court, including those for chief justice. Of this total, 124 were confirmed (7 declined to serve). This chart lists nominations officially submitted to the Senate.

| Nominee | To Replace | Nominated | Vote | Result | & Date |
|---|---|---|---|---|---|
| **President Barack Obama** | | | | | |
| Merrick Garland | Scalia | Mar 16, 2016 | | | |
| Elena Kagan | Stevens | May 10, 2010 | 63-37 No. 229 | C | Aug 5, 2010 |
| Sonia Sotomayor | Souter | Jun 1, 2009 | 68-31 No. 262 | C | Aug 6, 2009 |
| **President George W. Bush** | | | | | |
| Samuel Alito, Jr. | O'Connor | Nov 10, 2005 | 58-42 No. 2 | C | Jan 31, 2006 |
| Harriet Miers | O'Connor | Oct 7, 2005 | | W | Oct 28, 2005 |
| John Roberts, Jr.[1] | Rehnquist | Sep 6, 2005 | 78-22 No. 245 | C | Sep 29, 2005 |
| John Roberts, Jr. | O'Connor | Jul 29, 2005 | | W | Sep 6, 2005 |
| **President Bill Clinton** | | | | | |
| Stephen Breyer | Blackmun | May 17, 1994 | 87-9 No. 242 | C | Jul 29, 1994 |
| Ruth Bader Ginsburg | White | Jun 14, 1993 | 96-3 No. 232 | C | Aug 3, 1993 |
| **President George H.W. Bush** | | | | | |
| Clarence Thomas | Marshall | Jul 8, 1991 | 52-48 No. 220 | C | Oct 15, 1991 |
| David Souter | Brennan | Jul 25, 1990 | 90-9 No. 259 | C | Oct 2, 1990 |
| **President Ronald Reagan** | | | | | |
| Anthony Kennedy | Powell | Nov 30, 1987 | 97-0 No. 16 | C | Feb 3, 1988 |
| Robert Bork | Powell | Jul 7, 1987 | 42-58 No. 348 | R | Oct 23, 1987 |
| Antonin Scalia | Rehnquist | Jun 24, 1986 | 98-0 No. 267 | C | Sep 17, 1986 |
| William Rehnquist[2] | Burger | Jun 20, 1986 | 65-33 No. 266 | C | Sep 17, 1986 |
| Sandra Day O'Connor | Stewart | Aug 19, 1981 | 99-0 No. 274 | C | Sep 21, 1981 |
| **President Gerald Ford** | | | | | |
| John Paul Stevens | Douglas | Nov 28, 1975 | 98-0 No. 603 | C | Dec 17, 1975 |
| **President Richard Nixon** | | | | | |
| William Rehnquist | Harlan | Oct 22, 1971 | 68-26 No. 450 | C | Dec 10, 1971 |
| Lewis Powell, Jr. | Black | Oct 22, 1971 | 89-1 No. 439 | C | Dec 6, 1971 |
| Harry Blackmun | Fortas | Apr 15, 1970 | 94-0 No. 143 | C | May 12, 1970 |
| G. Harrold Carswell | Fortas | Jan 19, 1970 | 45-51 No. 122 | R | Apr 8, 1970 |
| Clement Haynsworth, Jr. | Fortas | Aug 21, 1969 | 45-55 No. 154 | R | Nov 21, 1969 |
| Warren Burger[3] | Warren | May 23, 1969 | 74-3 No. 35 | C | Jun 9, 1969 |
| **President Lyndon Johnson** | | | | | |
| Homer Thornberry | Fortas | Jun 26, 1968 | | W | Oct 4, 1968 |
| Abe Fortas[4] | Warren | Jun 26, 1968 | | W | Oct 4, 1968 |
| Thurgood Marshall | Clark | Jun 13, 1967 | 69-11 No. 240 | C | Aug 30, 1967 |
| Abe Fortas | Goldberg | Jul 28, 1965 | V | C | Aug 11, 1965 |

| | | | | | |
|---|---|---|---|---|---|
| **President John Kennedy** | | | | | |
| Arthur Goldberg | Frankfurter | Aug 31, 1962 | V | C | Sep 25, 1962 |
| Byron White | Whittaker | Apr 3, 1962 | V | C | Apr 11, 1962 |
| **President Dwight Eisenhower** | | | | | |
| Potter Stewart | Burton | Jan 17, 1959 | 70-17 | C | May 5, 1959 |
| Charles Whittaker | Reed | Mar 2, 1957 | V | C | Mar 19, 1957 |
| William Brennan, Jr. | Minton | Jan 14, 1957 | V | C | Mar 19, 1957 |
| John Harlan | Jackson | Jan 10, 1955 | 71-11 | C | Mar 16, 1955 |
| John Harlan | Jackson | Nov 9, 1954 | | N | |
| Earl Warren[5] | Vinson | Jan 11, 1954 | V | C | Mar 1, 1954 |
| **President Harry Truman** | | | | | |
| Sherman Minton | Rutledge | Sep 15, 1949 | 48-16 | C | Oct 4, 1949 |
| Tom Clark | Murphy | Aug 2, 1949 | 73-8 | C | Aug 18, 1949 |
| Fred Vinson[6] | Stone | Jun 6, 1946 | V | C | Jun 20, 1946 |
| Harold Burton | Roberts | Sep 19, 1945 | V | C | Sep 19, 1945 |
| **President Franklin Roosevelt** | | | | | |
| Wiley Rutledge | Byrnes | Jan 11, 1943 | V | C | Feb 8, 1943 |
| Robert Jackson | Stone | Jun 12, 1941 | V | C | Jul 7, 1941 |
| James Byrnes | McReynolds | Jun 12, 1941 | V | C | Jun 12, 1941 |
| Harlan Stone[7] | Hughes | Jun 12, 1941 | V | C | Jun 27, 1941 |
| Frank Murphy | Butler | Jan 4, 1940 | V | C | Jan 16, 1940 |
| William Douglas | Brandeis | Mar 20, 1939 | 62-4 | C | Apr 4, 1939 |
| Felix Frankfurter | Cardozo | Jan 5, 1939 | V | C | Jan 17, 1939 |
| Stanley Reed | Sutherland | Jan 15, 1938 | V | C | Jan 25, 1938 |
| Hugo Black | Van Devanter | Aug 12, 1937 | 63-16 | C | Aug 17, 1937 |
| **President Herbert Hoover** | | | | | |
| Benjamin Cardozo | Holmes | Feb 15, 1932 | V | C | Feb 24, 1932 |
| Owen Roberts | Sanford | May 9, 1930 | V | C | May 20, 1930 |
| John Parker | Sanford | Mar 21, 1930 | 39-41 | R | May 7, 1930 |
| Charles Hughes[8] | Taft | Feb 3, 1930 | 52-26 | C | Feb 13, 1930 |
| **President Calvin Coolidge** | | | | | |
| Harlan Stone | McKenna | Jan 5, 1925 | 71-6 | C | Feb 5, 1925 |
| **President Warren Harding** | | | | | |
| Edward Sanford | Pitney | Jan 24, 1923 | V | C | Jan 29, 1923 |
| Pierce Butler | Day | Dec 5, 1922 | 61-8 | C | Dec 21, 1922 |
| Pierce Butler | Day | Nov 21, 1922 | | N | |
| George Sutherland | Clarke | Sep 5, 1922 | V | C | Sep 5, 1922 |
| William Taft[9] | White | Jun 30, 1921 | V | C | Jun 30, 1921 |
| **President Woodrow Wilson** | | | | | |
| John Clarke | Hughes | Jul 14, 1916 | V | C | Jul 24, 1916 |
| Louis Brandeis | Lamar | Jan 28, 1916 | 47-22 | C | Jun 1, 1916 |
| James McReynolds | Lurton | Aug 19, 1914 | 44-6 | C | Aug 29, 1914 |
| **President William Taft** | | | | | |
| Mahlon Pitney | Harlan | Feb 19, 1912 | 50-26 | C | Mar 13, 1912 |
| Joseph Lamar | Moody | Dec 12, 1910 | V | C | Dec 15, 1910 |
| Willis Van Devanter | White | Dec 12, 1910 | V | C | Dec 15, 1910 |
| Edward White[10] | Fuller | Dec 12, 1910 | V | C | Dec 12, 1910 |
| Charles Hughes | Brewer | Apr 25, 1910 | V | C | May 2, 1910 |

| | | | | | |
|---|---|---|---|---|---|
| Horace Lurton | Peckham | Dec 13, 1909 | V | C | Dec 20, 1909 |
| **President Theodore Roosevelt** | | | | | |
| William Moody | Brown | Dec 3, 1906 | V | C | Dec 12, 1906 |
| William Day | Shiras | Feb 19, 1903 | V | C | Feb 23, 1903 |
| Oliver Holmes | Gray | Dec 2, 1902 | V | C | Dec 4, 1902 |
| **President William McKinley** | | | | | |
| Joseph McKenna | Field | Dec 16, 1897 | V | C | Jan 21, 1898 |
| **President Grover Cleveland** | | | | | |
| Rufus Peckham | Jackson | Dec 3, 1895 | V | C | Dec 9, 1895 |
| Edward White | Blatchford | Feb 19, 1894 | V | C | Feb 19, 1894 |
| Wheeler Peckham | Blatchford | Jan 22, 1894 | 32-41 | R | Feb 16, 1894 |
| William Hornblower | Blatchford | Dec 5, 1893 | 24-30 | R | Jan 15, 1894 |
| William Hornblower | Blatchford | Sep 19, 1893 | | N | |
| **President Benjamin Harrison** | | | | | |
| Howell Jackson | Lamar | Feb 2, 1893 | V | C | Feb 18, 1893 |
| George Shiras, Jr. | Bradley | Jul 19, 1892 | V | C | Jul 26, 1892 |
| Henry Brown | Miller | Dec 23, 1890 | V | C | Dec 29, 1890 |
| David Brewer | Matthews | Dec 4, 1889 | 53-11 | C | Dec 18, 1889 |
| **President Grover Cleveland** | | | | | |
| Melville Fuller[11] | Waite | Apr 30, 1888 | 41-20 | C | Jul 20, 1888 |
| Lucius Lamar | Woods | Dec 6, 1887 | 32-28 | C | Jan 16, 1888 |
| **President Chester Arthur** | | | | | |
| Samuel Blatchford | Hunt | Mar 13, 1882 | V | C | Mar 22, 1882 |
| Roscoe Conkling | Hunt | Feb 24, 1882 | 39-12 | D | Mar 2, 1882 |
| Horace Gray | Clifford | Dec 19, 1881 | 51-5 | C | Dec 20, 1881 |
| **President James Garfield** | | | | | |
| Stanley Matthews | Swayne | Mar 14, 1881 | 24-23 | C | May 12, 1881 |
| **President Rutherford Hayes** | | | | | |
| Stanley Matthews | Swayne | Jan 26, 1881 | | N | |
| William Woods | Strong | Dec 15, 1880 | 39-8 | C | Dec 21, 1880 |
| John Harlan | Davis | Oct 16, 1877 | V | C | Nov 29, 1877 |
| **President Ulysses Grant** | | | | | |
| Morrison Waite[12] | Chase | Jan 19, 1874 | 63-0 | C | Jan 21, 1874 |
| Caleb Cushing[13] | Chase | Jan 9, 1874 | | W | Jan 13, 1874 |
| George Williams[14] | Chase | Dec 1, 1873 | | W | Jan 8, 1874 |
| Ward Hunt | Nelson | Dec 3, 1872 | V | C | Dec 11, 1872 |
| Joseph Bradley | (new seat) | Feb 7, 1870 | 46-9 | C | Mar 21, 1870 |
| William Strong | Grier | Feb 7, 1870 | | C | Feb 18, 1870 |
| Edwin Stanton[15] | Grier | Dec 20, 1869 | 46-11 | C | Dec 20, 1869 |
| Ebenezer Hoar | (new seat) | Dec 14, 1869 | 24-33 | R | Feb 3, 1870 |
| **President Andrew Johnson** | | | | | |
| Henry Stanbery | Catron | Apr 16, 1866 | | N | |
| **President Abraham Lincoln** | | | | | |
| Salmon Chase[16] | Taney | Dec 6, 1864 | V | C | Dec 6, 1864 |
| Stephen Field | (new seat) | Mar 6, 1863 | V | C | Mar 10, 1863 |
| David Davis | Campbell | Dec 1, 1862 | V | C | Dec 8, 1862 |
| Samuel Miller | Daniel | Jul 16, 1862 | V | C | Jul 16, 1862 |
| Noah Swayne | McLean | Jan 21, 1862 | 38-1 | C | Jan 24, 1862 |

| | | | | | |
|---|---|---|---|---|---|
| **President James Buchanan** | | | | | |
| Jeremiah Black | Daniel | Feb 5, 1861 | 25-26 | R | Feb 21, 1861 |
| Nathan Clifford | Curtis | Dec 9, 1857 | 26-23 | C | Jan 12, 1858 |
| **President Franklin Pierce** | | | | | |
| John Campbell | McKinley | Mar 21, 1853 | V | C | Mar 22, 1853 |
| **President Millard Fillmore** | | | | | |
| William Micou | McKinley | Feb 14, 1853 | | N | |
| Geoge Badger | McKinley | Jan 3, 1853 | | W | Feb 14, 1853 |
| Edward Bradford | McKinley | Aug 16, 1852 | | N | |
| Benjamin Curtis | Woodbury | Dec 11, 1851 | V | C | Dec 20, 1851 |
| **President James Polk** | | | | | |
| Robert Grier | Baldwin | Aug 3, 1846 | V | C | Aug 4, 1846 |
| Levi Woodbury | Story | Dec 23, 1845 | V | C | Jan 31, 1846 |
| George Woodward | Baldwin | Dec 23, 1845 | 20-29 | R | Jan 22, 1846 |
| **President John Tyler** | | | | | |
| John Read | Baldwin | Feb 7, 1845 | | N | |
| Samuel Nelson | Thompson | Feb 4, 1845 | V | C | Feb 14, 1845 |
| Reuben Walworth | Thompson | Dec 4, 1844 | | W | Feb 4, 1845 |
| Edward King | Baldwin | Dec 4, 1844 | | W | Feb 7, 1845 |
| Reuben Walworth[17] | Thompson | Jun 17, 1844 | | N | Jun 17, 1844 |
| John Spencer | Thompson | Jun 17, 1844 | | W | Jun 17, 1844 |
| Edward King | Baldwin | Jun 5, 1844 | 29-18 | P | Jun 15, 1844 |
| Reuben Walworth | Thompson | Mar 13, 1844 | 27-20 | W | Jun 17, 1844 |
| John Spencer | Thompson | Jan 9, 1844 | 21-26 | R | Jan 31, 1844 |
| **President Martin Van Buren** | | | | | |
| Peter Daniel | Barbour | Feb 26, 1841 | 25-5 | C | Mar 2, 1841 |
| John McKinley | (new seat) | Sep 18, 1837 | V | C | Sep 25, 1837 |
| **President Andrew Jackson** | | | | | |
| John Catron | (new seat) | Mar 3, 1837 | 28-15 | C | Mar 8, 1837 |
| William Smith | (new seat) | Mar 3, 1837 | 23-18 | D | Mar 8, 1837 |
| Philip Barbour | Duvall | Dec 28, 1835 | 30-11 | C | Mar 15, 1836 |
| Roger Taney[18] | Marshall | Dec 28, 1835 | 29-15 | C | Mar 15, 1836 |
| Roger Taney | Duvall | Jan 15, 1835 | 24-21 | P | Mar 3, 1835 |
| James Wayne | Johnson | Jan 6, 1835 | V | C | Jan 9, 1835 |
| Henry Baldwin | Washington | Jan 4, 1830 | 41-2 | C | Jan 6, 1830 |
| John McLean | Trimble | Mar 6, 1829 | V | C | Mar 7, 1829 |
| **President John Quincy Adams** | | | | | |
| John Crittenden | Trimble | Dec 17, 1828 | 23-17 | P | Feb 12, 1829 |
| Robert Trimble | Todd | Apr 11, 1826 | 27-5 | C | May 9, 1826 |
| **President James Monroe** | | | | | |
| Smith Thompson | Livingston | Dec 5, 1823 | V | C | Dec 9, 1823 |
| **President James Madison** | | | | | |
| Gabriel Duvall | Chase | Nov 15, 1811 | V | C | Nov 18, 1811 |
| Joseph Story | Cushing | Nov 15, 1811 | V | C | Nov 18, 1811 |
| John Quincy Adams | Cushing | Feb 21, 1811 | | D | Feb 22, 1811 |
| Alexander Wolcott | Cushing | Feb 4, 1811 | 9-24 | R | Feb 13, 1811 |
| Levi Lincoln | Cushing | Jan 2, 1811 | | D | Jan 3, 1811 |
| **President Thomas Jefferson** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Thomas Todd | (new seat) | Feb 28, 1807 | V | C | Mar 2, 1807 |
| H. Brockholst Livingston | Paterson | Dec 13, 1806 | V | C | Dec 17, 1806 |
| William Johnson | Moore | Mar 22, 1804 | V | C | Mar 24, 1804 |
| **President John Adams** | | | | | |
| John Marshall[19] | Ellsworth | Jan 20, 1801 | V | C | Jan 27, 1801 |
| John Jay[20] | Ellsworth | Dec 18, 1800 | | D | Dec 19, 1800 |
| Alfred Moore | Iredell | Dec 4, 1799 | V | C | Dec 10, 1799 |
| Bushrod Washington | Wilson | Dec 19, 1798 | V | C | Dec 20, 1798 |
| **President George Washington** | | | | | |
| Oliver Ellsworth[21] | Jay | Mar 3, 1796 | 21-1 | C | Mar 4, 1796 |
| Samuel Chase | Blair | Jan 26, 1796 | V | C | Jan 27, 1796 |
| William Cushing[22] | Jay | Jan 26, 1796 | | D | Jan 27, 1796 |
| John Rutledge[23] | Jay | Dec 10, 1795 | 10-14 | R | Dec 15, 1795 |
| William Paterson | Johnson | Mar 4, 1793 | V | C | Mar 4, 1793 |
| William Paterson | Johnson | Feb 27, 1793 | | W | Feb 28, 1793 |
| Thomas Johnson | Rutledge | Nov 1, 1791 | V | C | Nov 7, 1791 |
| James Iredell | Harrison | Feb 8, 1790 | V | C | Feb 10, 1790 |
| John Blair | | Sep 24, 1789 | V | C | Sep 26, 1789 |
| James Wilson | | Sep 24, 1789 | V | C | Sep 26, 1789 |
| Robert Harrison | | Sep 24, 1789 | | D | Sep 26, 1789 |
| William Cushing | | Sep 24, 1789 | V | C | Sep 26, 1789 |
| John Rutledge | | Sep 24, 1789 | V | C | Sep 26, 1789 |
| John Jay[24] | | Sep 24, 1789 | V | C | Sep 26, 1789 |

*This chart lists only nominations officially submitted to the Senate, and does not include nominations announced but never officially submitted (such as Douglas Ginsburg in 1987).*

*The date of the nomination is the date on the president's letter to the Senate (except the undated 1937 Hugo Black letter). Some nominees may have been serving before this date under recess appointments.*

**Vote Key:**

89-7 No. 242 (for example) - Tally and roll call vote number

V - Voice Vote

**Result Key:**

C - Confirmed and served (117) [25]

D - Declined (7)

N - No Action (9)

P - Postponed (3)

R - Rejected (12)

W - Withdrawn (12)

1. Nominated to chief justice.
2. Sitting justice elevated to chief justice.
3. Nominated to chief justice.
4. Sitting justice nominated to chief justice; nomination filibustered and withdrawn.
5. Nominated to chief justice.
6. Nominated to chief justice.
7. Sitting justice elevated to chief justice.
8. Nominated to chief justice.

9. Nominated to chief justice.

10. Sitting justice elevated to chief justice.

11. Nominated to chief justice.

12. Nominated to chief justice.

13. Unsuccessful nominee for chief justice.

14. Unsuccessful nominee for chief justice.

15. Confirmed, but died before he took office.

16. Nominated to chief justice.

17. On motion to proceed to consider the nomination, an objection was made.

18. Nominated to chief justice.

19. Nominated to chief justice.

20. Nominated to chief justice.

21. Nominated to chief justice.

22. Sitting justice nominated to chief justice, but declined and continued to serve as an associate justice.

23. Offered his services as a replacement for the soon-to-retire John Jay in June 1795, so President Washington offered him a temporary commission (Senate was in recess). The Senate convened in December and voted on the nomination, making Rutledge the first rejected Supreme Court nominee and the only "recess appointed" justice not to be subsequently confirmed by the Senate.

24. Nominated to chief justice.

25. 7 nominees (see D in Result Key) were confirmed, but declined to serve.

Return to top of page

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL, *pro se*** <br> ***Plaintiff,*** <br> **v.** <br><br> **ADDISON MITCHELL MCCONNELL, JR., CHARLES ERNEST GRASSLEY, and UNITED STATES SENATE,** <br> ***Defendants.*** | ) | **Civil Action No.: 16-1729 (RC)** |

**AFFIDAVIT**

STATE OF NEW MEXICO )
)
COUNTY OF SANTA FE )

STEVEN S. MICHEL, upon being duly sworn, states the following:

My name is Steven S. Michel. I am the Plaintiff (Petitioner) and I am capable of making this affidavit. I have read the foregoing *Memorandum of Points and Authorities in Response to Motion to Dismiss,* and the facts stated therein are true and correct to the best of my knowledge and belief.

Further Affiant sayeth not.

[signature]
STEVEN S. MICHEL

SUBSCRIBED AND SWORN to before me this 7th day of November, 2016.

My commission expires: February 6, 2018

[signature]
Glenda M. Murphy, Notary

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEVEN S. MICHEL, *pro se*** | ) | |
| ***Plaintiff,*** | ) | |
| **v.** | ) | **Civil Action No.: 16-1729 (RC)** |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | |
| ***Defendants.*** | ) | |
| | ) | |

## ***PROPOSED* ORDER**

WHERAS this matter came before the Court upon Defendants' *Motion to Dismiss,* and the Court having considered the facts, arguments and authority submitted in support of and in opposition to that motion, the Court FINDS that the *Motion to Dismiss* should be denied.

IT IS, THEREFORE, ORDERED that Defendants' *Motion to Dismiss* is hereby DENIED.

Date________________________

________________________________
RUDOLPH CONTRERAS
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2016, I served the foregoing *Memorandum of Points and Authorities in Opposition to Motion to Dismiss,* by filing it electronically with the Court's CM/ECF system and by emailing pdf versions to counsel, as indicated below, who have entered their appearance on behalf of Defendants:

Patricia Mack Bryan
Senate Legal Counsel
patricia_bryan@legal.senate.gov

Morgan J. Frankel
Deputy Senate Legal Counsel
morgan_frankel@legal.senate.gov

Grant R. Vinik
Assistant Senate Legal Counsel
grant_vinik@legal.senate.gov

Steven S. Michel

# E X H I B I T – 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| STEVEN S. MICHEL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1729 (RC) |
| | : | | |
| v. | : | Re Documents No.: | 12, 16 |
| | : | | |
| ADDISON MITCHELL MCCONNELL, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# ORDER

## GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

For the reasons stated in the Court's Memorandum Opinion separately issued this 17 day of November, 2016, Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction (ECF No. 12) is **DENIED**. It is hereby:

**ORDERED** that Plaintiff's Emergency Petition for Declaratory Judgment and Writ of Mandamus (ECF No. 1) is **DISMISSED**.

**SO ORDERED**.

Dated: November 17, 2016

RUDOLPH CONTRERAS
United States District Judge

E X H I B I T - 6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| STEVEN S. MICHEL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1729 (RC) |
| | : | | |
| v. | : | Re Documents No.: | 12, 16 |
| | : | | |
| ADDISON MITCHELL MCCONNELL, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

## GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## I. INTRODUCTION

In this case, the Court considers whether a citizen has standing to sue to compel the United States Senate to take action on a President's Supreme Court nomination. Plaintiff Steven Michel seeks a preliminary injunction and writ of mandamus compelling the Senate to take action on President Obama's nomination of Merrick Garland to the United States Supreme Court. He claims that Senators McConnell and Grassley have violated his Seventeenth Amendment right to elect his senators by depriving his home-state senators of a voice in the Senate. Because Mr. Michel's alleged injuries are not sufficiently individualized, his proper recourse is through the political process, not the judiciary. Accordingly, the Court grants Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

Mr. Steven Michel seeks a preliminary injunction and writ of mandamus compelling the United States Senate to "vote before the end of the 114th Congress on whether the Senate will

provide its advice and consent to the nomination of [Chief] Judge Garland to the United States Supreme Court." Mot. for Prelim. Inj., at 4, ECF No. 12. He claims that Senators McConnell and Grassley have taken steps to prevent the entire Senate from voting on President Obama's nomination, neglecting their constitutional duties to provide advice and consent on presidential nominations. *See* Emergency Pet. for Declaratory J. and Writ of Mandamus ("Emergency Pet."), at 5–7, ECF No. 1. Mr. Michel contends that a small group of senators have deprived his home-state senators—Senators Tom Udall and Martin Heinrich—of their constitutional prerogative to vote on the advice and consent of a presidential appointee. *See* Mot. for Prelim. Inj., at 8–9; Emergency Pet. at 6–7. Because his state's senators have been unable to vote on Chief Judge Garland's nomination, Mr. Michel contends that his own vote for United States senators has been diminished as compared to those voters in states with senators "with disproportionate power to control Senate action." *See* Mot. for Prelim. Inj., at 9–11. This, he argues, violates the Seventeenth Amendment's guarantee of senators with "one vote" elected by the people of their states. *See id.* at 10.

## III. ANALYSIS

Defendants move to dismiss on the grounds that Mr. Michel lacks standing to maintain this action. *See* Defs.' Mem. of P. & A. in Opp. to Pl.'s Mot. for Prelim. Inj. and in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot. to Dismiss"), at 5–14, ECF No. 16. Even if they did not, the Court would have a *sua sponte* obligation to raise the issue of Article III standing because it operates as a limitation on the Court's subject-matter jurisdiction. *See Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 436 (D.C. Cir. 2002). If the Court does not have subject-matter jurisdiction, it cannot afford Plaintiff any relief—injunctive or otherwise. *See Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 82 (D.D.C. 2013). It also "may not . . . 'resolve

contested questions of law when its jurisdiction is in doubt.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

Article III standing requires a "concrete and particularized injury" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citation and quotation marks omitted). The injury must be "of individual concern;" it is not enough for a party to show an undifferentiated, "general interest common to all members of the public." *See Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923); (internal citations and quotation marks omitted); *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quoting *Ex parte Levitt*, 302 U.S. 633, 636 (1937)). The proper recourse for persons who have a generalized grievance is through the political process, not the courts. *See Lujan*, 504 U.S. at 576; *Mellon*, 262 U.S. at 487–89. For a court to rule on the constitutionality of the activities of another branch without a uniquely injured individual "would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess." *Mellon*, 262 U.S. at 489. In *Ex parte Levitt*, a plaintiff sued contending that Justice Hugo Black's appointment violated the Ineligibility Clause of the Constitution. *See* 302 U.S. at 633–34; *Lujan*, 504 U.S. at 574. The Supreme Court concluded that the plaintiff did not have standing as a citizen and member of the Supreme Court bar because for "a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained . . . a direct injury as the result of that action and [not just] that he has merely a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. at 634; *accord Lujan*, 504 U.S. at 575. Other courts have used similar reasoning to dismiss lawsuits seeking to compel the United States Senate to vote on a pending Supreme Court appointment. *See, e.g.*, *Raiser v.*

*Daschle*, 54 F. App'x 305, 307 (10th Cir. 2002) ("The pendency of other litigation initiated by [the plaintiff] is insufficient to give him standing to challenge the Senate's referral of judicial nominations to the Judiciary Committee."); *Kimberlin v. McConnell*, No. GJH-16-1211, 2016 U.S. Dist. LEXIS 72948, at *3 (D. Md. June 3, 2016) (dismissing a citizen's lawsuit seeking a declaration that the Senate waived its right to advise and consent with respect to the nomination of Merrick Garland, in part because he "fail[ed] to show he ha[d] suffered injury in fact").

Cases predicated upon the "derivative" dilution of voting power—where a voter sues because of the dilution of his representative's voting power, *see Michel v. Anderson*, 14 F.3d 623, 626 (D.C. Cir. 1994)—require a voter to show some form of actual structural denial of their representative's right to vote. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1349 (6th Cir. 1996) (noting that the D.C. Circuit found a derivative-dilution injury "judicially cognizable, because it differed only in degree, not in kind, from a complete denial of their representatives' right to vote"). This is because "[i]t would be unwise to permit the federal courts to become a higher legislature where a congressman who has failed to persuade his colleagues can always renew the battle." *Melcher v. Fed. Open Mkt. Comm.*, 836 F.2d 561, 564 (D.C. Cir. 1987). The prototypical vote-dilution cases involve a mathematical showing of the loss of a representative voice. *See Kardules*, 95 F.3d at 1349–50; *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331–32 (1999) (through an expert, the plaintiffs showed that a census practice would lead to vote dilution via redistricting).

Mr. Michel has not shown that he has suffered an individualized injury such that he can maintain this action. This alleged diminution of his vote for United States Senators is the type of undifferentiated harm common to all citizens that is appropriate for redress in the political sphere: his claim is not that he has been unable to cast votes for Senators, but that his home-state

Senators have been frustrated by the rules and leadership of the United States Senate. This is far from the type of direct, individualized harm that warrants judicial review of a "case or controversy." It is instead a request for the Court to "assume a position of authority over the governmental acts of another and coequal department, an authority which plainly [it] do[es] not possess." *Mellon*, 262 U.S. at 489. This would not only require the Court to become "a higher legislature where a [Senator or Representative] who has failed to persuade his colleagues can always renew the battle," *see Melcher*, 836 F.2d at 564, but would also require it to entertain suits from all citizens who feel that their representatives have been treated unfairly by the legislative process. Although such claims may at times be justified, the Framers of the Constitution left their resolution to the political branches, not the judiciary.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction (ECF No. 12) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 17, 2016

RUDOLPH CONTRERAS
United States District Judge